# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LATHAM INTERNATIONAL INC., et al.,[1] | ) Case No. 09-_____ |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

## PREPACKAGED JOINT PLAN OF REORGANIZATION OF LATHAM INTERNATIONAL, INC., ET AL., UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### Dated: December 18, 2009

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joshua M. Fried (CA Bar No. 181541)
Timothy P. Cairns (DE Bar No. 4228)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: 302/652-4100
Facsimile: 302/652-4400
E-mail:ljones@pszyjw.com
        dbertenthal@pszjlaw.com
        jfried@pszjlaw.com
        tcairns@pszjlaw.com

[Proposed] Counsel for Debtors and Debtors in Possession

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Latham International, Inc (9049), 787 Watervliet Shaker Road, Latham, NY 12110; Latham Manufacturing Corp. (9130), 787 Watervliet Shaker Road, Latham, NY 12110; Viking Pools, LLC (2924), 1473 Industrial Park Road, Jane Lew, WV 26378; Coverstar, LLC (1935), 1795 West 200 North, Lindon, UT 84046; and Kafko (U.S.) Corp. (0638), 787 Watervliet Shaker Road, Latham, NY 12110.

NO CHAPTER 11 CASE HAS BEEN COMMENCED AT THIS TIME. THE SOLICITATION MATERIALS ACCOMPANYING THIS PLAN OF REORGANIZATION HAVE NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1125(a). FOLLOWING THE COMMENCEMENT OF THEIR CHAPTER 11 CASES, THE DEBTORS EXPECT TO PROMPTLY SEEK AN ORDER OF THE BANKRUPTCY COURT (I) APPROVING THEIR SOLICITATION OF VOTES AS HAVING BEEN IN COMPLIANCE WITH BANKRUPTCY CODE SECTION 1126(b) AND (II) CONFIRMING THIS PLAN OR OF REORGANIZATION PURSUANT TO BANKRUPTCY CODE SECTION 1129.

## ARTICLE I

## INTRODUCTION

Latham International, Inc., Latham Manufacturing Corp., Viking Pools, LLC, Coverstar, LLC, and Kafko (U.S.) Corp., debtors and debtors in possession under chapter 11 of the Bankruptcy Code, hereby propose this prepackaged *Joint Plan of Reorganization of Latham International, Inc., et al., Under Chapter 11 of the Bankruptcy Code*, dated as of the first date set forth above (the "Plan"). The Plan provides for the substantive consolidation of each of the Debtors for voting and distribution purposes only under this Plan. Upon the Effective Date, for Plan distribution purposes, the assets and liabilities of the Debtors will be treated as pooled and all Claims shall be satisfied by the Debtors or by New Opco (to the extent such Claims are assumed by it). Any Claims against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, of Claims against another Debtor shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to distributions under this Plan by the Debtors or New Opco only with respect to such single Claim. Any agreements and/or other documents that are referenced in this Plan, but which are not attached as exhibits to this Plan, are available upon reasonable written request to counsel for the Debtors indicated on the first page of this Plan.

## ARTICLE II

## DEFINITIONS

**A.** **Defined Terms**

Terms herein with an initial capital not required by standard capitalization rules are defined terms, and each such term shall have the meaning assigned to it below.

1.     "*ABL Facility*" means the asset based lending facility by and between New Opco and such exit lender acceptable to the Debtors and the Prepetition Agent in the amount of $25,000,000 to be executed on the Effective Date, including any agreements, amendments, supplements or documents, related thereto, which will be used to fund the payments required to fund general operating expenses of the New Latham Group and payments under the New Note.

2.     "*ABL Lenders*" means the lenders under the ABL Facility.

3.     "*Administrative Claim*" means any Claim against any Debtor for the costs and expenses of administering the Cases having priority under section 507(a)(2) of the Bankruptcy Code, including without limitation costs and expenses allowed under section 503(b) of the Bankruptcy Code, the actual and necessary costs and expenses of preserving the Debtors' Estates and operating the business of the Debtors, any fees or charges assessed against the Estates under 28 U.S.C. § 1930, any Professional Fee Claims, any Cure Claims, and any Claims allowed pursuant to section 507(b) of the Bankruptcy Code.

4.     "*Administrative Claims Bar Date*" means the last date set by the Bankruptcy Court pursuant to an Order (which may be the Confirmation Order) for a Claimant to

file a request for payment of any Administrative Claim that arose between the Petition Date and the Effective Date. The Debtors shall request that the Court, in the Confirmation Order, set the Administrative Claims Bar Date for that date that is thirty (30) days after the service of the notice of the Effective Date.

5. "*Allowed Claim*" means, with respect to a Claim or Interest against any Debtor, a Claim or Interest as to which no objection or request for estimation has been filed on or before twenty (20) days after the Effective Date, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim or Interest; or (c) a Claim or Interest that is expressly allowed (i) by a Final Order, or (ii) pursuant to the terms of this Plan; *provided, however*, that Claims or Interests allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims or Interests hereunder.

6. "*Assets*" means all of the right, title and interest of the Debtors in, to and under any and all assets and property, whether tangible, intangible, real or personal, that constitute property of the Debtors' Estates within the meaning of section 541 of the Bankruptcy Code.

7. "*Assigned Contracts*" means all executory contracts and unexpired leases assumed by the applicable Debtor under section 365 of the Bankruptcy Code and assigned to New Opco pursuant to the Plan.

8. "*Avoidance Actions*" means any and all claims and causes of action which any of the Debtors has asserted or may assert under sections 502, 544, 545, 547 through 553 of

the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

9. "*Ballot*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

10. "*Bankruptcy Code*" means the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., as now in effect or as it may be amended from time to time.

11. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or any other court of competent jurisdiction exercising jurisdiction over the Cases.

12. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as the same shall be applicable to these Cases.

13. "*Business Day*" means a day other than Saturday, Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

14. "*Cases*" means the chapter 11 bankruptcy cases commenced by the Debtors filing their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

15. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

16. "*Causes of Action*" means any and all actions, causes of action controversies, damages, liabilities, liens, obligations, rights, suits or proceedings, damages, judgments, claims, demands and rights of contribution or indemnification whatsoever, whether known or unknown, reduced to judgment, disputed or undisputed, liquidated or unliquidated, secured or unsecured, existing or hereafter arising, in law, equity, or otherwise, but do not include any Avoidance Actions.

17. "*Claim*" shall have the meaning assigned to that term in section 101(5) of the Bankruptcy Code, including, but not limited to: (a) any right to payment from any Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from any Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

18. "*Claimant*" means the Holder of a Claim.

19. "*Class*" means a category of Claims or Interests as specified in Article III of this Plan.

20. "*Confirmation*" means the entry by the Bankruptcy Court of the Confirmation Order confirming this Plan under the provisions of section 1129 of the Bankruptcy Code upon the satisfaction of the conditions to confirmation of the Plan set forth in Article XV of the Plan.

21.     *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

22.     *"Confirmation Hearing"* means the hearing to be held by the Bankruptcy Court on _____ at ____ a.m. (as such hearing may be adjourned or continued from time to time), at which the Bankruptcy Court will consider Confirmation of this Plan.

23.     *"Confirmation Order"* means an order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

24.     *"Creditor"* means any Holder of a Claim against the Debtors that arose prior to the Petition Date.

25.     *"Cure Claim"* means any Claim against any Debtor based upon the Debtors' defaults under an Executory Contract at the time the contract or lease is assumed by any Debtor under sections 365 and 1123 of the Bankruptcy Code.

26.     *"Cure Payment Schedule"* means the document that shall be filed with the Bankruptcy Court by no later than fifteen (15) days prior to the date on which the Confirmation Hearing is scheduled to be conducted and served upon Persons entitled to notice pursuant to Bankruptcy Rule 2002, which indicates the amounts proposed by the Debtors to satisfy Cure Claims.

27.     *"Debt"* means any liability on a Claim.

28.     *"Debtor(s)"* means the Debtor(s), individually or collectively: Latham International, Inc.; Latham Manufacturing Corp.; Viking Pools, LLC; Coverstar, LLC; and Kafko (U.S.) Corp.

29.　*"Disallowed Claim"* means a Claim that has been disallowed pursuant to a Final Order or a provision of this Plan that provides that a Disputed Claim as the case may be, shall not be an Allowed Claim.

30.　*"Disbursing Agent"* means New Opco, or such other entity designated by the Debtors to make the distributions to holders of Allowed Claims provided under this Plan.

31.　*"Disclosure Statement"* means that certain *Disclosure Statement in Respect of Prepackaged Joint Plan of Reorganization of Latham International, Inc., et al., Under Chapter 11 of the Bankruptcy Code*, dated as of December 18, 2009, and any exhibits annexed thereto and any documents delivered in connection therewith, as the same may be amended, modified or supplemented from time to time by any duly authorized amendment, modification or supplement, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and other applicable law.

32.　*"Disputed Claim"* means (a) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed by no later than twenty (20) days after the Effective Date, or any later deadline fixed by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (b) any Claim for which a Proof of Claim is required to be filed and no such proof of Claim is filed or, if filed, is filed after the applicable Bar Date for such Claim; and (c) any contingent Claim or unliquidated Claim. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection and shall be deemed an Allowed Claim as to the portion for which no objection is made.

