IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LATHAM INTERNATIONAL, INC., et al.,[1] | ) | Case No. 09-14490 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Objection Deadline: January 15, 2010 at 4:00 p.m. |
| | | Hearing Date: January 21, 2010 at 3:00 p.m. |

**MOTION OF DEBTORS FOR ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS FINANCIAL ADVISOR TO DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO PETITION DATE, AND (II) MODIFYING TIME-KEEPING REQUIREMENTS UNDER LOCAL RULES PURSUANT TO LOCAL RULE 2016-2(g)**

By this Motion (the "Motion"), the above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company") seek entry of an order (the "Order") (I) authorizing the Debtors to retain and employ Moelis & Company LLC ("Moelis") as their financial advisor, effective *nunc pro tunc* to the Petition Date (defined below), and (II) modifying the time-keeping requirements of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") pursuant to Local Rule 2016-2(g). In support of this Motion, the Debtors submit the declaration of Todd Wadler (the "Wadler Declaration") attached hereto as Exhibit A. In further support of this Motion, the Debtors state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Latham International, Inc (9049), 787 Watervliet Shaker Road, Latham, NY 12110; Latham Manufacturing Corp. (9130), 787 Watervliet Shaker Road, Latham, NY 12110; Viking Pools, LLC (2924), 1473 Industrial Park Road, Jane Lew, WV 26378; Coverstar, LLC (1935), 1795 West 200 North, Lindon, UT 84046; and Kafko (U.S.) Corp. (0638), 787 Watervliet Shaker Road, Latham, NY 12110.

## Jurisdiction

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for relief sought herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 2016-2.

## Background

3. On December 22, 2009 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made and no committees have been appointed or designated in these bankruptcy cases.

4. The Debtors are the largest manufacturer of in-ground swimming pool components and pool accessories in North America. The Debtors' diversified product lines include customized in-ground and ready-to-order above-ground vinyl pool liners, polymer and steel pool wall systems, steps and ladders, pool safety covers, spillover spas, one piece fiberglass pools, automatic pool covers, and a variety of other pool related accessories, sold under highly recognized brand names. The Debtors' products are primarily sold to the in-ground pool market both through a wide range of business-to-business distribution channels in the U.S., Canada and Europe, as well as directly to pool builders and dealers.

51407-001\DOCS_DE:156182.2

5. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the Declaration of Mark Laven, Chief Executive Officer of the Debtors, in Support of First Day Motions (the "Laven Declaration") filed on the Petition Date and incorporated herein by reference.

## Relief Requested

6. By this Motion, the Debtors seek entry of an order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2, (a) authorizing the employment and retention of Moelis as the Debtors' financial advisor, effective *nunc pro tunc* to the Petition Date, under the terms and conditions set forth in that certain engagement letter dated as of July 15, 2009 (the "Engagement Letter"), a copy of which is attached as Exhibit 1 to the Wadler Declaration); (b) approving the terms and conditions of Moelis's employment, including the proposed fee structure set forth in the Engagement Letter, subject to the standards set forth in section 328 of the Bankruptcy Code, provided that the United States Trustee in this district (the "UST") alone shall be entitled to review motions for payment of compensation and reimbursement of expenses by Moelis under section 330 of the Bankruptcy Code; and (c) modifying applicable fee motion and information requirements, including those contained in Local Rule 2016-2.

## Moelis's Qualifications

7. Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, NY 10022. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation. Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Holdings LLC. Moelis & Company Holdings

3

51407-001\DOCS_DE:156182.2

LLC, together with its subsidiaries, has approximately 270 employees located in offices in New York, Los Angeles, Boston, Chicago, and London.

8. Moelis provides a broad range of corporate advisory services to its clients, including, without limitation, services pertaining to (a) general financial advice; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, in both out-of-court and chapter 11 proceedings.

9. The Debtors have selected Moelis as their financial advisor based upon, among other things, (a) the Debtors' need to retain a financial advisor firm to provide advice with respect to the Debtors' restructuring activities, and (b) Moelis's extensive experience and excellent reputation in providing financial advisory and investment banking services in complex chapter 11 cases such as these. Moreover, Moelis was engaged by the Debtors prepetition on July 15, 2009, and has gained valuable knowledge about the Debtors' business and operations during the engagement.

