# EXHIBIT A

## Wadler Declaration

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LATHAM INTERNATIONAL, INC., et al.,[1] | ) Case No. 09-14490 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |

**DECLARATION OF TODD WADLER IN SUPPORT OF MOTION
FOR ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION OF
MOELIS & COMPANY LLC AS FINANCIAL ADVISOR TO THE DEBTORS
AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE,
AND (II) MODIFYING TIME-KEEPING REQUIREMENTS UNDER THE
LOCAL RULES PURSUANT TO LOCAL RULE 2016-2(g)**

1.     I, Todd Wadler, am a Managing Director of Moelis & Company LLC

("Moelis").  I am authorized to make this declaration on behalf of Moelis in support of the

Motion for Order (I) Authorizing Employment and Retention of Moelis & Company LLC as

Financial Advisor to Debtors and Debtors In Possession *Nunc  Pro Tunc*  to Petition Date, and

(II) Modifying Time-Keeping Requirements Under the Local Rules Pursuant to Local Rule

2016-2(g) (the "Motion").[2]  Except as otherwise indicated, I have personal knowledge of the

matters set forth herein and, if called as a witness, would testify competently thereto.[3]

---

[1]     The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Latham International, Inc (9049), 787 Watervliet Shaker Road, Latham, NY 12110; Latham Manufacturing Corp. (9130), 787 Watervliet Shaker Road, Latham, NY 12110; Viking Pools, LLC (2924), 1473 Industrial Park Road, Jane Lew, WV 26378; Coverstar, LLC (1935), 1795 West 200 North, Lindon, UT 84046; and Kafko (U.S.) Corp. (0638), 787 Watervliet Shaker Road, Latham, NY 12110.

[2]     Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Motion.

[3]     Certain of the disclosures herein relate to matters within the knowledge of other professionals at Moelis and are based on information provided by them.

## Moelis's Qualifications

2.      Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, NY 10022. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation. Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Holdings LLC. Moelis & Company Holdings LLC, together with its subsidiaries, has approximately 270 employees located in offices in New York, Los Angeles, Boston, Chicago, and London.

3.      Moelis provides a broad range of corporate advisory services to its clients, including, without limitation, services pertaining to (a) general financial advice; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, in both out-of-court and chapter 11 proceedings.

4.      Since Moelis's registration as a broker-dealer in 2007, it has provided advisory services to a number of clients, including Allied Waste Industries, Inc., Anheuser-Busch Companies, Inc., American Media, Inc., Cannery Casino Resorts, LLC, Greektown Holdings, LLC, Hilton Hotels Corporation, Idearc Inc., Invitrogen Corporation, NBTY, Inc., Pappas Telecasting Inc., WCI Steel, Inc., Westwood One, Inc., and Yahoo! Inc. In addition, Moelis has been actively involved in major chapter 11 cases and has been retained and employed by debtors in many cases in this district as a financial advisor, sales consultant, and/or investment banker, including in the following, among others: In re Source Interlink, Case No. 09-11424 (KG) (Bankr. D. Del. May 21, 2009); In re Muzak Holdings LLC, Case No. 09-10422 (KJC) (Bankr. D. Del. Apr. 6, 2009); In re Aleris Int'l Inc., Case No. 09-10478 (BLS) (Bankr. D.

2

Del. Mar. 16, 2009); In re Pappas Telecasting Inc., Case No. 08-10916 (PJW) (Bankr. D. Del. Aug. 13, 2008). Given its extensive experience with reorganization proceedings and out-of-court restructurings, Moelis is qualified to perform the Services described herein and in the Motion.

## Services to be Rendered

5.       The Debtors and Moelis have entered into an engagement letter dated as of July 15, 2009 (the "Engagement Letter"), a copy of which is attached hereto as Exhibit 1. Pursuant to the terms of the Engagement Letter, in consideration for the compensation contemplated therein, Moelis's services may include, but are not limited to, the following:[4]

(a)     continue undertaking, in consultation with members of management of the Company, a comprehensive business and financial analysis of the Company;

(b)     review and analyze the Company's business plans, operating and financial strategy, and financial projections, including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(c)     evaluate the Company's debt capacity and assist in the determination of an appropriate capital structure for the Company, and assist the Company in raising a revolving credit facility of up to $25 million;

(d)     determine and evaluate the risks and benefits of considering, initiating, and consummating an amendment or a Restructuring Transaction (or any combination thereof);

(e)     as the Company requests, identify, review, evaluate, initiate, and negotiate an amendment or a Restructuring Transaction (or any combination thereof), and, as directed, solicit and evaluate indications of interest and/or proposals for an amendment or a Restructuring Transaction (or any combination thereof) from current or potential lenders, equity investors, and/or strategic partners;

---

[4]     The summaries of Engagement Letter terms throughout the Motion and this declaration, including with respect to services to be rendered, the Fee Structure, and indemnification, are qualified in their entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the summaries contained in the Motion or this declaration and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Unless otherwise defined, capitalized terms used in such summaries shall have the meanings ascribed to them in the Engagement Letter.

(f)     advise and assist the Company, and if requested participate, in the negotiations of an amendment or a Restructuring Transaction (or any combination thereof);

(g)     determine values or ranges of values (as appropriate) for the Company and any securities that the Company offers or proposes to offer in connection with an amendment or a Restructuring Transaction;

(h)     contact potential acquirers or investors that Moelis and the Company agree are appropriate (Moelis may meet with representatives of such acquirers or investors and provide such representatives with information about the Company's assets, properties, or businesses that is acceptable to the Company, subject to customary business confidentiality agreements in form and substance approved by the Company);

(i)     assist the Company in the development, preparation, and distribution of selected information, documents, and other materials to create interest in and to consummate any amendment or Restructuring Transaction (or any combination thereof);

(j)     assist the Company in valuing its assets or business, provided that any real estate or fixed asset appraisals will be undertaken by third-party appraisers, separately retained and compensated by the Company;

(k)     be available at the Company's request to meet with its management, board of directors, creditor groups, equity holders, any official committees appointed in these bankruptcy cases, or other parties to discuss an amendment or a Restructuring Transaction (or any combination thereof);

(l)     if requested by the Company, participate in hearings before this Court and provide relevant testimony; and

(m)     such other financial advisory within the scope of the foregoing as Moelis and the Company agree.