33.    "*Disputed Claims Reserve*" means a segregated account to be established and maintained by New Opco or such other Entity designated by the Debtors as their duly appointed disbursing agent into which account New Opco or such other Entity shall deposit all amounts reserved for the Holders of Disputed Claims in each Class under this Plan. All amounts on deposit from time to time in such Disputed Claims Reserve and all dividends, interest, and other earnings thereon, net of any applicable taxes and expenses, shall be held in trust for the exclusive benefit of Holders of Disputed Claims that subsequently become Allowed Claims, until such time as all Allowed Claims have been paid the distributions to which such Holders are entitled under the terms of this Plan.

34.    "*Distribution Date*" means the first Business Day after the Effective Date, or as soon thereafter as practicable.

35.    "*Effective Date*" means, if no stay of the Confirmation Order is in effect, the first Business Day after the date all of the conditions precedent required to consummate the transactions contemplated by Article XV of this Plan have been satisfied or waived, or such earlier or later date as may reasonably be determined by the Debtors, the Prepetition Agent and the Steering Group.

36.    "*Entity*" means any entity as defined in section 101(15) of the Bankruptcy Code.

37.    "*Equity Grant*" means common stock of New Holdco in the amount of 2% of the New Equity which shall vest ratably over a period of four years from the Effective Date, to be granted by the New Holdco Board to Mark P. Laven, in accordance with the terms and

provisions of the corporate documents relating to New Latham Group to be filed with the Plan Supplement.

38.     "*Estate(s)*" means the Debtors' estate(s) created under section 541 of the Bankruptcy Code in the Cases.

39.     "*Executory Contract*" means any executory contract or unexpired lease, subject to section 365 of the Bankruptcy Code, between any Debtor and any other Person or Persons, but specifically excluding all of the contracts and agreements entered into after the Petition Date and/or pursuant to this Plan.

40.     "*Existing Equity Interest(s)*" means any stock, membership or other equity ownership interest in one or more of the Debtors, whether or not transferable, of the type specified in section 101(16) of the Bankruptcy Code and all dividends and distributions with respect to such stock or interest and all rights, options, warrants, puts, calls, or other rights to acquire any stock or other equity ownership interest in any Debtor as of the Petition Date.

41.     "*Final Order*" means an order or judgment entered by the Bankruptcy Court that (a) has not been reversed, vacated, stayed, modified or amended, (b) is not the subject of a pending appeal or motion for review or reconsideration, (c) has not been and may no longer be appealed from or otherwise reviewed or reconsidered, other than under Bankruptcy Rule 9024 and/or Federal Rule of Civil Procedure 60, and (d) is final and non-appealable in accordance with Bankruptcy Rule 8002 or any other applicable law or rule.

42.     "*General Unsecured Claims*" means any unsecured Claim against any of the Debtors that is not an Administrative Claim, Priority Claim, Priority Non-Tax Claim,

Intercompany Claim Reorganized Debtor Intercompany Claim, Subordinated Debt Claim, Seller Note Claim or Trade Vendor Claim.

43. "*Governmental Unit*" means the United States and any state, commonwealth, district, territory, municipality, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), or any foreign state.

44. "*Holder*" means the beneficial holder of a Claim or Interest and, when used in conjunction with a Class or type of Claim or Interest, means a beneficial holder of a Claim or Interest in such Class or of such type.

45. "*Impaired*" means any Claim or Interest in an Impaired Class

46. "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

47. "*Intercompany Claims*" means any Claim held by a Debtor against another Debtor that is not a Reorganized Debtor Intercompany Claim.

48. "*Intercompany Existing Equity Interest*" means any Existing Equity Interest held by a Debtor.

49. "*Laven Warrants*" means warrants in the amount of 2% of the New Equity to be granted by the New Holdco Board to Mark P. Laven, dilutive of the other existing shareholders of New Holdco, which shall vest ratably over a period of four years from the date that such warrants are awarded, with a per share strike price based on New Holdco's total enterprise value of $50,000,000 less the outstanding principal and accrued interest of the New

Note or any successor debt thereto, in accordance with the terms and provisions of the corporate documents relating to New Latham Group to be filed with the Plan Supplement.

50. *"Lien"* has the meaning assigned to that term in section 101(37) of the Bankruptcy Code.

51. *"Management Warrants"* means warrants of New Holdco in the amount of 6% of the New Equity to be granted by the New Holdco Board to management recipients determined by the New Holdco Board in its sole discretion, dilutive of the other existing shareholders of New Holdco, which shall vest ratably over a period of four years from the date that such warrants are awarded, with a per share strike price based on New Holdco's total enterprise value of $50,000,000 less the outstanding principal and accrued interest of the New Note or any successor debt thereto, in accordance with the terms and provisions of the corporate documents relating to New Latham Group to be filed with the Plan Supplement.

52. *"New Equity"* means 100% of the common stock of New Holdco, issued to New Midco pursuant to the Plan.

53. *"New Holdco"* means a Delaware corporation that is the parent of New Midco.

54. *"New Holdco Board"* means the members of the board of directors of New Holdco.

55. *"New Latham Group"* means New Holdco, New Midco, New Opco and each of their subsidiaries and affiliates.

56. *"New Midco"* means a Delaware corporation that is the parent of New Opco.

57. *"New Midco Board"* means the members of the board of directors of New Opco.

58. *"New Note"* means that certain term loan term loan note to be issued by New Holdco in favor of New Midco in the principal amount of $20,000,000. Interest on the New Note shall be payable quarterly either:(a) in cash at a rate of LIBOR plus 400 basis points with a 3% LIBOR floor; or , in New Holdco's discretion, (b) at the rate of 10% per annum, in any combination selected by New Holdco of 6% or more in PIK and 4% or less in cash. The New Note shall have a maturity date of five years following the Effective Date, and shall be secured by substantially all of New Holdco's assets. The New Note (and any related documents) shall be substantially in the form that will be attached to the Plan Supplement. The New Note will be junior in priority to the ABL Loan.

59. *"New Opco"* means a Delaware corporation acquiring all of the assets of Latham International Inc., Latham Manufacturing Corp., and Kafko (U.S.) Corp. in exchange for the New Equity and New Note pursuant to the terms of the Plan, all as set forth in a purchase and sale entered into by New Opco and the Debtors to be filed with the Plan Supplement.

60. *"New Opco Board"* means the members of the board of directors of New Opco.

61. *"Other Secured Claims"* means any Secured Claim that is not a Prepetition Financing Claim.

62.　"*Person*" means an individual, a corporation, a partnership, a limited liability company, an association, a joint stock company, a joint venture, an estate, a trust, or an unincorporated organization.

63.　"*Petition Date*" means the date on which the Debtors file their voluntary petitions for relief under chapter 11 of the Bankruptcy Code commencing the Cases.

64.　"*Plan*" means this prepackaged *Joint Plan of Reorganization of Latham International, Inc., et al., Under Chapter 11 of the Bankruptcy Code*, dated as of the date on the cover page hereof, filed and proposed by the Debtors, as the same may be amended, modified or supplemented from time to time, including all exhibits and schedules hereto.

65.　"*Plan Supplement*" means that certain compilation of documents and forms of documents, schedules and exhibits to be filed no later than five (5) days before the deadline fixed by the Bankruptcy Court to object to the Plan, in each case, as such compilation may be amended, supplemented or modified from time to time in accordance with the terms hereof and the Bankruptcy Code and Bankruptcy Rules. The Plan Supplement shall contain, *inter alia*, the forms of the ABL Facility, the New Note, New Opco, New Midco, and New Holdco organizational documents, stockholder agreements, and such other documents necessary to implement the Plan.

66.　"*Prepetition Agent*" or "*Agent*" means Wachovia Bank National Association, a national banking association, in its capacity as agent under the Prepetition Credit Agreement.

67.     "*Prepetition Credit Agreement*" means that certain *Credit Agreement*, dated December 30, 2004, as amended, restated supplemented or otherwise modified from time to time, by and between Latham Manufacturing Corp., Latham Acquisition Corp., and Latham Splash Canada, Inc., as borrowers; the domestic subsidiaries of Latham International, Inc. as guarantors; Wachovia Bank National Association, a national banking association, as administrative agent; and the Lender Parties.

68.     "*Prepetition Financing Claim*" means any Claim held by the Prepetition Agent and Prepetition Lenders with respect to the obligations under the Prepetition Credit Agreement.

69.     "*Prepetition Lenders*" or "*Lender Parties*" means individually and collectively, a "Lender," including their successors and assigns, as defined in the Prepetition Credit Agreement.

70.     "*Priority Claims*" means all Priority Non-Tax Claims and all Priority Tax Claims.

71.     "*Priority Non-Tax Claim*" means any Claim against any Debtor for an amount entitled to priority pursuant to section 507(a) of the Bankruptcy Code and that is not an Administrative Claim or a Priority Tax Claim.

72.     "*Priority Tax Claim*" means any Claim against any Debtor for an amount entitled to priority under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

73.     "*Professional*" means an Entity: (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for

services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of

the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the

Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

74. *"Professional Fee Claim"* means any Claim against any Debtor for

compensation or reimbursement of expenses arising pursuant to sections 327, 328, 329, 330, 331

or 503(b) of the Bankruptcy Code in connection with the Cases for services provided or expenses

incurred on or after the Petition Date and prior to and including the Effective Date.