10. Since Moelis's registration as a broker-dealer in 2007, it has provided advisory services to a number of clients, including Allied Waste Industries, Inc., Anheuser-Busch Companies, Inc., American Media, Inc., Cannery Casino Resorts, LLC, Greektown Holdings, LLC, Hilton Hotels Corporation, Idearc Inc., Invitrogen Corporation, NBTY, Inc., Pappas Telecasting Inc., WCI Steel, Inc., Westwood One, Inc., and Yahoo! Inc. In addition, Moelis has been actively involved in major chapter 11 cases and has been retained and employed by debtors in many cases in this district as a financial advisor, sales consultant, and/or investment banker. See, e.g., In re Source Interlink, Case No. 09-11424 (KG) (Bankr. D. Del. May 21, 2009); In re

Muzak Holdings LLC, Case No. 09-10422 (KJC) (Bankr. D. Del. Apr. 6, 2009); In re Aleris Int'l Inc., Case No. 09-10478 (BLS) (Bankr. D. Del. Mar. 16, 2009); In re Pappas Telecasting Inc., Case No. 08-10916 (PJW) (Bankr. D. Del. Aug. 13, 2008).

11. Accordingly, the Debtors submit that the employment and retention of Moelis is in the best interests of the Debtors, their creditors, and all parties in interest.

**Services to be Rendered**

12. Pursuant to the terms of the Engagement Letter, in consideration for the compensation contemplated therein, Moelis's services may include, but are not limited to, the following:[2]

(a) continue undertaking, in consultation with members of management of the Company, a comprehensive business and financial analysis of the Company;

(b) review and analyze the Company's business plans, operating and financial strategy, and financial projections, including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(c) evaluate the Company's debt capacity and assist in the determination of an appropriate capital structure for the Company, and assist the Company in raising a revolving credit facility of up to $25 million;

(d) determine and evaluate the risks and benefits of considering, initiating, and consummating an amendment or a Restructuring Transaction (or any combination thereof);

(e) as the Company requests, identify, review, evaluate, initiate, and negotiate an amendment or a Restructuring Transaction (or any combination thereof), and, as directed, solicit and evaluate indications of interest and/or proposals for an amendment or a Restructuring Transaction (or any combination thereof) from current or potential lenders, equity investors, and/or strategic partners;

---

[2] The summaries of Engagement Letter terms throughout this Motion, including with respect to services to be rendered, the Fee Structure, and indemnification, are qualified in their entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the summaries contained in this Motion and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Unless otherwise defined, capitalized terms used in such summaries shall have the meanings ascribed to them in the Engagement Letter.

(f) advise and assist the Company, and if requested participate, in the negotiations of an amendment or a Restructuring Transaction (or any combination thereof);

(g) determine values or ranges of values (as appropriate) for the Company and any securities that the Company offers or proposes to offer in connection with an amendment or a Restructuring Transaction;

(h) contact potential acquirers or investors that Moelis and the Company agree are appropriate (Moelis may meet with representatives of such acquirers or investors and provide such representatives with information about the Company's assets, properties, or businesses that is acceptable to the Company, subject to customary business confidentiality agreements in form and substance approved by the Company);

(i) assist the Company in the development, preparation, and distribution of selected information, documents, and other materials to create interest in and to consummate any amendment or Restructuring Transaction (or any combination thereof);

(j) assist the Company in valuing its assets or business, provided that any real estate or fixed asset appraisals will be undertaken by third-party appraisers, separately retained and compensated by the Company;

(k) be available at the Company's request to meet with its management, board of directors, creditor groups, equity holders, any official committees appointed in these bankruptcy cases, or other parties to discuss an amendment or a Restructuring Transaction (or any combination thereof);

(l) if requested by the Company, participate in hearings before this Court and provide relevant testimony; and

(m) such other financial advisory within the scope of the foregoing as Moelis and the Company agree.

## Compensation

13. The Debtors have agreed to compensate and reimburse Moelis in accordance with the arrangement set forth in the Engagement Letter (such arrangement, the "Fee Structure"), which includes, among other things, the following:

(a) Monthly Fee. During the term of Moelis's engagement, a cash fee of $150,000 per month (the "Monthly Fee"). As described in the Engagement Letter, Monthly Fees shall be paid in advance prior to the 15th day of each subsequent month. Whether or not a Restructuring Transaction has taken place or will take place,

Moelis shall earn and be paid the Monthly Fee every month during the term of its engagement (the Monthly Fee earned in the final month may be prorated).