6.     Subject to this Court's approval of the Motion, Moelis is willing and able to serve as the Debtors' financial advisor and to perform the services described herein and in the Engagement Letter. All services that Moelis will provide to the Debtors will be (a) at the request of the Debtors, (b) appropriately directed by the Debtors so as to avoid duplication of efforts among professionals retained in the case, and (c) performed in accordance with customary market practice of financial advisory professionals.

4

## Compensation

7.     The Debtors have agreed to compensate and reimburse Moelis in

accordance with the arrangement set forth in the Engagement Letter (such arrangement, the "Fee

Structure"), which includes, among other things, the following:

(a)     Monthly Fee.  During the term of Moelis's engagement, a cash fee of
$150,000 per month (the "Monthly Fee").  As described in the
Engagement Letter, Monthly Fees shall be paid in advance prior to the 15th
day of each subsequent month.  Whether or not a Restructuring
Transaction has taken place or will take place, Moelis shall earn and be
paid the Monthly Fee every month during the term of its engagement (the
Monthly Fee earned in the final month may be prorated).

(b)     Restructuring Fee.  In addition to the foregoing Monthly Fee, the
Company shall pay Moelis a cash fee (the "Restructuring Fee") of
$1,650,000 plus an amount equal to 1% of the principal amount drawn on
the Company's revolving credit facility at the time the Restructuring
Transaction is consummated; provided that an amount equal to 50% of all
Monthly Fees paid to Moelis in excess of $450,000 shall be credited
against the Restructuring Fee.

(c)     DIP Financing Fee.  Upon the closing of a debtor-in-possession financing
(a "DIP Financing") for the Debtors in connection with these bankruptcy
cases, a fee equal to 1% of the aggregate principal amount of the DIP
Financing facility arranged by Moelis and provided by any entity other
than any equity holder or affiliate thereof.

8.     Moelis believes that the terms and conditions of the Engagement Letter,

including the Fee Structure, are customary and reasonable for financial advisory engagements

entered into by Moelis with respect to the rendition of similar services to clients such as the

Debtors, both in and out of bankruptcy.

9.     Moelis intends to apply for compensation for its services and

reimbursement of its expenses incurred in connection with these bankruptcy cases, subject to the

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of the

Court and consistent with the Fee Structure.  Consistent with the ordinary practices of Moelis

and other financial advisory and investment banking firms, which do not employ hours-based fee

5

arrangements, Moelis does not typically maintain contemporaneous time records in increments of one tenth (.10) of an hour or provide or conform to a schedule of hourly rates for its professionals. When required to do so, Moelis's restructuring professionals have kept time records in one-hour (1.0) increments describing their activities and the identities of the persons performing such activities. Moelis's employees that are not restructuring professionals do not, however, typically keep any time records. In addition, Moelis's restructuring professionals do not categorize their time on a project basis. The Motion seeks modification of applicable requirements to better reflect the nature of Moelis's engagement and compensation structure, such that Moelis will be allowed to keep time records in accordance with the practices described above.

10.     Moelis has not shared or agreed to share any of its compensation from the Debtors with any persons other than its managing directors, professionals, and/or employees, as permitted by section 504 of the Bankruptcy Code.

11.     Before the Petition Date, the Debtors paid Moelis approximately $848,055.47 for fees and expenses billed through December 21, 2009 for Moelis's representation of the Debtors pursuant to the terms of the Engagement Letter. As of the Petition Date, Moelis did not hold a prepetition claim against the Debtors for services rendered or reimbursable fees in connection with the engagement. To the extent that Moelis is holding funds from the Debtors in excess of fees earned and reimbursements due as of the Petition Date, Moelis will hold such excess funds as a retainer to be applied against postpetition fees and expenses due from the Debtors to Moelis, subject to compliance with applicable fee motion requirements.

### Indemnification Provisions

12.     The Debtors have agreed to indemnify, and pay certain contributions to, Moelis in accordance with the terms and conditions set forth in Engagement Letter, including

6

Annex A thereto (collectively, such provisions, the "Indemnification Provisions"). Under the

Indemnification Provisions, the Debtors have, among other things, agreed to reimburse,

indemnify, and hold Moelis and other Indemnified Persons (as defined in the Engagement Letter)

harmless from and against any losses, claims, liabilities, damages, and expenses incurred to or by

any such person in connection with the services provided to the Debtors, except for any losses,

claims, damages or liabilities that are finally determined by a court or arbitral tribunal to have

resulted primarily from the bad faith, willful misconduct, or gross negligence of an Indemnified

Person.

13.    Moelis has agreed that the Indemnification Provisions will be subject to

the following during the pendency of these chapter 11 cases:

(a)    The Debtors shall have no obligation to indemnify any Indemnified
Person, or provide contribution or reimbursement to any Indemnified
Person, for any claim or expense that is either (i) judicially determined
(the determination having become final) to have primarily arisen from the
Indemnified Person's gross negligence, willful misconduct, bad faith, or
self-dealing to which the Debtors have not consented; (ii) for a contractual
dispute in which the Debtors allege the breach of the Indemnified Person's
obligations to maintain the confidentiality of non-public information,
unless the Court determines that indemnification, contribution, or
reimbursement would be permissible pursuant to In re United Artists
Theatre Company, et al., 315 F.3d 217 (3d Cir. 2003); or (iii) settled
without the Debtors' consent prior to a judicial determination as to the
Indemnified Person's bad faith, willful misconduct, or gross negligence
but determined by this Court, after notice and a hearing, to be a claim or
expense for which such Indemnified Person should not receive indemnity,
contribution, or reimbursement under the terms of the Engagement Letter
as modified by this Order;