75. *"Rejection Claim"* means any Claim against any Debtor for damages

arising as a proximate result of the rejection of an Executory Contract under section 365 of the

Bankruptcy Code.

76. *"Reorganized Coverstar"* means Coverstar, LLC, following the Effective

Date.

77. *"Reorganized Debtor Intercompany Claim"* means any Claims held by

Viking Pools, LLC and Coverstar, LLC against one another.

78. *"Reorganized Debtors"* means Reorganized Coverstar and Reorganized

Viking.

79. *"Reorganized Viking"* means Viking Pools, Inc., following the Effective

Date.

80. *"Secured Claim"* means any Claim against any Debtor which is secured by

a valid, perfected and enforceable Lien on any Assets that is not subject to avoidance under

applicable bankruptcy or non-bankruptcy law, to the extent of the value of such Assets, as

determined in accordance with section 506(a) of the Bankruptcy Code, or (b) to the extent the

Holder of such Claim has a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

81. "*Seller Subordinated Note Purchase Agreement*" means that certain promissory note, dated as of December 30, 2004, as amended, by Latham Acquisition Corp and Latham Manufacturing Corp, in favor of Latham International, L.P.

82. "*Seller Subordinated Note Claim*" means any Claim arising out of the Seller Subordinated Note Purchase Agreement.

83. "*Seller Note Holders*" means Latham International, L.P. and any of its successors or assigns.

84. "*Steering Group*" means certain of the Lender Parties that formed a group prepetition that constitute the "Required Lenders," as that term is defined in the Prepetition Credit Agreement.

85. "*Subordinated Debt Claim*" means any Claim against any Debtor held by any Subordinated Debt Holder.

86. "*Subordinated Debt Holders*" means the "Purchasers," including their successors and assigns, as defined in the Subordinated Note Purchase Agreement.

87. "*Subordinated Note Purchase Agreement*" means that certain Note Purchase Agreement as amended, by and among Apollo Investment Corporation and Latham Manufacturing Corp.; and by Latham International, Inc., Kafko (U.S.) Corp., Viking Pools, LLC, and Coverstar, LLC, as guarantors, with respect to the issuances of certain senior subordinated notes due 2011.

88. "*Unclassified Claim*" means a Claim that is not classified under this Plan.

89. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

90. "*U.S. Trustee*" means the Office of the United States Trustee for Region 3.

91. "*Voting Instructions*" means the instructions for voting on this Plan that are contained in the Disclosure Statement and in the Ballots.

92. "*Voting Deadline*" means 5:00 p.m. (prevailing Eastern Time) on December 21, 2009.

## B.     Undefined Terms

Terms used herein but not defined above, or elsewhere in this Plan or in the Disclosure Statement, shall have the meanings assigned to them, if any, in the Bankruptcy Code and/or the Bankruptcy Rules.

## C.     Exhibits and Plan Supplement

All exhibits to this Plan, as well as the Plan Supplement, are incorporated by reference and made a part of this Plan as if set forth in full herein.  Holders of Claims and Interests may obtain a copy of any filed exhibits and any Plan Supplement upon written request to the Debtors.  Upon their filing, the exhibits and Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours.  The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**D.** **Rules of Interpretation**

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors, assigns and participants; (e) all references in this Plan to Sections, Articles and Schedules are references to Sections, Articles and Schedules of or to this Plan or the Plan Supplement, as the same may be amended, waived or modified from time to time; (f) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including

the Bankruptcy Code will apply; and (i) in computing any period of time prescribed or allowed by this Plan, the provision of Bankruptcy Rule 9006(a) will apply.

**ARTICLE III**

**TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS**

**A.      Unclassified Claims**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims against the Debtors are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims are instead treated separately in accordance with this Article III and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

**B.      Administrative Claims**

Each Administrative Claim shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, be paid in full in Cash by New Opco, on behalf of the Debtors, on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the tenth Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (d) such date as the holder of such Claim and New Opco may agree.

All requests for payment of Administrative Claims must be filed no later than twenty (20) days after the Effective Date, or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtors and the New Latham Group or from sharing in any distribution under the Plan.  Holders of Administrative Claims based on liabilities

incurred in the ordinary course of the Debtors' business following the Petition Dates shall not be

required to comply with the Administrative Claim Bar Date, provided that, (i) such holders have

otherwise submitted an invoice, billing statement or other evidence of indebtedness to the

Debtors in the ordinary course of business, and (ii) such Claims are not past due according to

their terms.

## C.     Plan Payments

The Debtors are not currently aware of the existence of any Plan Payments that

are not otherwise subject to disclosure and approval by the Bankruptcy Court (e.g., Professional

Fees) or were otherwise approved by order of the Bankruptcy Court.

## D.     Priority Tax Claims

Each Allowed Priority Tax Claim shall, unless the holder of such Claim shall

have agreed to different treatment of such Claim, (i) be paid in full in Cash, without interest, by

New Opco, on behalf of the Debtors, on the latest of: (a) the Effective Date, or as soon thereafter

as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as

practicable; (c) the tenth Business Day after such Claim is Allowed, or as soon thereafter as

practicable; and (d) such date as the holder of such Claim and New Opco may agree, or (ii)

receive deferred cash payments to the extent permitted by Section 1129(a)(9) of the Bankruptcy

Code with interest on the unpaid portion of such Claim at the statutory rate under applicable

nonbankruptcy law or at a rate to be agreed upon by the Debtors or New Opco and the

appropriate governmental unit or, if they are unable to agree, to be determined by the Bankruptcy

Court; *provided, however*, that New Opco, on behalf of the Debtors, may prepay any or all such

Claims at any time, without premium or penalty. For the purpose of option (ii), the payment of each Allowed Priority Tax Claim shall be made in equal quarterly installments with the first installment due on the latest of: (i) the first Business Day following the end of the first full calendar quarter following the Effective Date, (ii) the first Business Day following the end of the first full calendar quarter following the date an order allowing such claim becomes a Final Order, and (iii) such other time or times as may be agreed with the holder of such claim. Each installment shall include simple interest on the unpaid balance of the Allowed Priority Tax Claim, without penalty of any kind, at the non-default rate of interest prescribed, agreed or determined under option (ii).

E.      **Claims for Professional Fees**

Each Professional seeking an award by the Bankruptcy Court of Professional Fees: (a) must file its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date on or before sixty (60) days from the Effective Date; and (b) if the Bankruptcy Court grants such an award, each such Person will be paid in full in Cash in such amounts as are allowed by the Bankruptcy Court as soon thereafter as practicable. All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order. The fees and expenses of Professionals incurred on and after the Effective Date shall be paid by New Opco, on behalf of the Debtors.

# ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.   Summary

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes. Article IV of the Plan describes the treatment of Administrative Claims and Priority Tax Claims.

This Plan constitutes a single plan for all Debtors. The Plan provides for the substantive consolidation of the Debtors for voting and distribution purposes. For Plan distribution purposes, the assets and liabilities of the Debtors shall be pooled and all Claims shall be satisfied by New Opco, on behalf of the Debtors. Any Claims against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, of Claims against another Debtor shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to distributions under this Plan by New Opco only with respect to such single Claim.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest qualifies within the description of such Class and is in a different Class to the extent that it qualifies within the description of such different Class, but the same portion of a Claim may not be in more than one Class. A Claim or Interest is also placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. However, a Claim or Interest is placed in a

particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

1.  Class 1 – Priority Non-Tax Claims.

    a.  Class 1 consists of all Priority Non-Tax Claims.

2.  Class 2 – Other Secured Claims.

    a.  Class 2 consists of all Other Secured Claims.

3.  Class 3 – Prepetition Financing Claims.

    a.  Class 3 consists of the Prepetition Financing Claims.

4.  Class 4 – Subordinated Note Claim.

    a.  Class 4 consists of all Subordinated Note Claims.

5.  Class 5 – Seller Note Claims.

    a.  Class 5 consists of all Seller Note Claims.

6.  Class 6 – General Unsecured Claims.

    a.  Class 6 consists of all General Unsecured Claims.

7.  Class 7 – Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp.

    a.  Class 7 consists of all Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp.

8.  Class 8 – Reorganized Debtor Intercompany Claims

    a.  Class 8 consists of all Reorganized Debtor Intercompany Claims

9.      Class 9 – Intercompany Claims

        a.      Class 9 consists of all Intercompany Claims

## ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS

**A.      Summary**

        To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

        1.      Class 1 – Priority Non-Tax Claims.

                a.      Classification: Class 1 consists of all Priority Non-Tax Claims.

                b.      Treatment: Except to the extent that a Holder of a Priority Non-Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Priority Non-Tax Claim, on or as soon as practicable after the Effective Date or when such obligation becomes due in the ordinary course of business in accordance with applicable law or the terms of any agreement that governs such Priority Non-Tax Claim, whichever is later, each holder of such Priority Non-Tax Claim shall be paid in full in Cash by the Debtors or New Opco, or otherwise receive such treatment as to render such holder Unimpaired.

                c.      Voting: Class 1 is an Unimpaired Class and Holders of Class 1 Priority Non-Tax Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

2. Class 2 – Other Secured Claims.

  a. Classification: Class 2 consists of all Other Secured Claims.

  b. Treatment: Except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors agree to less favorable treatment for such Holder, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each Allowed Other Secured Claim shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

  c. Voting: Class 2 is Unimpaired, and Holders of Class 2 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3. Class 3 – Prepetition Financing Claims.

  a. Classification: Class 3 consists of all Prepetition Financing Claims.

  b. Treatment: On the Effective Date, in full and final satisfaction, settlement, release, and discharge and in exchange for all Prepetition Financing Claims, all Prepetition Financing Claims shall be indefeasibly satisfied through the distribution by the Debtors to each Holder of a Prepetition Financing Claim of (i) its pro rata share of the New Note; and (ii) its pro rata share of 100% of the New Equity in New Holdco, subject to dilution on account of the Equity Grant, the Laven Warrants, and the Management Warrants, in accordance with the terms of the Plan.

c.     Voting: Class 3 is an Impaired Class and Holders of Class 3 Prepetition Financing Claims are entitled to vote to accept or reject the Plan.