(b) <u>Restructuring Fee</u>. In addition to the foregoing Monthly Fee, the Company shall pay Moelis a cash fee (the "<u>Restructuring Fee</u>") of $1,650,000 plus an amount equal to 1% of the principal amount drawn on the Company's revolving credit facility at the time the Restructuring Transaction is consummated; provided that an amount equal to 50% of all Monthly Fees paid to Moelis in excess of $450,000 shall be credited against the Restructuring Fee.

(c) <u>DIP Financing Fee</u>. Upon the closing of a debtor-in-possession financing (a "<u>DIP Financing</u>") for the Debtors in connection with these bankruptcy cases, a fee equal to 1% of the aggregate principal amount of the DIP Financing facility arranged by Moelis and provided by any entity other than any equity holder or affiliate thereof.

14. The Debtors understand that the Fee Structure, as described in the Engagement Letter, is consistent with employment and compensation arrangements typically entered into by Moelis. The Debtors believe that the Fee Structure is comparable to compensation generally charged by financial advisors of similar stature for comparable engagements, both in and out of court, and that the Fee Structure is market-based. Given the numerous issues that Moelis may be required to address in these chapter 11 cases, Moelis's commitment to the variable levels of time and effort necessary to address issues as they arise, and Moelis's experience and expertise, the Debtors believe that the Fee Structure is reasonable, and is designed to compensate Moelis fairly for its services.

15. Moelis intends to apply for compensation for its services and reimbursement of its expenses incurred in connection with these bankruptcy cases, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of the Court and consistent with the Fee Structure. Because the Debtors seek to retain Moelis under section 328(a) of the Bankruptcy Code, the Debtors believe that Moelis's compensation and expense reimbursement

should not be subject to any additional or further review under section 330, except by the UST alone as described in this Motion.

16. To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed in the Wadler Declaration, Moelis has not shared or agreed to share any of its compensation from the Debtors with any persons other than its managing directors, professionals, and/or employees, as permitted by section 504 of the Bankruptcy Code.

17. Before the Petition Date, the Debtors paid Moelis approximately $848,055.47 for fees and expenses billed through December 21, 2009 for Moelis's representation of the Debtors pursuant to the terms of the Engagement Letter. As of the Petition Date, Moelis did not hold a prepetition claim against the Debtors for services rendered or reimbursable fees in connection with the engagement. To the extent that Moelis is holding funds from the Debtors in excess of fees earned and reimbursements due as of the Petition Date, Moelis will hold such excess funds as a retainer to be applied against postpetition fees and expenses due from the Debtors to Moelis, subject to compliance with applicable fee motion requirements.

**Indemnification Provisions**

18. The Debtors have agreed to indemnify, and pay certain contributions to, Moelis in accordance with the terms and conditions set forth in Engagement Letter, including Annex A thereto (collectively, the applicable provisions of the Engagement Letter, the "Indemnification Provisions"). Under the Indemnification Provisions, the Debtors have, among other things, agreed to reimburse, indemnify, and hold Moelis and other Indemnified Persons (as defined in the Engagement Letter) harmless from and against any losses, claims, liabilities, damages, and expenses incurred to or by any such person in connection with the services provided to the Debtors, except for any losses, claims, damages or liabilities that are finally determined by a court

8

or arbitral tribunal to have resulted primarily from the bad faith, willful misconduct, or gross negligence of an Indemnified Person.

19. The Debtors seek approval of the Indemnification Provisions, subject during the pendency of these chapter 11 cases to the following:

(a) The Debtors shall have no obligation to indemnify any Indemnified Person, or provide contribution or reimbursement to any Indemnified Person, for any claim or expense that is either (i) judicially determined (the determination having become final) to have primarily arisen from the Indemnified Person's gross negligence, willful misconduct, bad faith, or self-dealing to which the Debtors have not consented; (ii) for a contractual dispute in which the Debtors allege the breach of the Indemnified Person's obligations to maintain the confidentiality of non-public information, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Company, et al., 315 F.3d 217 (3d Cir. 2003); or (iii) settled without the Debtors' consent prior to a judicial determination as to the Indemnified Person's bad faith, willful misconduct, or gross negligence but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order;

(b) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, such Indemnified Person must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Person before the entry of an order by this Court approving the payment. This subparagraph (b) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Indemnified Persons for indemnification, contribution, or reimbursement, and is not a provision limiting the duration of the Debtors' obligation to indemnify Indemnified Persons. All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, or reimbursement; and

(c) Any limitation on any amounts to be contributed by the parties to the Engagement Letter shall be eliminated.