(b)    If, before the earlier of (i) the entry of an order confirming a chapter 11
plan in these cases (that order having become a final order no longer
subject to appeal), and (ii) the entry of an order closing these chapter 11
cases, any Indemnified Person believes that it is entitled to the payment of
any amounts by the Debtors on account of the Debtors' indemnification,
contribution, and/or reimbursement obligations under the Engagement
Letter (as modified by this Order), including, without limitation, the
advancement of defense costs, such Indemnified Person must file an
application therefor in this Court, and the Debtors may not pay any such

7

amounts to the Indemnified Person before the entry of an order by this Court approving the payment. This subparagraph (b) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Indemnified Persons for indemnification, contribution, or reimbursement, and is not a provision limiting the duration of the Debtors' obligation to indemnify Indemnified Persons. All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, or reimbursement; and

(c)     Any limitation on any amounts to be contributed by the parties to the Engagement Letter shall be eliminated.

14.     I believe that the indemnification Provisions are customary and reasonable terms of consideration for financial advisors such as Moelis in connection with in-court and out-of-court restructuring activities. Moelis negotiated the Engagement Letter, including the Indemnification Provisions, with the Debtors at arm's length.

## Moelis' Disinterestedness

15.     In connection with its engagement by the Debtors, Moelis undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. In connection with that undertaking, Moelis obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest"), which are listed on Exhibit 2 hereto. Moelis has researched its electronic client files and records to determine its connections with the Debtors and any Potential Parties in Interest. To the best of my knowledge, Moelis has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these chapter 11 cases.

16.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain, Moelis and its professionals do not have connections with the Potential

8

Parties in Interest herein, the UST or any person employed in the Office of the UST, or any judge in the Bankruptcy Court or the United States District Court for the District of Delaware, except as disclosed in Exhibit 3 hereto.

17.    To the extent that I have been able to ascertain that Moelis has been retained to represent, since 2007, any of the Potential Parties in Interest in matters unrelated to these bankruptcy cases, such parties are listed in Exhibit 3. Moelis's representation of any entity listed in Exhibit 3 is only on matters that are unrelated to the Debtors or these bankruptcy cases. Other than as listed on Exhibit 3, I am unaware of any relationships that Moelis has with the Potential Parties in Interest.

18.    Given the size of the Firm and the breadth of Moelis's client base, however, it is possible that other principals or employees of Moelis may have been retained, or may have relationships with, one or more of the Potential Parties in Interest in unrelated matters without my knowledge. To the extent that Moelis discovers any such additional relationships, it will provide supplemental disclosures to the Court.

19.    Other than in connection with this engagement and as otherwise disclosed herein, Moelis has no relationships or connections with the Debtors of which I am aware, after due inquiry.

20.    If the Court approves the Debtors' retention of Moelis in these bankruptcy cases, Moelis will not accept any engagement or perform any service for any entity other than the Debtors on matters relating to, or in direct connection with, these bankruptcy cases. Moelis will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or other Potential Parties in Interest in these

bankruptcy cases, provided that such services do not relate to, or have any direct connection with, the Debtors or these bankruptcy cases.

21.     Except as otherwise set forth herein, to the best of my knowledge, information, and belief, neither I, Moelis, nor any of its professionals:

(a)     is a creditor, equity security holder, or insider of the Debtors;

*(Remainder of page intentionally left blank.)*

(b) is or has been within two (2) years before the Petition Date, a director, officer, or employee of the Debtors;

(c) has any interest materially adverse to the interests of the Debtors' estates;

(d) is related to any judge of this Court, the UST for this district, or the UST assigned to these bankruptcy cases.

Accordingly, to the best of my knowledge, information, and belief, Moelis is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code.

Dated: December 28th, 2009

By _____
   Todd Wadler

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

Subscribed and sworn to (or affirmed) before me on this 28th day of December, 2009, by Todd Jason Wadler, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Signature of Notary

(SEAL)



DEBRA A. RAMSEY
Commission # 1777897
Notary Public - California
Los Angeles County
My Comm. Expires Nov 4, 2011

# EXHIBIT 1

## Engagement Letter

1999 AVENUE OF THE STARS
19TH FLOOR
LOS ANGELES, CALIFORNIA 90067

T 310 443 2300
F 310 443 8700

M O E L I S  &  C O M P A N Y

As of July 15, 2009

<u>CONFIDENTIAL</u>

Latham International, Inc.
787 Watervlier-Shaker Road
Albany, NY 12110
Tel: (800) 833-3800
Fax: (518) 785-1592

Attention: Mark P. Laven

Ladies & Gentlemen:

    We are pleased to confirm that Latham International, Inc. (the "<u>Company</u>" or "<u>you</u>") has engaged Moelis & Company LLC ("<u>Moelis</u>", "<u>we</u>", "<u>our</u>" or "<u>us</u>") to act as its exclusive financial advisor in connection with the Company's proposed amendment or Restructuring Transaction (as defined below). As used herein, the term "<u>Restructuring Transaction</u>" means (a) any material restructuring, rescheduling, reorganization or recapitalization of all or a substantial portion of the Company's liabilities (other than raising a revolving credit facility), including through a plan of reorganization or liquidation (a "<u>Plan</u>") confirmed in connection with a case (a "<u>Bankruptcy Case</u>") commenced by or against the Company under title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), an exchange offer or consent solicitation, rescheduling of debt maturities, settlement or forgiveness of debt or conversion of debt into equity (other than a revolving credit facility) or (b) the sale of all or a majority of the equity securities of the Company or all or substantially all of the assets of the business of the Company, including pursuant to a plan of reorganization or pursuant to a sale pursuant to Section 363 under the Bankruptcy Code.