4.     Class 4 – Subordinated Note Claims.

a.     Classification: Class 4 consists of all Subordinated Note Claims.

b.     Treatment: On the Effective Date, the Subordinated Note Claims shall be deemed cancelled and extinguished and the Subordinated Note Purchase Agreement and of no further force or effect.  Holders of Subordinated Note Claims in Class 4 will not receive any distributions on account of such claims.

c.     Voting: Class 4 is an Impaired Class and Holders of Subordinated Note Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

5.     Class 5 – Seller Note Claims.

a.     Classification: Class 5 consists of all Seller Note Claims.

b.     Treatment: On the Effective Date, the Seller Note Claims shall be deemed cancelled and extinguished and the Seller Subordinated Purchase Agreement shall be of further no force or effect.  Holders of Seller Note Claims in Class 5 will not receive any distributions on account of such claims.

c.     Voting: Class 5 is an Impaired Class and Holders of Seller Note Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

6. <u>Class 6 – General Unsecured Claims</u>.

    a.    Classification: Class 6 consists of all General Unsecured Claims.

    b.    Treatment: Except to the extent that a Holder of a General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each General Unsecured Claim, on or as soon as practicable after the Effective Date or when such obligation becomes due in the ordinary course of business in accordance with applicable law or the terms of any agreement that governs such General Unsecured Claim, whichever is later, each holder of such General Unsecured Claim shall be paid in full in Cash, or otherwise receive such treatment as to render such holder Unimpaired.

    c.    Voting: Class 6 is an Unimpaired Class and Holders of Class 6 General Unsecured Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

7. <u>Class 7 – Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp.</u>

    a.    Classification: Class 7 consists of all Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp.

    b.    Treatment: On the Effective Date, Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp. shall be cancelled and the Holders of such Existing Equity Interests in Latham International, Inc.; Latham

Manufacturing Corp.; and Kafko (U.S.) Corp. shall receive no property or distribution under this Plan on account of such interests.

        c.     Voting: Class 7 is an Impaired Class and Holders of Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp. are conclusively deemed to have voted to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code.

        8.     <u>Class 8 – Reorganized Debtor Intercompany Claims.</u>

        a.     Classification: Class 8 consists of all Reorganized Debtor Intercompany Claims.

        b.     Treatment: Except to the extent otherwise agreed by the Reorganized Debtors in their sole discretion, all Reorganized Debtor Intercompany claims shall remain unimpaired.

        c.     Voting: Class 8 is an Unimpaired Class and Holders of Reorganized Debtor Intercompany Claims are conclusively deemed to have voted to accept the Plan.

        9.     <u>Class 9 – Intercompany Claims.</u>

        a.     Classification: Class 9 consists of all Intercompany Claims by and against the Debtors.

        b.     Treatment: On the Effective Date, Intercompany Claims shall be cancelled and the Holders of Intercompany Claims shall receive no property or distributions under the Plan on account of such Intercompany Claims.

c. Voting: Class 9 is an Impaired Class and Holders of Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**B.** **Full Satisfaction, Discharge and Release**

The payments, distributions, grant of entitlements and other treatment, including cancellation and/or extinguishment without consideration or distribution, afforded to Holders of Allowed Claims and Interests under this Article V shall be in full and complete satisfaction, discharge and release of and in exchange for such Allowed Claims or Interests.

## ARTICLE VI

## ACCEPTANCE REQUIREMENTS

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(f) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of Allowed Claims in such Class actually voting have voted to accept the Plan.

**A.** **Acceptance or Rejection of this Plan**

1. Voting Classes.

Class 3 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

2.    Presumed Acceptance of this Plan.

Classes 1, 2, 6 and 8 are Unimpaired under the Plan and are, therefore,

conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy

Code.

3.    Presumed Rejection of this Plan.

Classes 4, 5, 7 and 9 are Impaired and shall receive no distribution under the Plan

and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the

Bankruptcy Code.

**B.    Confirmation of This Plan Pursuant to
       Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of

Confirmation by acceptance of this Plan by an Impaired Class. The Debtors request

Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any

Impaired Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code.

The Debtors reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant

to section 1129(b) of the Bankruptcy Code requires any such modification.

**C.    Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Interests (or any Class of

Claims or Interests) are Impaired under this Plan, the Bankruptcy Court shall determine such

controversy on or prior to the Confirmation Date.

# ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**     **Sources of Cash for Plan Distributions**

All consideration necessary for New Opco to make Cash payments or distributions on behalf of the Debtors pursuant hereto shall be obtained from the ABL Facility and other Cash from New Opco, including Cash from New Opco's business operations.

**B.**     **Issuance of New Equity**

The Holders of Allowed Prepetition Financing Claims shall acquire the New Equity in accordance with the terms of this Plan without further act or action under applicable law, regulation, rule or order.

Except as otherwise provided by the Plan, the issuance of the New Equity, and the subsequent issuance of New Holdco shares designated for the Equity Grant, and the Laven Warrants, and Management Warrants to be issued by New Holdco, are authorized in accordance with the Plan, without any further action by Holders of Claims or Interests, but subject to approval New Holdco Board.

On or prior to the Effective Date, the Prepetition Agent, or such other agent for the Prepetition Lenders will form New Holdco, New Midco and New Opco. New Holdco will issue the New Equity and New Note to New Midco in exchange for 100% of the stock of New Midco. New Midco will contribute the New Equity and New Note to New Opco in exchange for 100% of the stock of New Opco. On the Effective Date, New Opco shall use the New Equity and New Note to purchase all of the assets of Latham International, Inc., Latham Manufacturing

Corp. and Kafko (U.S.) Corp. (including the Intercompany Existing Equity Interests in Coverstar, LLC and Viking Pool, LLC, but excluding the Intercompany Existing Equity Interests in Latham Manufacturing Corp. and Kafko (U.S.)). On the Effective Date, the Debtors shall distribute the New Equity and New Note to the Holders of Allowed Prepetition Financing Claims.

All of the shares of New Equity issued pursuant to the Plan shall be duly authorized, validly issued and fully paid and non-assessable. Each distribution and issuance referred to in this Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

Effective as of the Effective Date, the Existing Equity Interests in Latham International, Inc., Latham Manufacturing Corp. and Kafko (U.S.) Corp. shall be cancelled. The Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp. will not receive any distributions under this Plan.

## C.    Securities Exemption

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any New Equity contemplated by the Plan and all agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration before the offering, issuance, distribution or sale of securities. In addition, under section 1145 of the Bankruptcy Code, any

New Equity issued in accordance with the Plan and any and all agreements incorporated therein

will be freely tradable by the recipients thereof, subject to (1) the provisions of section

1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11)

of the Securities Act; (2) compliance with any rules and regulations of the Securities and

Exchange Commission, if any, applicable at the time of any future transfer of such securities or

instruments; (3) the restrictions on the transferability of such securities and instruments; and (4)

applicable regulatory approval.

**D.     Powers of New Holdco, New Midco and New Opco**

On the Effective Date, New Holdco, New Midco and New Opco shall be

authorized to undertake and implement the transactions described herein, including the execution

of such other and further documents, as are necessary or appropriate to implement the Plan. To

the extent necessary for business, regulatory, tax, or other corporate purposes and provided that it

does not alter the obligations to Creditors or other parties-in-interest under this Plan or otherwise

adversely impact any rights granted to any party under this Plan, New Holdco, New Midco and

New Opco may create or dissolve one or more subsidiaries, or may modify the form and terms of

corporate governance as necessary or appropriate. The Debtors or New Opco on behalf of the

Debtors, will be the entities under the Plan that are exclusively responsible for paying all

Allowed Claims pursuant to the Plan.

New Opco will acquire the assets of Latham International, Inc., Latham

Manufacturing Corp., Viking Pools, LLC, Coverstar, LLC, and Kafko (U.S.) Corp. pursuant to

the terms of the Plan and a purchase and sale agreement entered into among New Opco and the

Debtors. Thereafter, New Opco will operate these assets as a going concern. For purposes of the

Plan, New Opco is not intended as, and is not in fact, a substitute for or a successor to the

Debtors in any way whatsoever. All actions taken by New Opco relating to the Debtors, or on

behalf of the Debtors, solely relate to, and are a requirement and prerequisite of, the purchase

and sale transaction between Debtors, as seller, and New Opco, as purchaser.