9

20. The Debtors and Moelis negotiated the Engagement Letter, including the Indemnification Provisions, at arm's length. The Debtors believe that the Indemnification Provisions are customary and reasonable terms of consideration for financial advisors such as Moelis in connection with in-court and out-of-court restructuring activities, and that approval of the Engagement Letter and the Indemnification Provisions is in the best interest of the Debtors and the estates.

## **Moelis' Disinterestedness**

21. To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed herein or in the Wadler Declaration, Moelis and its professionals (a) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, (b) do not hold or represent any interest adverse to the estates, (c) do not have any connections with any of the Debtors or their affiliates (except with respect to this engagement), the Debtor's creditors, any other party in interest, their respective attorneys and accountants, the UST or any person employed in the Office of the UST, or any judge in the Bankruptcy Court or the United States District Court for the District of Delaware, and (d) are not related to any judge of this Court, the Assistant UST for this District, or the UST assigned to these bankruptcy cases.

22. The Debtors' knowledge, information, and belief regarding the matters set forth herein are based upon, and made in reliance on, the Wadler Declaration. Moelis will continue to monitor for any matters that might affect its "disinterested" status. In the event that additional disclosure becomes necessary, Moelis will supplement the Wadler Declaration.

51407-001\DOCS_DE:156182.2

## Basis for Relief

**A.  Section 328 of the Bankruptcy Code Permits Employment and Retention of Moelis on the Terms Set forth in the Engagement Letter**

23.  The Debtors seek approval of the Engagement Letter and the Fee Structure set forth therein pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under § 327 [of the Bankruptcy Code] . . . on any reasonable terms and conditions of employment." 11 U.S.C. § 328(a).  Section 328(a) of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in In re National Gypsum Co.,

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  The uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (citations omitted).

24.  Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a change was made to section Bankruptcy Code § 328(a) that is highlighted in bold below:

> The trustee, or a committee appointed under § 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under §§ 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, **on a fixed or percentage fee basis**, or on a contingent fee basis.

11

11 U.S.C. § 328(a) (emphasis added). This change makes clear the ability of the Debtors, with court approval, to retain a professional on a fixed fee basis. Section 328(a) of the Bankruptcy Code therefore permits the Court to approve the terms and conditions of Moelis's engagement, as set forth in the Engagement Letter, including, without limitation, the Fee Structure.

25. The Fee Structure appropriately reflects the nature and scope of services to be provided by Moelis in the context of Moelis's substantial experience and expertise, and is consistent with fee structures typically utilized by Moelis and other leading financial advisors, which do not bill their clients on an hourly basis. Fee arrangements similar to the Fee Structure have been approved in other cases in this district. See, e.g., In re Muzak Holdings LLC, et al., Case No. 09-10422(KJC) (Bankr. D. Del. Apr. 6, 2009) (authorizing retention of Moelis as financial advisor and investment banker on similar terms); In re Pappas Telecasting Inc., Case No. 08-10916 (PJW) (Bankr. D. Del. Oct. 29, 2008) (authorizing retention of Moelis as sales consultant to the chapter 11 trustee with fees subject to section 328(a) review); In re Tropicana Entm't, LLC, Case No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008) (authorizing retention of Lazard Frères & Co. LLC on similar terms). The Debtors therefore request that Court approve the retention of Moelis, including the payment of compensation and expenses to Moelis in accordance with the Fee Structure, pursuant to section 328(a) of the Bankruptcy Code.

26. Notwithstanding its proposed engagement under section 328 of the Bankruptcy Code, Moelis will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as those procedures may be modified or supplemented by order of the Court.