    1. As part of our engagement, we will perform the following services as requested by you:

    (a)    undertake, in consultation with members of management of the Company, a customary business and financial analysis of the Company;

    (b)    review and analyze the Company's business plans, operating and financial strategy and financial projections including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(c)     evaluate the Company's debt capacity and assist in the determination of an appropriate capital structure for the Company and will assist the Company in raising a revolving credit facility of up to $25 million;

(d)     determine and evaluate the risks and benefits of considering, initiating and consummating an amendment or a Restructuring Transaction (or any combination thereof);

(e)     as the Company requests, identify, review, evaluate, initiate, and negotiate an amendment or a Restructuring Transaction (or any combination thereof), and if directed, develop and evaluate alternative proposals for an amendment or a Restructuring Transaction (or any combination thereof), and as directed, solicit and evaluate indications of interest and/or proposals for an amendment or a Restructuring Transaction (or any combination thereof) from current or potential lenders, equity investors and/or strategic partners;

(f)     advise and assist the Company, and if requested participate, in the negotiations of an amendment or a Restructuring Transaction (or any combination thereof);

(g)     determine values or ranges of values (as appropriate) for the Company and any securities that the Company offers or proposes to offer in connection with an amendment or a Restructuring Transaction;

(h)     contact potential acquirers or investors that we and the Company agree are appropriate. We may meet with representatives of such acquirers or investors and provide such representatives with information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements in form and substance approved by the Company;

(i)     assist the Company in the development, preparation and distribution of selected information, documents and other materials to create interest in and to consummate any amendment or Restructuring Transaction (or any combination thereof);

(j)     assist the Company in valuing its assets or businesses, it being understood that third party appraisers the Company retains will conduct any real estate or fixed asset appraisals;

(k)     be available at your request to meet with your management, board of directors, creditor groups, equity holders, any official committees appointed in a Bankruptcy Case or other parties to discuss an amendment or a Restructuring Transaction (or any combination thereof);

(l)     if requested by the Company, participate in hearings before the court (the "Bankruptcy Court") having jurisdiction over the Bankruptcy Case and provide relevant testimony; and

(m)     such other financial advisory services within the scope of the foregoing as Moelis and the Company agree.

2.  (a)  As compensation for our services hereunder, the Company agrees to pay us the following cash fees, subject to the provisions hereof:

Monthly Fee

During the term of this agreement a fee of $150,000 per month (the "Monthly Fee"); provided, that no Monthly Fee shall be payable for the first month (July 15 through August 14, 2009) of this engagement.  Unless otherwise ordered by the Bankruptcy Court, the Company will pay the first Monthly Fee for the period of August 15 through September 14, 2009 on the date this Agreement is executed and all subsequent Monthly Fees on the 15th day of each subsequent month.  Whether or not a Restructuring Transaction has taken place or will take place, we shall earn and be paid the Monthly Fee every month during the term of this agreement, except that no Monthly Fee shall be earned or paid for the first month of this engagement (July 15 through August 14, 2009) and except that any Monthly Fee in the final month of this engagement shall be prorated.

Restructuring Fee

Immediately upon consummation of a Restructuring Transaction during the term of this engagement, a fee (the "Restructuring Fee") of (a) $1,650,000 plus (b) an amount equal to one percent (1%) of the principal amount drawn on the Company's revolving credit facility at the time the Restructuring Transaction is consummated; provided that an amount equal to 50% of all Monthly Fees paid to us, in excess of $450,000 shall be credited against the Restructuring Fee.

DIP Financing Fee

Upon the closing of a debtor-in-possession financing (a "DIP Financing") for the Company in connection with a Bankruptcy Case, a fee equal to 1% of the aggregate principal amount of the debtor-in-possession financing facility arranged by Moelis and provided by any entity other than any equity holder or affiliate thereof.  For purposes of this Agreement, a "DIP Financing" means a transaction in which the Company raises or issues any secured or unsecured debt (including, without limitation, any asset-backed debt or convertible debt) for debtor-in-possession financing of the Company in connection with a Bankruptcy Case.

If a Bankruptcy Case is commenced, then all of the remaining fees due hereunder will be subject to the rules and procedures of title 11 of the Bankruptcy Code, the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and applicable local rules, guidelines and Bankruptcy Court orders.

(b) If, at any time during the 9 months following the expiration or termination of our engagement by you (the "Tail Period"), if the Company has not previously consummated a Restructuring Transaction or DIP Financing, as applicable, or by us with cause as a result of any failure by the Company to pay any amounts due Moelis under this letter (including Annex A) or any other material breach of this letter by the Company, which failure or breach remains uncured after 30 days written notice thereof by Moelis, and the Company consummates a Restructuring Transaction or DIP Financing (unless prior to such DIP Financing, the Company has previously consummated a Restructuring Transaction) during the Tail Period or enters into a definitive agreement regarding a Restructuring Transaction or DIP Financing (unless prior to such DIP Financing, the Company has previously consummated a Restructuring Transaction) during the Tail Period which it subsequently consummates pursuant to such agreement, then the Company (or its bankruptcy estates) shall pay us the appropriate fee specified in Section 2(a) above immediately upon the closing of such transaction. The Company agrees not to object to our request to the Bankruptcy Court and any appellate court to allow such fees.

(c) Whether or not any Restructuring Transaction is consummated, upon our presentation of an invoice with reasonable detail from time to time, you will reimburse us for all of our reasonable out-of-pocket expenses for entering into this agreement and performing our services pursuant to this agreement. Such expenses shall be reimbursed with the payment of the Monthly Fees to the extent so invoiced 10 days beforehand. These expenses generally include travel costs, document reproduction, telephone and facsimile charges, meals, and other customary expenses for this type of transaction, including the reasonable fees, disbursements and other charges of our outside legal counsel. We agree to provide reasonable backup relating to such expenses to the extent you request and as the Bankruptcy Court may require.

(d) The Company's obligation to pay any fee, expense or indemnity set forth herein is absolute and unconditional and not subject to any reduction by way of setoff, recoupment or counterclaim.