**E.      Cancellation of Securities and Agreements**

On the Effective Date, except as otherwise specifically provided for in the Plan,

(A) the obligations of the Debtors under (1) the Prepetition Credit Agreement, (2) the

Subordinated Note Purchase Agreement, (3) the Seller Subordinated Note Purchase Agreement,

and (4) any other note, bond, indenture, purchase right, option, warrant, or other instrument or

document directly or indirectly evidencing or creating any indebtedness or obligation of or

ownership interest in the Debtors giving rise to any Claim or Interest (except such notes, or other

instruments or documents evidencing indebtedness or obligations of the Debtors that are

specifically reinstated pursuant to the Plan), shall be cancelled and neither the Debtors nor the

New Latham Group shall have any continuing obligations thereunder; and (B) the obligations of

the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of

designation, bylaws, or certificate or articles of incorporation or similar documents governing the

shares, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or

documents evidencing or creating any indebtedness or obligations of the Debtors (other than

those obligations that are specifically reinstated pursuant to the Plan) shall be released and

discharged; *provided, however,* notwithstanding Confirmation or the occurrence of the Effective

Date, any agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan as provided herein.

**F.      Exit Facility**

On the Effective Date, New Opco shall enter into the ABL Facility. All obligations under the ABL Facility shall be secured by the assets of the New Latham Group and each member of the New Latham Group (whether then or thereafter created) shall guaranty the timely payment of all obligations under the ABL Facility. The terms of the ABL Facility shall be subject to the terms, provisions and conditions of documentation acceptable to the Debtors, Prepetition Agent, the Steering Group and the ABL Lenders. Subject to any limitations under either the ABL Facility, New Opco shall be authorized to (i) enter into the ABL Facility, (ii) grant any liens, and security interests and incur or guaranty the indebtedness provided by the ABL Facility, respectively, and (iii) issue, execute, deliver and perform all documents, instruments and agreements necessary or appropriate to implement and effectuate all obligations under the ABL Facility, and to take all other actions necessary or appropriate to implement and effectuate the borrowings under the ABL Facility.

**G.      New Note**

On or before the Effective Date, New Holdco shall issue the New Note. All obligations under the New Note shall be secured by the assets of New Holdco. Subject to any limitations under the New Note, New Holdco shall be authorized to (i) issue the New Note, (ii) grant any liens, and security interests with respect to the New Note, and (iii) issue, execute,

deliver and perform all documents, instruments and agreements necessary or appropriate to implement and effectuate all obligations under the New Note, and to take all other actions necessary or appropriate to implement and effectuate the borrowings under the New Note.

**H.     New Certificates of Incorporation and New By-Laws**

On or before the Effective Date, New Holdco, New Midco and New Opco will file their certificates of incorporation with the applicable Secretary of State and/or other applicable authorities in accordance with the corporate laws of the state of incorporation. New Holdco, New Midco and New Opco may amend and restate their respective new certificates of incorporation and new by-laws and other constituent documents as permitted by the laws of the state of incorporation and their new certificates of incorporation and new by-laws.

**I.     Directors and Officers of New Holdco, New Midco and New Opco**

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, the New Holdco Board shall consist of five (5) directors, consisting of three members selected by the Prepetition Agent and the Steering Group, Mark Laven, the Chief Executive Officer of Latham, and one member to be agreed upon by the Prepetition Agent and the Steering Group and Mark Laven. The members of the New Holdco Board, to the extent known, shall be identified in the Plan Supplement. The Plan Supplement shall designate the five directors to be selected by the Prepetition Agent and the Steering Group.

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, the New Midco Board shall consist

of two (2) directors, consisting of one member selected by the Prepetition Agent and the Steering Group and one member selected by Mark Laven. The members of the New Midco Board, to the extent known, shall be identified in the Plan Supplement.

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, the New Opco Board shall consist of two (2) directors, consisting of one member selected by the Prepetition Agent and the Steering Group and one member selected by Mark Laven. The members of the New Opco Board, to the extent known, shall be identified in the Plan Supplement.

**J.    Equity Grant, and Issuance of Laven
       Warrants and Management Warrants**

As soon as practicable after the Effective Date, the New Holdco Board will adopt and implement the terms of the Equity Grant and the issuance of the Laven Warrants, and the Management Warrants and subject, in all respects, to the following terms and conditions set forth below unless otherwise agreed by New Holdco and the applicable Entities:

(i) The Equity Grant shall vest ratably over a period of four years commencing on the Effective Date; and

(ii) The Laven Warrants shall be awarded by the Board of Directors of New Holdco to Mark Laven and shall vest ratably over a period of four years commencing on the date such warrants are issued.

(iii) The Management Warrants shall be awarded by the Board of Directors of New Holdco to management recipients as determined by such Board of Directors in their sole

discretion and shall vest ratably over a period of four years commencing on date such warrants are issued

Issuances made under the Laven Warrants, Management Warrants and Equity Grants will dilute the interests of the common stockholders of New Holdco. In connection with the issuance of the Laven Warrants, Management Warrants and Equity Grants to employees of the Debtors, if any, New Holdco may take whatever actions are necessary to comply with applicable federal, state, local and international tax withholding obligations, including withholding from distributions a portion of the New Holdco stock and/or warrants and selling such securities to satisfy tax withholding obligations including, without limitation, income, social security, and Medicare taxes.

## K.      Purchase of Assets by New Opco

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, (i) all property in the Estates of Latham International, Inc., Latham Manufacturing Corp. and Kafko (U.S.) Corp. (including Existing Equity Interests in Coverstar, LLC and Viking Pools, LLC), all Causes of Action, and any property acquired by any of Latham International, Inc., Latham Manufacturing Corp. and Kafko (U.S.) Corp. pursuant to the Plan shall be purchased by New Opco, free and clear of all Liens, Claims, charges, or other encumbrances (except for the Liens, if any, granted to secure the ABL Facility); and (ii) all property in the Estates of Coverstar, LLC and Viking Pools, LLC, all Causes of Action, and any property acquired by any of Coverstar, LLC and Viking Pools, LLC pursuant to the Plan shall respectively vest in the Reorganized Debtors, free and clear of all

Liens, Claims, charges, or other encumbrances (except for the Liens, if any, granted to secure the

ABL Facility). On and after the Effective Date, except as otherwise provided in the Plan, New

Opco and the Reorganized Debtors may operate their business and may use, acquire, or dispose

of property and compromise or settle any Claims, Interests, or Causes of Action without

supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy

Code or Bankruptcy Rules.

## L.    Corporate Transactions

On the Effective Date or as soon as reasonably practicable thereafter, the New

Latham Group shall take all actions as may be necessary or appropriate to effect any transaction

described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1)

the execution and delivery of appropriate agreements or other documents of merger,

consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation

containing terms that are consistent with the terms of the Plan and that satisfy the applicable

requirements of applicable law and any other terms to which the applicable Entities may agree;

(2) the execution and deliver of appropriate instruments of transfer, assignment, assumption or

delegation or any asset, property, right, liability, debt or obligation on terms consistent with the

terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of

appropriate certificates or articles of incorporation, reincorporation, merger, consolidation,

conversion or dissolution pursuant to applicable state law; and (4) all other actions that the

applicable Entities determine to be necessary or appropriate, including making filings or

recordings that may be required by applicable law.

**M.     Corporate Action**

Each of the matters provided for by this Plan involving the corporate structure of

the New Latham Group or corporate or related actions to be taken by or required of the New

Latham Group shall, as of the Effective Date, be deemed to have occurred and be effective as

provided in this Plan (except to the extent otherwise indicated), and shall be authorized,

approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any

requirement of further action by Holders of Claims or Interests, directors of the Debtors, or any

other Entity.

**N.     Effectuating Documents; Further Transactions**

On and after the Effective Date, the New Latham Group and the officers and

members of the New Latham Group are authorized to and may issue, execute, deliver, file or

record such contracts, securities, instruments, releases, and other agreements or documents and

take such actions as may be necessary or appropriate to effectuate, implement, and further

evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the

name of and on behalf of the New Latham Group, without the need for any approvals,

authorization, or consents except for those expressly required pursuant to the Plan.

**O.     Exemption from Certain Taxes and Fees**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to

New Opco or to any Entity, or from any member of the New Latham Group to a Debtor or

another member of the New Latham Group pursuant to, in contemplation of, or in connection

with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt,

equity security, or other interest in the Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recoding of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## P.    **Employee and Retiree Benefits**

Except as required under this Plan, on and after the Effective Date, New Opco and the Reorganized Debtors (1) may honor, in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in each case to the extent disclosed in the Disclosure Statement or the Debtors' pleadings filed on the Petition Date, for, among other things, compensation, health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers'

compensation insurance, and accidental death and dismemberment insurance for the directors,

officers, and employees of any of the Debtors who served in such capacity at any time; and (2)

will honor, in the ordinary course of business, Claims of employees employed as of the Effective

Date for accrued vacation time arising prior to the Petition Date in accordance with the terms of

the Plan; *provided, however,* that New Opco's or the Reorganized Debtors' performance of any

employment agreement will not entitle any person to any benefit or alleged entitlement under

any policy, program, or plan that has expired or been terminated before the Effective Date, or

restore, reinstate, or revive any such benefit or alleged entitlement under any such policy,

program or plan. Nothing in the plan shall limit, diminish, or otherwise alter New Opco's

defenses, claims, Causes of Action, or other rights with respect to any such contracts,

agreements, policies, programs, and plans. Notwithstanding the foregoing, pursuant to section

1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that

term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in

accordance with applicable law.