51407-001\DOCS_DE:156182.2

27. Bankruptcy Rule 2016 and Local Rule 2016-2 require estate professionals to file motions or applications for payment of compensation in bankruptcy cases. Local Rule 2016-2(d) requires such professionals to submit detailed time entries setting forth, among other things, detailed descriptions of activities performed, the amounts of time (in tenths of an hour) spent on those activities, and the type and subject matter of those activities. Local Rule 2016-2(d) also requires that descriptions of activities be divided into general project categories. Local Rule 2016-2(g), however, allows the Court to waive the requirements of Local Rule 2016-2 for cause.

28. The Debtors submit that sufficient cause exists for the Court to modify applicable fee motion and information requirements, including the requirements of Local Rule 2016-2, given the financial industry practice, as well as the nature of Moelis's particular engagement and compensation structure. Consistent with the ordinary practices of Moelis and other financial advisory and investment banking firms, which do not employ hours-based fee arrangements, Moelis does not typically maintain contemporaneous time records in increments of one tenth (.10) of an hour or provide or conform to a schedule of hourly rates for its professionals. When required to do so, Moelis's restructuring professionals have kept time records in one-hour (1.0) increments describing their activities and the identities of the persons performing such activities. Moelis's employees that are not restructuring professionals do not, however, typically keep any time records. In addition, Moelis's restructuring professionals do not categorize their time on a project basis.

29. Accordingly, pursuant to Local Rule 2016-2(d), the Debtors request that the Court modify the requirements of Local Rule 2016-2 and any other applicable requirements to better reflect the nature of Moelis's engagement and compensation structure, such that Moelis shall be allowed to keep time records in accordance with the practices described above.

51407-001\DOCS_DE:156182.2

B.  **Approval of the Indemnification Provisions is Appropriate**

30. The Debtors believe that the Indemnification Provisions highlighted above are customary and reasonable for financial advisory engagements, in both out-of-court and chapter 11 proceedings. See, e.g., In re United Artists Theatre Co., Case No 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000) (authorizing indemnification of Houlihan, Lokey, Howard & Zukin Capital by debtors), aff'd, 315 F.3d 217 (3d Cir. 2003); In re Joan & David Halpern. Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000) (authorizing indemnification of Newmark Retail Financial Advisors by debtors), aff'd, No. 00 Civ. 3601 (JSM), 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000).

31. Similar indemnification arrangements have been approved and implemented in other cases this district. See, e.g., In re Leiner Health Prods., Inc., Case No. 08-10446 (Bankr. D. Del. Apr. 8, 2008); In re Dura Auto. Sys., Inc., Case No. 06-11202 (Bankr. D. Del. Nov. 20, 2006); In re FLYi, Inc., Case No. 05-20011 (Bankr. D. Del. Dec. 2, 2005).

32. For the foregoing reasons, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules with respect to the relief sought herein. Accordingly, the Debtors respectfully request that the Court authorize them to employ and retain Moelis as their financial advisor, *nunc pro tunc* to the Petition Date, on the terms set forth in the Engagement Letter and described in this Motion, pursuant to section 328(a) of the Bankruptcy Code.

## Notice

33. The Debtors have provided notice of this Motion to (i) the Office of the United States Trustee, (ii) the Debtors' prepetition secured lenders, (iii) creditors holding the thirty-five largest unsecured claims against the Debtors on a consolidated basis, or their legal counsel (if known) and (iv) those persons who have requested notice pursuant to Rule 2002 of the Federal

Rules of Bankruptcy Procedure. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

34. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit B, (a) approving the employment and retention of Moelis as the Debtors' financial advisor, effective *nunc pro tunc* to the Petition Date, under the terms and conditions set forth in the Engagement Letter, pursuant to section 328(a) of the Bankruptcy Code; (b) approving the terms of Moelis's employment including the Fee Structure, under section 328(a) of the Bankruptcy Code, provided that the UST alone shall be entitled to review Moelis's motions for payment of compensation and reimbursement of expenses under section 330 of the Bankruptcy Code; (c) modifying applicable fee motion and information requirements, including those contained in Local Rule 2016-2, as requested in this Motion; and (d) granting such other and further relief as the Court deems appropriate.

Dated: December 30, 2009

**Latham International, Inc., et al.**

By: _____
Mark P. Laven
Title: President and Chief Executive Officer