(e) Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for us. Moreover, the actual time and commitment required for the engagement may vary substantially from time to time. In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that will arise in this engagement, Moelis' expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided for herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Company.

3. If a Bankruptcy Case is commenced:

(a) The Company will use its reasonable best efforts to seek interim and final orders of the Bankruptcy Court authorizing our employment as your exclusive financial advisor under

MOELIS & COMPANY

this agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the date first written above. The retention application and the interim and final orders authorizing Moelis' retention must be acceptable to Moelis in its sole discretion. Prior to commencing a Bankruptcy Case, the Company will pay all amounts then earned and payable pursuant to this agreement. In agreeing to seek Moelis' retention under section 328(a) of the Bankruptcy Code, the Company believes that Moelis' general restructuring experience and expertise, its knowledge of the capital markets and its restructuring capabilities will inure to the benefit of the Company, that the value to the Company of Moelis' services derives in substantial part from Moelis' expertise and experience and that, accordingly, the structure and amount of the fees set forth in Section 2 above are reasonable, regardless of the number of hours Moelis' professionals expend to perform its services hereunder.

(b) Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order (acceptable to Moelis in its sole discretion, which order must also approve the indemnification provisions in *Annex A*) under section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case. If the final non-appealable order is not obtained within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Company shall reimburse Moelis for all fees due and owing and expenses incurred prior to the date of termination, subject to the requirements of any applicable orders of the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules, and applicable local rules, guidelines and Bankruptcy Court orders. Following entry of an interim order authorizing the retention of Moelis, the Company will pay as promptly as possible all fees and expenses due pursuant to this agreement, as approved by the Bankruptcy Court and in accordance with the terms of this agreement, the Bankruptcy Code, the Bankruptcy Rules, and applicable local rules, guidelines and Bankruptcy Court orders.

(c) To the extent permitted by and in accordance with the terms of this agreement, the Bankruptcy Code, the Bankruptcy Rules, and applicable local rules, guidelines and Bankruptcy Court orders, Moelis' post-petition compensation, expense reimbursements and the provisions of *Annex A* shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. The Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application. The Company will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing on such fee applications, to the extent consistent with the terms of this agreement.

(d) The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions,

- 5 -

559942.07-Los Angeles Server 1A

MSW - Draft October 7, 2009 - 11:50 AM

MOELIS & COMPANY

affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, members, agents and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.    In connection with this engagement, you will furnish us with all information concerning the Company available to you that we reasonably deem appropriate (collectively, the "Information") to execute this engagement and will provide us with reasonable access to the officers, directors, employees, accountants, counsel and other representatives of the Company. To the best of the Company's knowledge, the Information concerning the Company (other than budgets, estimates, projections and other forward looking statements and general market data), when delivered and when taken as a whole, will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any fact necessary to make the statements contained therein not materially misleading. You will use your reasonable efforts to advise us promptly of any material event or change in the business, or financial condition of the Company that occurs during our engagement. In performing our services hereunder, we will use and rely upon the Information as well as publicly available information without independent verification. We will assume and rely upon the accuracy and completeness of all Information and are not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities, of the Company. We will assume that financial forecasts and projections you make available to us have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company as to the matters covered thereby. In connection with the services described above, the Company authorizes us, as the Company's representative, to transmit any memoranda describing assets, properties or businesses to be sold in connection with a Restructuring Transaction (each, a "Selling Memo" or "Information Memo") to potential parties to a Restructuring Transaction under confidentiality agreements approved by the Company. We will use all nonpublic Information concerning the Company solely for the performance of our services hereunder and will treat and keep all such Information confidential except to the extent such Information becomes publicly available other than as a result of a breach of our confidentiality obligations hereunder. Except as otherwise required by applicable law or judicial or regulatory process, we will not disclose this Information to a third party without the Company's consent.

If we are asked to act for the Company in any additional capacity relating to this engagement but not specifically addressed in this agreement, the terms of any such additional engagement will be embodied in a separate written agreement, containing customary terms and conditions. The indemnity provisions in *Annex A* shall apply to such additional engagement unless superseded by an indemnity provision set forth in such separate agreement and shall remain in full force and effect regardless of any completion, modification or termination of such engagement.

- 6 -

5. Except as otherwise required by applicable law or judicial or regulatory process, (i) you will not disclose, summarize or refer to any of our advice publicly or to any third party (other than to your affiliates, stockholders, and your and their officers, directors, agents, professionals, counsel, accountants or representatives, each of whom have been informed by you of the confidential nature thereof), without our prior written consent, and (ii) we shall not disclose, summarize or refer to any of our advice publicly or to any third party other than our counsel without your consent. In the event such disclosure is required by applicable law, the disclosing party will, to the extent legally permitted, provide the other party with reasonable advance notice and permit the other party to comment on the form and content of the disclosure. If we render an opinion, the opinion may be included in its entirety in any communication by the Company or the Board of Directors to parties in interest in the Bankruptcy Cases, if any are filed, after we have had the opportunity to review such communication prior to any filing with the Securities and Exchange Commission and prior to its dissemination to parties in interest in the Bankruptcy Cases. After, but not prior to, an announcement, if any, made by the Company of any Restructuring Transaction or DIP Financing, we may, at our option and expense, publicize any Restructuring Transaction or DIP Financing and our role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on our website and in such financial and other newspapers and journals as we may choose, in each case subject to the mutual prior written agreement of the Company, Brockway Moran & Partners, Inc., Pool Corporation and us. If we request, you will include a mutually acceptable reference to us in any public announcement made by the Company of a Restructuring Transaction or DIP Financing.

6. We are an independent contractor with the contractual duties described herein owing solely to the Company, and not an agent of the Company. Since we will be acting on your behalf, you and we agree to the indemnity and other provisions set forth in the attached *Annex A*. The Company's obligations set forth therein are in addition to any rights that any Indemnified Person may have at common law or otherwise. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement. Please also review our privacy and business continuity policies attached as *Annex B*.