## Q.    **Preservation of Rights of Action**

In accordance with section 1123(b) of the Bankruptcy Code, and except where

such Causes of Action have been expressly released (including, for the avoidance of doubt,

Avoidance Actions and the releases by the Debtors provided in this Plan), New Opco and the

Reorganized Debtors shall acquire and may enforce all rights to commence and pursue, as

appropriate, any and all Causes of Action, whether arising before or after the Petition Date and

New Opco's rights to commence, prosecute, or settle such Causes of Action shall be preserved

notwithstanding the occurrence of the Effective Date. New Opco and the Reorganized Debtors

may pursue such Causes of Action, as appropriate, in accordance with the best interests of New

Opco. No Entity may rely on the absence of a specific reference in the Plan, the Plan

Supplement, or the Disclosure Statement to any Cause of Action against them as any indication

that the Debtors or New Opco, as applicable, will not pursue any and all available Causes of

Action against them. Except with respect to Causes of Action as to which the Debtors or New

Opco have released any Person or Entity on or before the Effective Date (including pursuant to

the releases by the Debtors pursuant to this Plan or otherwise), the Debtors or New Opco, as

applicable, expressly reserve all rights to prosecute any and all Causes of Action against any

Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against

an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the

Plan or a Bankruptcy Court order, New Opco and the Reorganized Debtors expressly reserve all

Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the

doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel

(judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after, or as

a consequence of the Confirmation or consummation of the Plan.

**R.**     **Substantive Consolidation**

On the Effective Date, the Cases, the Debtors and the Estates shall be deemed to

be substantively consolidated for voting and distribution purposes only under this Plan. For Plan

distribution purposes, the assets and liabilities of the Debtors shall be treated as pooled and all

Claims shall be satisfied by the Debtors or New Opco, on behalf of the Debtors. Any Claims

against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, of Claims against another Debtor shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to distributions under this Plan by the Debtors or New Opco only with respect to such single Claim.

## S.   Reorganized Debtor Intercompany Claims

On the Effective Date, and the Reorganized Debtors shall, at their sole discretion reinstate or compromise, as the cases may be, the Reorganized Debtor Intercompany Claims.

## T.   United States Trustee Fees

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtors on or before the Effective Date. Thereafter, New Opco shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing the Cases.

## U.   Subordination

Pursuant to section 510(a) of the Bankruptcy Code, nothing herein shall be deemed to limit the enforceability of any subordination agreement or intercreditor agreement, including, without limitation, the Subordinated Note Purchase Agreement, and the Seller Subordinated Note Purchase Agreement, that is otherwise enforceable under applicable nonbankruptcy law. Accordingly, distributions hereunder will be made subject to any enforceable subordination or intercreditor agreement known to the Debtors. Creditors that are parties to any such enforceable subordination or intercreditor agreements shall notify the Debtors of their existence in advance of the Effective Date and shall provide the Debtors with copies of

such agreements, or identify such agreements if they are already in the Debtors' possession. Failure to do so shall be deemed a waiver of such rights. The Prepetition Lenders are deemed to have notified the Debtors of their subordinated agreements and intercreditor agreements with the Subordinated Note Purchase Agreement and Seller Subordinated Note.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Dates of Distributions

Except as otherwise provided in the plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions provided in this Plan. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to this Plan and the Debtors and New Opco shall have no liability on account of any Claims or Interests except as set forth in this Plan and in the Confirmation Order. All payments and all distributions made by the Debtors or New Opco under this Plan shall be in full and final satisfaction, settlement and release of all Claims.

## B. Disbursing Agent

Except as provided herein, all distributions under the Plan shall be made by the Debtors or New Opco as Disbursing Agent or such other Entity designated by the Debtors or New Opco as a Disbursing Agent on the Effective Date. New Opco or such other Entity designated by the Debtors or New Opco, shall not be required to give any bond or surety or other security for the performance of its duties as Disbursing Agent unless otherwise ordered by the Bankruptcy Court.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

## C. Cash Distributions

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of New Opco, on behalf of the Debtors, except

that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**D.**     **Rounding of Payments**

Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent. To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as "Unclaimed Property" under the Plan.

**E.**     **Distributions on Account of Claims Allowed After the Effective Date**

Except as otherwise agreed by the Holder of a particular Claim, or as provided in this Plan, all distributions shall be made upon the Distribution Date. Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim). Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

1.     General Distribution Procedures.

The Debtors, New Opco or any other duly appointed agent shall make all distributions of Cash or other property required under this Plan, unless this Plan specifically provides otherwise. All cash and other property held by New Opco for distribution under this Plan shall be held by it in trust for the exclusive benefit of the Holders of Allowed Claims, shall

not be commingled with the general assets of New Opco and shall not be subject to any claim by any Person except as provided under this Plan.

2.    Address for Delivery of Distributions.

Distributions to Holders of Allowed Claims shall be made (1) at the address set forth on any proofs of claim filed by such Holders (to the extent such proofs of claim are filed in the Cases) or (2) at the addresses set forth in any written notices of address change delivered to the Debtors.

3.    Undeliverable Distributions and Unclaimed Property.

If the distribution to the Holder of any Allowed Claim is returned to New Opco as undeliverable, no further distribution shall be made to such Holder, and New Opco shall have no obligation to make any further distribution to the Holder, unless and until New Opco is notified in writing of such Holder's then current address.

Any Entity which fails to claim any cash within 1 year from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under this Plan. Entities which fail to claim cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors or New Opco or against any Holder of an Allowed Claim to whom distributions are made by New Opco.

4.    Withholding Taxes.

Pursuant to section 346(f) of the Bankruptcy Code, the Debtors or New Opco shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. From and as of the Effective Date, the

Debtors or New Opco shall comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such withholding taxes. As a condition to making any distribution under this Plan, the Debtors or New Opco may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtors or New Opco to comply with applicable tax reporting and withholding laws.

     5.     Setoffs.

New Opco, on behalf of the Reorganized Debtors, may, to the extent permitted under applicable law, setoff against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature (other than claims arising under chapter 5 of the Bankruptcy Code) that the Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with this Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claims, rights and causes of action that the Debtors possess against such Holder.

## ARTICLE IX

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A.    No Filing of Proofs of Claim

Except as otherwise provided under the Plan, Holders of Claims shall not be required to file a proof of claim and no parties should file a proof of claim. New Opco, on behalf of the Debtors, intends to make distributions under this Plan in accordance with the books and

records of the Debtors. Unless disputed by the Holder of a Claim, the amount set forth in the applicable Debtor's books and records shall constitute the Allowed amount of such Holder's Claim. If the Holder of a Claim disagrees with the Debtors' books and records with respect to the Allowed Amount of such Holder's Claim, such Holder must advise New Opco in writing, in which event the Claim will become a Disputed Claim. The Debtors intend to attempt to resolve any such disputes consensually or through judicial means outside the Bankruptcy Court. Nevertheless, New Opco, on behalf of the Debtors, may, in its discretion, file with the Bankruptcy Court an objection to the allowance of such Claim or any other appropriate motion or adversary proceeding with respect thereto. All such objections shall be litigated to Final Order, provided however, that New Opco, on behalf of the Debtors, may compromise, settle, withdraw or resolve any objections to Claims without further order of the Bankruptcy Court.

**B.**     **Disputed Claims**

All objections to Claims shall be filed and served not later than ninety (90) days following the Effective Date; *provided, however*, such date may be extended by the Bankruptcy Court beyond such ninety (90) days upon motion (the "Extension Motion") filed by New Opco prior to the expiration of the above-noted 90 day deadline. Unless otherwise provided in the Confirmation Order, New Opco, on behalf of the Debtors, is authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of this Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

## C. **Procedures Regarding Disputed Claims**

No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by a Final Order or by stipulation between the Debtors and the Holder of the Claim. No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

On the Distribution Date, New Opco shall establish the Disputed Claims Reserve and New Opco shall deposit into the Disputed Claims Reserve the amount of Cash or other consideration to be provided under this Plan to the Holder of a Disputed Claim as if such Holder's Disputed Claim were an Allowed Claim in an amount to be determined by New Opco, in the reasonable exercise of New Opco's business judgment.

The Debtors (prior to the Effective Date) or New Opco (after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection. Any Final Order of the Bankruptcy Court that estimates a Disputed Claim pursuant to this Plan irrevocably shall constitute and be a conclusive and final determination of the maximum allowable amount of Claim, should it become an Allowed Claim. Accordingly, the Holder of a Disputed Claim that is

estimated by the Bankruptcy Court pursuant to this Plan will not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or actual determination of the allowed amount of such Disputed Claim or otherwise, and the Holder of such Claim shall not have recourse to the Debtors or New Opco in the event the allowed amount of the Claim of such Holder is at any time later determined to exceed the estimated maximum allowable amount. As soon as practicable after entry of an order estimating a Disputed Claim under section 502(c) of the Bankruptcy Code, New Opco, on behalf of the Debtors, shall deposit into the Disputed Claims Reserve the amount of cash or other consideration to be provided under this Plan to the Holder of the Disputed Claim as if the Disputed Claim were an Allowed Claim in its maximum allowable amount.