7. This engagement will extend until the earliest of (i) the effective date of a chapter 11 plan of reorganization or liquidation confirmed in the Bankruptcy Cases, (ii) the conversion of the Bankruptcy Cases to chapter 7 of the Bankruptcy Code, (iii) dismissal of the Bankruptcy Cases, or (iv) appointment of a chapter 11 trustee or an examiner with expanded powers in the Bankruptcy Cases or (v) the later to occur of the consummation of a Restructuring Transaction or a DIP Financing. Our engagement may also be (x) terminated earlier, with or without cause, either by us or by you upon 5 days' prior written notice thereof to the other party, (y) terminated earlier as provided elsewhere herein or (z) extended by the Company and us in writing. In the event of any such termination or expiration, (i) we will continue to be entitled to our earned but unpaid fees and unreimbursed expenses incurred prior to the termination or expiration of this engagement pursuant to Section 2, and *Annex A* and Sections 2(b), 3(c), 3(d), and 5 through 9 hereof shall remain operative and in full force and effect after such completion, termination or expiration.

8. We are a securities firm engaged in a number of merchant banking and investment banking activities. We have no duty to disclose to the Company or utilize for the Company's benefit any nonpublic information acquired in the course of our providing services to any other person, engaging in any transaction (on our own account or otherwise) or carrying on our other businesses.

9. This agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same agreement. This agreement shall be binding upon the Company and us and its and our respective successors and permitted assigns. This agreement shall be governed by and construed in accordance with the internal laws of the State of New York, embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both you and us. If any part of this agreement is held by a court of competent jurisdiction to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this agreement shall be heard exclusively by any state or federal court sitting in the city and county of New York, to whose jurisdiction and forum we and the Company irrevocably submit. The Company consents to service of process by mail at its address set forth above. In the event the Company is or becomes a debtor in a Bankruptcy Case (whether voluntarily or involuntarily), during any such Bankruptcy Case, actions and proceedings arising out of this agreement may also be heard and determined by the Bankruptcy Court and any court having appellate jurisdiction over the Bankruptcy Court. Nothing herein shall require a Bankruptcy Case to be filed in the State of New York. WE AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

MOELIS & COMPANY

We are delighted to accept this engagement and look forward to working with you. Please sign and return the enclosed duplicate of this agreement. The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears directly above his or her signature.

Very truly yours,

**MOELIS & COMPANY LLC**

By: _____
Name: Todd J. Wadler
Title: Managing Director


Agreed to as of the date first written above:

**LATHAM INTERNATIONAL, INC.**

By: _____
Name: MARK P. NAUEN
Title: PRESIDENT & CEO

MOELIS & COMPANY

## ANNEX A

In further consideration of the agreements contained in the engagement letter dated the date hereof (the "engagement"), in the event that Moelis & Company LLC or any of its divisions, affiliates, current or former directors, officers, partners, members, agents or employees of Moelis or any of its affiliates, or any person controlling Moelis or its affiliates, current or former directors, officers, partners, members, agents or employees (collectively, "Indemnified Persons") becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person (including, without limitation, creditors of Latham International, Inc. (the "Company"), stockholders of the Company, a receiver, a custodian, a trustee appointed in any case or cases under title 11 of the United States Code commenced by or against the Company or any of its subsidiaries or affiliates, whether individually or on a consolidated basis (a "Bankruptcy Case"), an official committee appointed in a Bankruptcy Case, or a litigation trust, liquidating trust or similar vehicle created in connection with a Bankruptcy Case (or a trustee of such trust or similar vehicle)), in connection with or as a result of the engagement or any matter referred to in the engagement, the Company will reimburse such Indemnified Person for its reasonable and out of pocket customary legal and other expenses (including, without limitation, the reasonable out of pocket costs and expenses incurred in connection with investigating, preparing for and responding to third-party subpoenas or enforcing the engagement) incurred in connection therewith as such expenses are incurred; provided that Moelis & Company LLC shall refund to the Company any amounts reimbursed to or on account of or behalf of an Indemnified Person hereunder, to the extent such reimbursed amounts are attributable to expenses incurred with respect to Losses (as defined below) that are finally determined by a court or arbitral tribunal of competent jurisdiction to have resulted from the bad faith, willful misconduct or gross negligence of an Indemnified Person. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company agrees that no Indemnified Person shall have any liability to any party for, any losses, claims, liabilities, damages and reasonable expenses (including actions or proceedings in respect thereof) (collectively, "Losses") (A) related to or arising out of (i) the Company's or its agents' actions or failures to act (including statements or omissions made or information provided by the Company or its agents) or (ii) actions or failures to act by an Indemnified Person with the Company's or its agents' consent or in reliance on the Company's or its agents' actions or failures to act or (B) otherwise related to or arising out of the engagement or our performance thereof, except that this clause (B) shall not apply to any Losses that are finally determined by a court or arbitral tribunal of competent jurisdiction to have resulted from the bad faith, willful misconduct or gross negligence of any Indemnified Person.

If such indemnification for any reason (other than any Indemnified Person's bad faith, willful misconduct or gross negligence as finally determined by a court or arbitral tribunal of competent jurisdiction to have caused the Losses) is not available or is insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses involved in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by us, on the other hand, with respect to the engagement or, if such allocation is determined by a court or arbitral tribunal of competent jurisdiction to be unavailable, in such proportion as is appropriate to reflect other equitable considerations, such as

NY\1464670.1
559942.07-Los Angeles Server 1A

MSW - Draft October 7, 2009 - 11:50 AM

MOELIS & COMPANY

the relative fault of the Company on the one hand and of us on the other hand; provided, however, that, to the extent permitted by applicable law, the Indemnified Persons shall not be responsible for amounts which, in the aggregate, are in excess of the amount of all fees actually received by us from the Company in connection with the engagement. Relative benefits to the Company, on the one hand, and us, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by the engagement, bears to (ii) all fees actually received by us in connection with the engagement.