**D.      Allowance of Claims**

Following the date on which a Disputed Claim becomes an Allowed Claim after the Distribution Date, New Opco, on behalf of the Debtors, shall pay directly to the Holder of such Allowed Claim the amount provided for under this Plan, as applicable. Conversely, following the date a Disputed Claim becomes a Disallowed Claim, New Opco shall no longer be required to reserve the amount on reserve in the Disputed Claims Reserve with respect to such Disputed Claim (or otherwise cancel such interests) unless, after such transfer, the amounts remaining in the Disputed Claim Reserve would be insufficient to satisfy the obligations established under this Plan.

# ARTICLE X

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.** **Assumption and Rejection of Executory Contracts and Unexpired Leases**

Except for any executory contracts or unexpired leases: (i) that are listed as Rejected Contracts on the Plan Supplement; (ii) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to sections 365 and 1123 of the Bankruptcy Code; or (iii) as to which a motion for approval of the assumption or rejection of such contracts or leases has been Filed and served prior to Confirmation; each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed assumed by the applicable Debtor and assigned to New Opco or the Reorganized Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving both (i) the assumption and assignment of the Assigned Contracts by the applicable Debtor to New Opco or the Reorganized Debtors and (ii) the rejection of the Rejected Contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, as of the Effective Date. On the Effective Date, New Opco shall pay any Allowed Cure Claims associated with any Assigned Contracts owned by the Debtors (i.e., claims of non-Debtor contract parties against the Debtors for monetary damages for breaches of such Assigned Contracts).

**B.** **Objections to Assumption of Executory Contracts and Unexpired Leases**

      1.    Objection Procedure Generally.

Any party objecting to any Debtor's proposed assumption and assignment of an executory contract or unexpired lease based on a lack of adequate assurance of future performance or on any other ground including the adequacy of the "cure" amount set forth on the Cure Payment Schedule shall file and serve a written objection to the assumption of such contract or lease on or before the deadline to object to Confirmation. Failure to timely file an objection shall constitute consent to the assumption and assignment of the applicable Assigned Contract, including an acknowledgment that the proposed assumption provides adequate assurance of future performance and that the applicable "cure" amount set forth on the Cure Payment Schedule is proper and sufficient for purposes of section 365 of the Bankruptcy Code.

      2.    Objection Based on Grounds Other Than "Cure" Amount.

If any party timely and properly files an objection to assumption based on any ground other than the adequacy of the applicable "cure" amount set forth on the Cure Payment Schedule and the Bankruptcy Court ultimately determines that any Debtor cannot assume the executory contract or lease or that New Opco or the Reorganized Debtors cannot provide adequate assurance of future performance as proposed, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been excluded from the Cure Payment Schedule and shall be rejected.

3. Objection Based on "Cure" Amount.

If any party timely and properly files an objection to assumption based on the adequacy of the applicable "cure" amount set forth the Cure Payment Schedule and such objection is not resolved between the Debtors and the objecting party, the Bankruptcy Court shall resolve such dispute at the Confirmation Hearing or another hearing date to be determined by the Bankruptcy Court. The resolution of such dispute shall not affect the assumption and assignment of the executory contract or lease that is the subject of such dispute but rather shall affect only the "cure" amount New Opco, on behalf of the applicable Debtor(s), must pay in order to assume such contract or lease and assign it to New Opco. Notwithstanding the immediately preceding sentence, if the Debtors and New Opco in their discretion determine that the amount asserted to be the necessary "cure" amount would, if ordered by the Bankruptcy Court, make the assumption and assignment of the executory contract or lease imprudent, then the Debtors may elect to (1) reject the executory contract or lease, or (2) request an expedited hearing on the resolution of the "cure" dispute, exclude assumption or rejection of the contract or lease from the scope of the Confirmation Order, and retain the right to reject the executory contract or lease pending the outcome of such dispute.

C. **Payment Related to Assumption of Executory Contracts and Unexpired Leases**

If not the subject of dispute as of the Confirmation Date, any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied by New Opco pursuant to section 365(b) of the Bankruptcy Code: (i) by payment of (1) the applicable "cure" amount set forth in the schedule of Assigned Contracts, (2) such other

amount as ordered by the Bankruptcy Court, or (3) such other amount as agreed upon by New

Opco, on behalf of the Debtors, in Cash within thirty (30) days following the Effective Date; or

(ii) on such other terms as agreed to by the parties to such executory contract or unexpired lease.

In the event of a dispute regarding the appropriate "cure" amount, payment of the amount

otherwise payable hereunder shall be made following entry of a Final Order or agreement by

New Opco.

**D.**     **Rejection Damage Claims for Rejected Contracts**

If the rejection of an executory contract or unexpired lease pursuant to the Plan or

otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim

shall be forever barred and shall not be enforceable against the Debtors or their Estates unless a

proof of Claim is Filed and served on the Debtors and their counsel within thirty days after the

earlier of (a) Confirmation or (b) service of a notice that the executory contract or unexpired

lease has been rejected.  All such Claims for which proofs of Claim are required to be Filed, if

Allowed, will be, and will be treated as, Class 6 General Unsecured Claims, subject to the

provisions of the Plan.

## ARTICLE XI

## EFFECT OF CONFIRMATION AND RELATED PROVISIONS

**A.**     **Effect of Confirmation**

The provisions of the confirmed Plan shall bind the Debtors, any entity acquiring

property under the Plan, and any Creditor or Interest Holder, whether or not such Creditor or

Interest Holder has Filed a proof of Claim or Interest in the Cases, whether or not the Claim of

such Creditor or the Interest of such Interest Holder is Impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and debts shall be as fixed and adjusted pursuant to this Plan. With respect to any taxes of the kind specified in Bankruptcy Code section 1146(c), this Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or governmental unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded.

**B.      Discharge of Indebtedness for Reorganized Debtors**

As otherwise provided in this Plan or the Confirmation Order, the rights afforded under this Plan and the treatment of Claims under this Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims against the Reorganized Debtors. Except to the extent provided under the Plan, confirmation of the Plan shall discharge each of the Reorganized Debtors from all Claims or other debts that arose at any time before the Effective Date and all debts of the kind specified in section 502(g), 502(h) or 502 (i) of the Bankruptcy Code. As of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined from commencing or continuing any action, the employment of process, or other action, to collect, recover or offset any such Claim as a liability of the Reorganized Debtors to the full extent permitted by section 524 of the Bankruptcy Code.

**C. Injunction**

      1.    **Generally.**

      Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Cases pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until the Effective Date. From and after the Effective Date, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or interest, (a) seeking to hold (i) the Debtors or the New Latham Group or (ii) the property of the Debtors or the New Latham Group, liable for any Claim, obligation, right, interest, debt, or liability that has been satisfied, discharged or released pursuant the Plan.

      2.    **Injunction Related to Rights of Action and Terminated Claims, Administrative Expenses or Interests.**

      Except as provided in the Plan or in the Confirmation Order, as of the Confirmation Date, all Entities that have held, currently hold or may hold a Claim, Administrative Expense, Interest, or other debt or liability that is stayed, Impaired, or terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions either (x) against the Debtors, the New Latham Group, or their property on account of all or such portion of any such Claims, Administrative Expenses, Interests, debts, or liabilities that are stayed, Impaired, or terminated or (y) against any Person with respect to any right of action or any objection to a Claim, Administrative

Expense, or Interest, which right of action or objection, under the Plan, is waived, released, assigned or exclusively retained by any of the Debtors: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order, (c) creating, perfecting, or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan. To avoid any doubt, except as otherwise expressly noted in the Plan, nothing in the Plan or herein shall be construed or is intended to affect, enjoin, modify, release, or waive any claims, rights, and actions that a third party may have against a person other than the Debtors or the New Latham Group, provided that such claims, rights, and actions are wholly separate and exist independently from any claims, rights, and actions of the Estates.

D.   **Exculpation**

As of and subject to the occurrence of the Effective Date, each of the Debtors, the Prepetition Agent, the Steering Group, the Prepetition Lenders, Holders of Existing Equity Interests, and their respective representatives, officers, directors, principals, partners, members, employees agents, financial advisors, attorneys, accountants, investment bankers, consultants, and other Professionals, acting in their capacity as such, shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken, in connection with, or related to, the formulation, preparation,

dissemination, implementation, administration, Confirmation or consummation of the Plan

or any contract, instrument, waiver, release or other agreement or document created or

entered into, in connection with the Plan, or any other act taken or omitted to be taken in

connection with the Cases; *provided, however,* that the foregoing provisions of this

subsection shall have no effect on the liability of any Person or Entity that results from any

such act or omission that is determined in a Final Order to have constituted gross

negligence or willful misconduct.

E.     Debtor Release

Each Debtor, for itself and its respective successors, assigns, and transferees

shall be deemed to have released any and all claims and causes of action against

the Debtors, the Agent, the Steering Group, the Prepetition Lenders, Holders of Existing

Equity Interests, and their respective representatives, officers, directors, principals,

partners, members, employees agents, financial advisors, attorneys, accountants,

investment bankers, consultants, and other Professionals, acting in their capacity as such,

arising prior to the Effective Date.