The Company will not, without our prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes a release of each Indemnified Person from any liabilities arising out of such action, claim, suit, investigation or proceeding. The Company will not permit any such settlement, compromise, consent or termination to include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of an Indemnified Person, without such Indemnified Person's prior written consent. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

Prior to entering into any agreement or arrangement with respect to, or effecting, any merger, statutory exchange or other business combination or proposed sale or exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth herein, the Company will notify us in writing thereof (if not previously so notified) and, if requested by us, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth herein, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions satisfactory to us.

The Company's obligations hereunder shall be in addition to any rights that any Indemnified Person may have at common law or otherwise.

The Company acknowledges that in connection with the engagement we are acting as an independent contractor and not in any other capacity, with duties owing solely to the Company. This agreement and any other agreements relating to the engagement shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein. All actions and proceedings arising out of or relating to this agreement shall be heard and determined by any New York State or federal court of competent jurisdiction sitting in the Borough of Manhattan in the City of New York to whose jurisdiction we and the Company irrevocably submit. Notwithstanding the foregoing, solely in the event a

- A-2 -

Bankruptcy Case is commenced with respect to the Company, all actions and proceedings arising out of or relating to this agreement shall be heard and determined by the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any New York state or federal court of competent jurisdiction sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction we and the Company hereby irrevocably submit. Solely for purposes of enforcing the Company's obligations hereunder, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim subject to this agreement is brought by or against any Indemnified Person. WE HEREBY AGREE, AND THE COMPANY HEREBY AGREES, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THIS AGREEMENT.

The provisions of this *Annex A* shall apply to the engagement referred to in the engagement letter dated the date hereof (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the completion or termination of the engagement. If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void or unenforceable, or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

LATHAM INTERNATIONAL, INC.

By: _____

Name: MARK P. LAVEN

Title: PRESIDENT & CEO

Accepted and agreed to as of the date hereof:

MOELIS & COMPANY LLC

By: _____

Name: Todd J. Wadler

Title: Managing Director

MOELIS & COMPANY

## ANNEX B

This *Annex B* is a part of and is incorporated into that certain engagement letter (the "Agreement") dated as of July 15, 2009 by and between Latham International, Inc. (the "Company" or "you") and Moelis & Company LLC ("Moelis," and, together with its affiliates and subsidiaries, "we," "our" or "us").

## PRIVACY STATEMENT

One of the most important components of our relationship with you is the trust that you have placed in us to keep your nonpublic information private.

The information you provide to Moelis is used for the purposes of advising and guiding you regarding certain investment transactions. The employees of Moelis do not discuss client information with anyone outside the Company unless specifically authorized to do so by you. Information we collect and record about you is kept strictly confidential. We maintain security procedures and standards designed to protect nonpublic information at all times.

With the exception of circumstances where we are required by law to disclose your nonpublic information, we do not share such information with any unaffiliated entity. In the event that we change this policy and determine that it is beneficial to share information with an unaffiliated third party, we will notify you beforehand and give you the opportunity to opt-out of such information sharing.

Where a client/customer and Moelis have executed a Confidentiality Agreement that agreement will control the non-disclosure of confidential or private information.

## BUSINESS CONTINUITY DISCLOSURE

Moelis maintains a business continuity plan, which addresses interruptions to our normal course of business. This plan is reviewed annually and updated as necessary. Our disclosure statement is available on our website at www.moelis.com and is available in written form upon request.

The plan outlines the actions Moelis will take in the event of a single-building, citywide or regional business interruption, including the use of an office location not affected by the interruption, retrieval of off-site back up data, use of primary and alternate vendors for continued communication, notification of active clients to provide interim information and relocation of personnel to an unaffected site.

## USA PATRIOT ACT

In order to comply with the USA Patriot Act, Moelis must obtain, verify and record information that identifies each entity (or individual) that enters into a business relationship with Moelis. As a result, in addition to obtaining our client/customer's corporate name and address, Moelis may seek to obtain our client/customer's corporate tax identification number and certain other

information. Moelis may also request relevant corporate resolutions and other identifying documents.

# EXHIBIT 2

Debtors
Latham International, Inc.
Latham Manufacturing Corp.
Viking Pools, LLC
Coverstar, LLC
Kafko (U.S.) Corp.

Affiliates
Pacific Pools Europe
Latham Splash Canada, Inc.
Latham Investments, Inc.
Technician Pacific Industries Inc.
Pool Technology Distributors Inc.
Kafko Canada, Inc.
Kafko Europe S.A. (France)
Aquaflex Vinyl Engineering, Inc.
Kafko Industries, Inc.
Kafko Manufacturing Corp.
Kafko Manufacturing, Inc.
Total Vinyl Products, Inc.
Latham Plastics, Inc.
Pacific Industries, Inc.
Pacific Pool Industries, Inc.
Rockcliffe Recreational Products Inc.
Triac Industries Inc.
Fort Wayne Pools, Inc.
Viking Pools Northeast, Inc.
Viking Pools, Inc.
Viking Pools Central, Inc.
Composite Pool Corp.
Viking Management Services, Inc.