F.     Third Party Release

Each Creditor that (i) is deemed to have voted to accept the Plan; or (ii) does

not elect to opt out of this release by checking the appropriate box on the ballot provided to

such Creditor in connection with solicitation of such Creditors' vote to accept to reject the

Plan, for itself and its respective successors, assigns, transferees, those officers and

directors, acting in such capacities as of the Petition Date, agents, members, financial

**advisors, attorneys, employees, partners, affiliates, representatives, in each case in their capacity as such, shall, by virtue of its vote, be deemed to have released any and all claims and causes of action against the Debtors, the Prepetition Agent, the Steering Group, Prepetition Lenders, Holders of Existing Equity Interests and the Debtors, and their respective representatives, officers, directors, principals, partners, members, employees agents, financial advisors, attorneys, accountants, investment bankers, consultants, and other Professionals, acting in their capacity as such, arising prior to the Effective Date.**

G.    <u>Subsequent Discovery of Facts Does Not Affect Enforceability of Releases</u>

Each releasing party under this Plan shall be deemed to have granted the releases set forth herein, notwithstanding that it may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such party expressly waives any and all rights that it may have under any statute or common law principle, including section 1542 of the California Civil Code, which would limit the effect of such releases to those Claims or causes of action actually known or suspected to exist at the time of Confirmation. Section 1542 of the California Civil Code generally provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

## ARTICLE XII

## RETIREE BENEFITS

All retiree benefits, as that term is defined in section 1114(a) of the Bankruptcy Code, should continue in accordance with provisions of the Debtors' qualified defined benefit pension plan under the Internal Revenue Code and the Employee Retirement Income Security Action of 1974, in accordance with applicable law.

## ARTICLE XIII

## NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL

The Debtors do not charge any rates for purposes of section 1129(a)(6) that are regulated by any governmental regulatory commission with jurisdiction under applicable nonbankruptcy law.

## ARTICLE XIV

## RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS

A.     **Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Cases and any of the proceedings related to the Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(1)     to establish the priority or secured or unsecured status of, allow, disallow, determine, liquidate, classify, or estimate any Claim, Administrative Expense or Interest (including, without limitation and by example only, determination of Tax issues or liabilities in accordance with section 505 of the Bankruptcy Code), resolve any objections to the allowance or priority of Claims, Administrative Expense or Interests, or resolve any dispute as to the treatment necessary to reinstate a Claim, Administrative Expense or Interest pursuant to the Plan;

(2)     to grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(3)     to resolve any matters related to the rejection of any executory contract or unexpired lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear, determine, and, if necessary, liquidate any Claims or Administrative Expenses arising therefrom;

(4)     to ensure that distributions to Holders of Allowed Claims, Administrative Expenses, or Interests are made pursuant to the provisions of the Plan, and to effectuate performance of the provisions of the Plan;

(5)     to decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending before the Effective Date or that may be commenced thereafter as provided in the Plan;

(6)     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, except as otherwise provided in the Confirmation Order or in the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(7)     to resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or the Confirmation Order;

(8)     subject to the restrictions on modifications provided in any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, to modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement

or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(9) to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(10) to consider and act on any dispute regarding and the compromise and settlement of any Claim against the Debtors;

(11) to enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Debtors wherever located;

(12) to hear and determine any motions or contested matters involving Tax Claims or Taxes either arising prior (or for periods including times prior) to the Effective Date or relating to the administration of the Cases, including, without limitation (i) matters involving federal, state and local Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, (ii) matters concerning Tax refunds due for any period including times prior to the Effective Date, and (iii) any matters arising prior to the Effective Date affecting Tax attributes of the Debtors;

(13) to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(14) to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings issued or entered in connection with the Cases or the Plan;

(15) to remand to state court any claim, cause of action, or proceeding involving the Debtors that was removed to federal court in whole or in part in reliance upon 28 U.S.C. § 1334;

(16) to determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, except as otherwise provided in the Plan;

(17)    to determine any other matter not inconsistent with the Bankruptcy Code; and

(18)    to enter an order or final decree concluding the Cases.

## B.    **Miscellaneous Matters**

1.    <u>Headings</u>.

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

2.    <u>Notices</u>.

All notices and requests in connection with the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

Counsel for Debtors:

| | |
|---|---|
| Pachulski Stang Ziehl & Jones LLP | Latham International, Inc. |
| Laura Davis Jones, Esq. | Attn: Mark Laven |
| David M. Bertenthal, Esq. | 787 Watervliet Shaker Road |
| Joshua M. Fried, Esq. | Latham, NY 12110 |
| 919 North Market Street, 17th Floor | |
| Wilmington, DE 19801 | |

All notices and requests to any Person of record holding any Claim, Administrative Expense, or Interest shall be sent to such Person at the Person's last known address or to the last known address of the Person's attorney of record. Any such Person may designate in writing any other address for purposes of this Section of the Plan, which designation will be effective on receipt.

3.    Successors and Assigns.

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

4.    Severability of Plan Provisions.

If, prior to Confirmation, any nonmaterial term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

5.    Term of Injunctions or Stays.

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order the Bankruptcy Court, and extent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain

in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

6.    Entire Agreement.

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

7.    Additional Documents.

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

8.    Inconsistencies.

In the event the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

## ARTICLE XV

## CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

### A.    Conditions Precedent to Plan Confirmation

It shall be a condition to Confirmation hereof that all of the terms and conditions hereof are approved or jointly waived by the Debtors and the Prepetition Lenders.

### B.    Conditions Precedent to Plan Effectiveness

The Plan will not be consummated and the Effective Date will not occur unless and until (A) the Confirmation Order is in a form acceptable to both the Debtors and to the Agent and Steering Group and is entered by the Bankruptcy Court; (B) the Plan and Plan Supplement, including any amendments, modifications, or supplements thereto shall be acceptable to: (a) the Debtors; and (b) the Required Plan Modification Agents; (C) the ABL Facility, the New Note, and such other corporate documents required to implement the Plan shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof; (D) all actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws have been fully executed and delivered; and (E) the Confirmation Order shall either be a Final Order or, if an appeal has been Filed, no stay has been obtained.  The foregoing conditions may be jointly waived by the Debtors, the Agent and Steering Group (such waiver shall not require any notice, Bankruptcy Court order, or any further action).

C.      **Effect of Non-Occurrence of Conditions to Effective Date**

Each of the conditions to the Effective Date must be satisfied or duly waived, as provided above, within thirty days after the Confirmation Date. If the Confirmation Order is vacated for failure to satisfy a condition to the Effective Date, the Plan shall be deemed null and void in all respects.

## ARTICLE XVI

## EFFECT OF CONFIRMATION

A.      **Binding Effect of Confirmation**

Confirmation will bind the Debtors; all Holders of Claims and Existing Equity Interest and other parties in interest to the provisions of the Plan whether or not the claim or interest of such Holder is Impaired under the Plan and whether or not the Holder of such Claim or Interest has accepted the Plan.

B.      **Good Faith**

Confirmation of the Plan shall constitute a finding that: (i) the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code and (ii) all Persons' solicitations of acceptances or rejections of the Plan and the offer, issuance, sale, or purchase of a security offered or sold under the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

C.      **No Limitations on Effect of Confirmation**

Nothing contained in the Plan will limit the effect of Confirmation as described in section 1141 of the Bankruptcy Code.

# ARTICLE XVII

## MODIFICATION OR WITHDRAWAL OF PLAN

### A.    Modification of Plan

The Debtors may seek to amend or modify the Plan at any time prior to its Confirmation in the manner provided by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise order, and except as otherwise set forth herein, the Debtors reserve the right to amend the terms of the Plan or waive any conditions to its Confirmation, effectiveness or consummation if the Debtors determine that such amendments or waivers are necessary or desirable to confirm, effectuate or consummate the Plan.

After Confirmation of the Plan, but prior to the Effective Date, New Opco, on behalf of the Debtors, may apply to the Bankruptcy Court, pursuant to section 1127 of the Bankruptcy Code, to modify the Plan. After the Effective Date, the New Opco, on behalf of the Debtors, and the Prepetition Lenders may apply to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

### B.    Withdrawal of Plan

The Debtors reserve the right to revoke and withdraw the Plan at any time prior to the Effective Date, in which case the Plan will be deemed to be null and void.

## ARTICLE XVIII

## CONFIRMATION REQUEST

The Debtors request that the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any Impaired Class.

Dated: December 18, 2009

LATHAM INTERNATIONAL, INC.

By: _____
Its:    President and Chief Executive Officer

Dated: December 18, 2009

LATHAM MANUFACTURING CORP.

By: _____
Its:    President and Chief Executive Officer

Dated: December 18, 2009

VIKING POOLS, LLC

By: _____
Its:    Chief Executive Officer

Dated: December 18, 2009

COVERSTAR, LLC

By: _____
Its:    Chief Executive Officer

Dated: December 18, 2009

KAFKO (USA) CORP.

By: _____
Its:    Chief Executive Officer

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joshua M. Fried (CA Bar No. 181541)
Timothy P. Cairns (DE Bar No. 4228)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone:  302/652-4100
Facsimile:  302/652-4400

Counsel to Debtors and Debtors in Possession