Directors and Officers
Mark A. Eidenmueller
Mark P. Laven
Douglas A. Laver
Michael E. Moran
Manny J. Perez de la Mesa
Kenneth St. Romain
Allan T. Stahl
Lyn Almeida
Peter W. Klein
Ari M. Zur
Gary R. Whitcher

Scott M. Hollander

Secured Creditors/Noteholders
CIBC Inc.
HSBC Bank
Deerfield Capital Mgmt LLC
Highland Capital Management
Deutsche Asset Management Inc.
Orchard First Source Capital
First Niagara Bank
Lightpoint Capital Management
Whitehorse Capital Partners
MJX Asset Management
The CIT Group
Suntrust CLO
Stone Tower Debt Advisors
Cetus Capital LLC
LaSalle Bank NA
Denali Capital
Gulf Stream Asset Managment
Harch Capital Mgmt Inc.
GSO Capital Partners, L.P.
Deutsche Bank and Trust Co.
WBNA
Summer Street Capital Fund I
Summer Street Capital Fund II
HSBC Capital (Canada)
779595 Ontario LTD
Mark Laven
Triac Industries, Inc.
Nikko
Raymond Ludwig
Charles Trego Jr
Joe Valentino
Scott Hollander
Gary Whitcher
Paula Handson
John Bliszcuk
Cary Oden
Steve Gyetvai
Dave Gartner
Eric Vellozo
Rick Hawkshaw

Equity/Warrant Holders
Brockway Moran & Partners

2

SCP Pool Corporation
Apollo Investment Corporation
Christopher N. Blythe
Scott R. Kirkendall
Stephen P. Carlson
Mark Laven
779595 Ontario Inc. (Doug Laver)
Charles E. Ryan
Scott Rajeski
Gary Witcher
Scott Hollander
Tim Golden
Michael St. Jacques
Alan Stahl Family Trust
Todd Stahl Family Trust
Lanny Smith
Tom Straub
Tim Fowler
Anne Woodhouse
Cary Oden
Mike Fox
Ray Ludwig
Fred Wunning
Wendy Carpenter
Steve Gyetvai
Rob Mouch
Ron Crowley
Craig Harris
Jeff Mazzone
Kieran Brown
Dave Cohen
Ron Eastman
Bill Wiley
Jeff Dryja
Steve Ramsey
Aaron K. Stahl
William E. Reynolds
Robert Marra

Professionals
Capstone Advisory Group, LLC
Finsbury Group
Haynes and Boone LLP
Kirkland and Ellis
Moelis & Company LLP
Pachulski Stang Ziehl & Jones LLP

Baker Tilly Virchow Krause, LLP
Aon Risk Services Central, Inc.
Blane McMurtry LLP
Carson Boxberger, LLP
Claims Management Inc.
Cozen O'Connor
Deloitte Touche
Filion Wakely Thorup & Angeletti LP
Fross Zelnick Lerhrman & Zissu
Gordon & Einstein
Hawkins & Parnell, LLP
Huie, Fernambucq & Stewart
Krauter & Company LLC
Lester Schwab Katz & Dwyer
McGladrey & Pullen LLP
Meyer Darragh Buckler Bebenek
Pepper Hamilton LLP
Preg O'Donnell & Gillet PLLC
Ray Cronise
Rose and Kiernan, Inc
Tressler LLP

Top 35
Canadian General Tow
Composites One LLC
Tencate Geosynthetic
I2M
Hexion Specialty Chemicals Inc.
Spartech Plastics
Receiver General - Canada
Omnova Solutions Inc
SeattleTextiles
American Cord & Webb
BisonGear&EngineeringCorp.
Capstone Advisory Group
Daf Products Inc.
Infor Global Solutio
Minister of Revenue - Canada
Progress Plastics
InterstateHydraulics
DOFASCO
Michael R. Gissy
Gavant Software
Primex Plastics Corp.
Allen County Treasurer
Freight Brokers International

4

Bamberger Polymers I
6932 Gettysburg LLC
Energy Focus, Inc.
PC Connection Sales
Scotia Associates
Minister of Finance - Canada
Teachers Insurance
KroyIndustries
ITTIndustries-RuleIndustries
Pacesetter Steel SER
Channel Prime Allica
Polyfil Corporation

Landlords
LCS, LLC
Terranova West, LLC
Foster-Gill, Inc.
SYUFY Enterprises
East State Industrial, LLC
James Zander
6932 Gettysburg LLC
Super Market Service Corp.
Scotia Associates
Teacher's Insurance and Annuity Association of America
Stahl Family Farms, LLC
Real Leasing, LLC

Utilities
LPFP Corp.
Indiana Michigan Power
Nipsco
Hess Corporation
National Grid
Jackson EMC
MX Energy
Veridian
Enbridge
Brantford Power
Union Gas
Hydro Quebec
Gazmetro
PG&E
SMUD
DeKalb County Georgia
Walton EMC
Consumers Energy

DTE Energy
Gaz Metropolitain
Enbridge Consumers Gas
Enersource Hydro Miss
Progress Energy
Allegheny Power
Dominion Hope
TXU Electric
Pee Dee EMC
Dominion North Carolina Power
Indianapolis Power & Light
Citizen's Gas
Rocky Mtn Power
Questar Gas

# EXHIBIT 3

Moelis is involved in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties in interest in these bankruptcy cases. Moelis has in the past worked, may currently be working, and in the future will likely work with or against other professionals involved in these cases in matters unrelated to the Debtors and these cases.

A Managing Director of Moelis with expertise in mergers and acquisitions was initially involved in Moelis's obtaining the engagement with the Debtors beginning in July 2009. Moelis subsequently learned that the Managing Director's sibling, who is a Managing Director of one of the debtholders (or an affiliate of that debtholder) of the Debtors, was involved in the diligence of the debtholders' investment in the Debtors. To the best of my knowledge, the Moelis Managing Director never communicated with his sibling regarding the substance of this engagement. Nevertheless, out of an abundance of caution, as of October 12, 2009, the Moelis Managing Director has been separated from the Moelis team assigned to the Debtors, and Moelis has adopted procedures to ensure that the Moelis Managing Director does not participate in any representation of the Debtors and does not have access to any information obtained by Moelis in connection with such representation. Moelis has not sought any compensation from the Debtors for any services provided by the Moelis Managing Director. Moelis does not believe that this connection affects Moelis's "disinterestedness" status or the Debtors' ability to retain Moelis as their financial advisor.

Previously, Moelis advised an affiliate of a debtholder of the Debtors on an unrelated transaction that closed in late June 2009.