# EXHIBIT 6

# HAZARDOUS MATERIALS INDEMNITY AGREEMENT

THIS HAZARDOUS MATERIALS INDEMNITY AGREEMENT (this "Agreement"), is entered into as of January __, 2010, by the undersigned (hereinafter referred to collectively, as the "Indemnitors" and each, as an "Indemnitor"), in favor of BANK OF AMERICA, N.A. (together with its successors and assigns, the "Lender") under the Loan Agreement described below.

Reference is made to the following facts:

A. The Indemnitors have entered into that certain Loan and Security Agreement dated as of the date hereof (as may be amended, restated, renewed, replaced, modified, supplemented, consolidated or extended from time to time, the "Loan Agreement") with the Lender, pursuant to which the Lender, subject to the terms and conditions set forth therein, have agreed to make certain loans and other financial accommodations (such loans and other financial accommodations being collectively referred to herein as the "Loans") to the Borrowers (as defined therein). Except as otherwise expressly defined herein or in the exhibits attached hereto, all capitalized terms shall have the meanings ascribed to them in the Loan Agreement.

B. As a condition to making the Loans, the Lender requires that the Indemnitors agree to indemnify and hold harmless the Lender from any Environmental Claim, any Requirements of Environmental Law, and any violation of any Environmental Permit, and all Costs (as the foregoing terms are defined in Exhibit A hereto) relating to the Premises (as hereinafter defined). The Lender would not make the Loans without this Agreement and the Indemnitors acknowledge and understand that this Agreement is a material inducement for the Lender's agreement to make the Loans.

C. Certain of the Indemnitors are the owners of certain of the parcels described as "Owned Properties" on the attached Exhibit B, and certain Indemnitors are tenants under certain leases, which leases relate to occupancy of certain real property described as "Leased Properties" on Exhibit B. The Owned Properties and the Leased Properties and any other properties which may from time to time be owned, leased, operated or used by any Indemnitor are individually and collectively referred to as the "Premises". The other Indemnitors are affiliates of such owners and tenants.

NOW, THEREFORE, in consideration of the Lender's agreement to make the Loans and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Indemnitors hereby covenant and agree, jointly and severally, as follows:

1. Hazardous Materials; Compliance with Requirements of Environmental Law.

(a) Except as disclosed on Exhibit C, attached hereto and made a part hereof, each Indemnitor represents and warrants that such Indemnitor has never generated, stored (other than the lawful storage of heating oil in amounts required for the heating of buildings, if any, located on the Premises, or other than the handling of Hazardous Materials (as defined in Exhibit A hereto) in such Indemnitor's ordinary course of business in compliance with the Requirements of Environmental Law), or disposed of any Hazardous Materials on the Premises or any other property owned, occupied or operated by any Indemnitor or any person for whose conduct any Indemnitor is responsible, that such Indemnitor is not aware to the actual knowledge of personnel and management responsible for operations at the Premises after due inquiry and investigation ("Actual Knowledge") of the generation, storage, disposal or release of Hazardous Materials on the Premises by anyone else, and that such Indemnitor is not aware, to

its Actual Knowledge, of the generation, storage, disposal or release of Hazardous Materials upon or into the real property adjoining or in the vicinity of the Premises that through soil or ground water migration could have come to be located at the Premises. Each Indemnitor further represents and warrants that there are no existing or closed underground storage tanks on the Premises except as otherwise disclosed to the Lender in writing. The Indemnitors agree not to release or dispose of any Hazardous Materials at the Premises, nor to permit same, at any time in violation of the Requirements of Environmental Law.

(b) Except as disclosed on Exhibit C, the Indemnitors represent and warrant that the Premises comply with all Requirements of Environmental Law. The Indemnitors covenant that the Premises and the Indemnitors shall at all times comply with all Requirements of Environmental Law. Each Indemnitor covenants to immediately notify the Lender of the presence, release or threat of release of any Hazardous Materials at or from the Premises or any other property owned, occupied or operated by any Indemnitor or any person for whose conduct any Indemnitor is responsible or of any notice or claim received by any Indemnitor of any violation of any Requirements of Environmental Law.

(c) The Lender may (but shall not be obligated to), from time to time, for reasonable cause, and at the Indemnitors' joint and several expense, conduct such investigations as the Lender deems reasonable to determine whether Hazardous Materials exist on any part of the Premises and to determine the source, quantity and type of such Hazardous Materials, if any, and the Indemnitors shall cooperate with the Lender in conducting such investigations. Such investigations may include without limitation a detailed visual inspection of the Premises, including all storage areas, storage tanks, drains and dry wells, as well as the taking of soil samples, surface water samples, and ground water samples and such other investigations or analyses as are necessary or appropriate in the Lender's sole discretion for a complete assessment of the compliance of the Premises and the use and operation thereof with all Requirements of Environmental Law. The Lender and its officers, employees, agents and contractors shall have and are hereby granted the right to enter upon the Premises for the foregoing purposes, provided that the Lender shall use reasonable efforts to minimize the disruption to the operation of the Indemnitors' business on the Premises.

(d) Without limiting the generality of this Section, the Indemnitors, and the Premises and all alterations thereof, shall comply with all local, state and federal laws and regulations now or hereafter in effect and applicable relating to the presence, abatement, removal, disposal, transportation or treatment of materials containing asbestos.

(e) Without limiting the generality of this Section, if any portion of the Premises is to be used for residential purposes, the Premises and all alterations thereof shall comply with all local, state and federal laws and regulations now or hereafter in effect and applicable relating to the presence, abatement, removal, disposal, transportation or treatment of materials containing lead paint.

2. Indemnification.

(a) Each Indemnitor, jointly and severally, shall protect, defend, indemnify, and hold harmless the Lender and its respective officers, directors, shareholders, agents, employees, parents, subsidiaries and affiliates and their respective heirs, legal representatives, successors and assigns (the Lender and all such other persons and entities being referred to herein individually as an "Indemnitee" and collectively as "Indemnitees") from and against all Costs which at any time may be asserted against or imposed upon the Premises, the Indemnitees, or any of them, arising out of or in connection with (i) Requirements of Environmental Law; (ii) Environmental Claims; (iii) the failure of the Indemnitors, or any other party directly or indirectly connected with the Premises, or affiliated with the Indemnitors having any control over or responsibility for the use and operation of the Premises, to obtain, maintain, or

comply with any Environmental Permit; and/or (iv) the presence, existence or threat of release of Hazardous Materials on, at, in, under, above, or from or in connection with the Premises.

(b) In the event that any Remedial Work (as defined in Exhibit A hereto) is necessary under any applicable local, state or federal law or regulation, any judicial order, or by any governmental or non-governmental entity or because of, or in connection with, the presence, suspected presence, release or suspected release or threat of release of Hazardous Materials in or into the air, soil, ground water, surface water or soil vapor on, at, in, under, above, or from or in connection with the Premises (or any portion thereof), the Indemnitors shall promptly commence, or cause to be commenced, and thereafter diligently prosecute to completion, all such Remedial Work. All Remedial Work shall be performed by licensed contractors qualified to perform such work under applicable federal, state and local law. All Costs related to such Remedial Work shall be paid by the Indemnitors including, without limitation, reasonable Costs incurred by any Indemnitee in connection with the monitoring or review of such Remedial Work by the Indemnitee or a third party engaged by Indemnitee. In the event the Indemnitors shall fail to promptly commence, or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, the Lender may, but shall not be required to, cause such Remedial Work to be performed and all Costs shall become an Environmental Claim hereunder.

(c) This Agreement, and all rights and obligations hereunder shall survive (i) repayment of the Loans; (ii) satisfaction, assignment or reconveyance of any of the Mortgages, leasehold mortgages, leasehold deeds of trust and collateral assignments of leases and rents by which any of the Premises secure the Indemnitors' obligations under the Loan Agreement (collectively, the "Mortgages"); (iii) release of any other security provided in connection with the Loans; (iv) foreclosure or enforcement of the Mortgages and other security instruments in connection with the Loans; (v) acquisition of the Premises by the Lender by assignment or deed-in-lieu of foreclosure or other enforcement or otherwise (except with respect to any actual violation of any Requirements of Environmental Law by the Lender following such acquisition); (vi) sale, assignment or transfer of all or any portion of the Lender's rights in the Loans and the Premises and (vii) termination of any of the Leases.

(d) The requirements of this Section are independent and enforceable obligations of each Indemnitor, jointly and severally, without regard to any materiality threshold or other limitation on any representation, warranty or covenant made by the Indemnitors in the Loan Agreement or this Agreement.

(e) Nothing contained in this Agreement shall prevent or in any way diminish or interfere with any rights or remedies, including, without limitation, the right to contribution, which any Indemnitee may have against the Indemnitors or any other party under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (codified at Title 42 U.S.C. § 9601 et seq.), as it may be amended from time to time, or any other applicable federal, state or local laws, all such rights being hereby expressly reserved.

3. Notice of Actions.

(a) The Indemnitors shall give immediate written notice to the Lender of: (i) the use, manufacture, production, handling or storage of any type of Hazardous Material at the Premises, not previously disclosed to the Lender, or any substantial increase in the quantity or magnitude of the use, manufacturing, production, handling or storage of any type of Hazardous Material at the Premises above levels previously disclosed to the Lender; (ii) any proceeding, inquiry, notice, or other communication to or against any of them or of which any of them has Actual Knowledge, or with the exercise of reasonable due diligence should have knowledge, by or from any governmental or non-governmental entity regarding

the presence or suspected presence of any Hazardous Material on, at, in, under, above, about, to, or from or in connection with the Premises or any migration from or to the Premises; (iii) any actual or alleged violation of any Requirements of Environmental Law at or in connection with the Premises; (iv) any Environmental Claim; (v) the discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Premises that could reasonably be expected either to cause the Premises or any part thereof to be subject to any restrictions on ownership, occupancy, transferability, or use, or to subject the owner or any person having any interest in the Premises to any liability, penalty, or disability under any Requirements of Environmental Law; and (vi) the receipt of any notice or discovery of any information regarding any actual, alleged, or potential spillage, seepage, release, discharge, disposal or any other presence or existence of any Hazardous Material on, at, in, under, above, about, to, or from or in connection with the Premises.

(b) Immediately upon receipt of the same, the Indemnitors shall deliver to the Lender copies of any and all Environmental Claims, and any and all orders, notices, permits, applications, reports, or communications, documents and restrictions or other instruments pertaining to the actual, alleged, or potential presence or existence of any Hazardous Material on, at, in, under, above, about, to, or from or in connection with the Premises.

4. Procedures Relating to Indemnification.

(a) In any circumstance in which this Agreement applies, the Lender may, but shall not be obligated to, employ its own legal counsel and consultants to investigate, prosecute, negotiate, or defend any such Environmental Claim and in the event liability is asserted directly against the Lender, the Lender shall have the right to compromise or settle such claim of liability against the Lender without the consent of the Indemnitors. The Indemnitors shall reimburse the Lender, within ten (10) days of demand, for all Costs incurred by the Lender, including the amount of all Costs of settlements entered into by the Lender.

(b) The Indemnitors shall not, without the prior written consent of the Lender:
(i) settle or compromise any action, suit, proceeding, or claim or consent to the entry of any judgment that does not include as an unconditional term thereof the delivery by the claimant or plaintiff to the Lender of (x) a full and complete written release of the Lender (in form, scope and substance satisfactory to the Lender in its reasonable discretion) from all liability in respect of such action, suit or proceeding and (y) a dismissal with prejudice of such suit, action or proceeding; or (ii) settle or compromise any action, suit, proceeding, or claim in any manner that may adversely affect the Lender as determined by the Lender in its reasonable discretion.

5. Binding Effect. This Agreement shall be binding upon the Indemnitors, their successors and permitted assigns and shall inure to the benefit of the Indemnitees and their respective successors and assigns, including as to the Lender without limitation, any affiliate of the Lender that acquires all or part of the Premises by any sale, assignment, assignment or deed in lieu of foreclosure or other enforcement, or foreclosure under any Mortgage, or otherwise. The obligations of the Indemnitors under this Agreement shall not be assigned without the prior written consent of the Lender, which consent may be given or withheld in the sole discretion of the Lender.

6. Liability of Indemnitors. The liability of each party comprising the Indemnitors shall be joint and several. The liability of the Indemnitors under this Agreement shall in no way be limited or impaired by the provisions of any of the Loan Documents, or any amendment, modification, extension or renewal thereof. No delay on the Lender's part in acting under this Indemnity shall operate as a waiver of any of the Lender's rights hereunder. No waiver hereunder by the Lender in any instance shall constitute a waiver in any other instance.

7. Waiver. Each Indemnitor waives any right or claim of right to cause a marshalling of the assets of the Indemnitors or to cause the Lender to proceed against any of the security for the Loans before proceeding under this Agreement against such Indemnitor; each Indemnitor agrees that any payments required to be made hereunder shall become due on demand except as explicitly provided herein; to the extent permitted by applicable law, each Indemnitor expressly agrees that the liability of such Indemnitor hereunder shall in no way be affected by: (a) the release or discharge of any Indemnitor in any creditors' receivership, bankruptcy or other proceedings; (b) the impairment, limitation or modification of the liability of any Indemnitor or the estate of any Indemnitor in bankruptcy, or of any remedy for the enforcement of any Indemnitor's liability under the Loan Documents, resulting from the operation of any present or future provision of the Bankruptcy Code, 11 U.S.C. § 101 et seq. or other similar statute or from the decision in any court; (c) the rejection or disaffirmance of the Loan Documents in any such proceedings; (d) the assignment or transfer of the Loan Documents by the Indemnitors; (e) any disability or other defense of any Indemnitor; or (f) the cessation from any cause whatsoever for the liability of any Indemnitor. Without limiting the generality of the foregoing, each Indemnitor hereby waives all suretyship defenses or defenses in the nature thereof.

8. Notices. All notices, consents, approvals, elections and other communications (collectively "Notices") hereunder shall be in writing (whether or not the other provisions of this Agreement expressly so provide) and shall be deemed to have been duly given if delivered in accordance with the terms of the Loan Agreement.

9. Attorneys' Fees. In the event that any Indemnitee brings or otherwise becomes a party to any suit or other proceeding (including, without limitation, any administrative proceedings) with respect to the subject matter or enforcement of this Agreement, such Indemnitee shall, in addition to such other relief as may be awarded, be entitled to recover from the Indemnitors attorneys' fees, expenses and costs of investigation as are actually incurred (including, without limitation, reasonable attorneys' fees, expenses and costs of investigation incurred in appellate proceedings, costs incurred in establishing the right to indemnification, or in any action or participation in, or in connection with, any case or proceeding under Chapter 7, 11 or 13 of the Bankruptcy Code, 11 U.S.C. § 101 et seq., or any successor statutes).

10. Governing Law. This Agreement, including the validity hereof and the rights and obligations of the parties hereunder, shall in all respects be governed by, and construed and enforced in accordance with the laws of the State of New York. Each Indemnitor, to the extent that it may lawfully do so, hereby consents to service of process, and to be sued, in the State of New York and consents to the jurisdiction of any federal or state courts sitting in the State of New York, as well as to the jurisdiction of all courts to which an appeal may be taken from such courts, for the purpose of any suit, action or other proceeding arising out of any of its obligations hereunder or with respect to the transactions contemplated hereby, and expressly waives any and all objections it may have as to venue in any such courts. Each Indemnitor further agrees that a summons and complaint commencing a suit, action or proceeding in any of such courts shall be properly served and shall confer personal jurisdiction if served personally or by certified mail in accordance with the terms of the Loan Agreement or as otherwise provided under the laws of the State of New York. Nothing in this Agreement shall affect any right the Lender or any Indemnitee may otherwise have to bring an action or proceeding relating to this Agreement against any Indemnitor or its properties in the courts of any jurisdiction.

11. Successive Actions. A separate right of action hereunder shall arise each time the Lender acquires knowledge of any matter indemnified by the Indemnitors under this Agreement. Separate and successive actions may be brought hereunder to enforce any of the provisions hereof at any time and from time to time. No action hereunder shall preclude any subsequent action, and each Indemnitor hereby waives and covenants not to assert any defense in the nature of splitting of causes of action or merger of judgments.

12. Partial Invalidity. If any provision of this Agreement shall be determined to be unenforceable in any circumstances by a court of competent jurisdiction, then the balance of this Agreement shall be enforceable nonetheless, and the subject provision shall be enforceable in all other circumstances.

13. Interest on Unpaid Amounts. All amounts required to be paid or reimbursed to any Indemnitee hereunder shall bear interest from the date of expenditure by such Indemnitee or from the date of written demand to the Indemnitors hereunder, whichever is later, until paid to Indemnitee(s). The interest rate for any day shall be the lesser of (a) the Default Rate then applicable to Base Rate Loans under the Loan Agreement (whether or not any Base Rate Loan is then outstanding under the Loan Agreement) or (b) the maximum rate then permitted under applicable law.

14. Authority. Each individual signing this Indemnity Agreement on behalf of any Indemnitor or any other entity that is not a natural person warrants and represents to the Lender that he or she is authorized to do so by all requisite action of such Indemnitor or such other entity.

15. Exhibits. All exhibits attached hereto are incorporated by reference.

**[Remainder of Page is Intentionally Blank]**

IN WITNESS WHEREOF, each Indemnitor has executed this Agreement under seal as of the date first set forth above.

**INDEMNITORS:**

**LMH II, INC.**

By: _____
Name:
Title:


**LATHAM CORPORATION**

By: _____
Name:
Title:


**COVERSTAR, LLC**

By: _____
Name:
Title:


**VIKING POOLS, LLC**

By: _____
Name:
Title:


Exhibits:   A - Definitions
            B - Premises Description:   Owned Properties
                                        Leased Properties
            C – Environmental Disclosure

# EXHIBIT A

## DEFINITIONS

Definitions. For purposes of this Agreement, the following terms shall have the following meanings:

(a) "<u>Costs</u>" shall mean all liabilities, losses, costs, damages, (including consequential damages), expenses, claims, attorneys' fees, experts' fees, consultants' fees and disbursements of any kind or of any nature whatsoever. For the purposes of this definition, such losses, costs and damages shall include, without limitation, remedial, removal, response, abatement, restoration, cleanup, legal, investigative and monitoring costs and related costs, expenses, losses, damages, penalties, fines, obligations, defenses, judgments, suits, proceedings and disbursements. Costs shall also include, without limitation, (i) the costs of removal, transportation and disposal of any and all Hazardous Materials from all or any portion of the Premises, (ii) costs required to take necessary precautions to protect against the release of Hazardous Materials on, at, in, under, above, about, to, or from or in connection with the Premises into the air, soil, surface water, ground water, or soil vapor, any public domain, or any surrounding areas, and (iii) costs incurred to comply, in connection with all or any portion of the Premises, with all applicable laws with respect to Hazardous Materials, including any such laws applicable to the work referred to in this sentence.

(b) "<u>Environmental Claim</u>" shall include, but not be limited to, any claim, demand, action, cause of action, suit, loss, cost, damage, fine, penalty, expense, liability, judgment, proceeding, or injury, whether threatened, sought, brought, or imposed, that seeks to impose costs or liabilities for the following, occurring on, at, in, under, above, about, to, or from or in connection with the Premises: (i) noise; (ii) pollution or contamination of the air, surface water, ground water, or soil; (iii) solid, gaseous, or liquid waste generation, handling, treatment, storage, disposal, or transportation; (iv) exposure to Hazardous Materials; (v) the manufacture, processing, distribution in commerce, use, or storage of Hazardous Materials; (vi) injury to or death of any person or persons arising out of the discharge, release, storage, handling, presence, or transport of Hazardous Materials; (viii) any and all penalties arising out of the discharge, release, storage, handling, presence, or transport of Hazardous Materials, (ix) any assertion of breach or violation of any Requirements of Environmental Law, or any event, occurrence, or condition relating to the Premises as a consequence of which (A) Indemnitors, the Lender or any owner, occupant, or person having any interest in the Premises shall be liable, or (B) the Premises shall be subject to any restriction on use, ownership, transferability, or (iii) any Remedial Work shall be required.

(c) "<u>Environmental Permit</u>" means any permit, license, approval, or other authorization with respect to any activities, operations, or businesses conducted on or in relation to the Premises under any applicable law, regulation, or other requirement of the United States or any state, municipality, or other subdivision or jurisdiction related to pollution or protection of health or the environment, or any agreement between Indemnitors and any third party (such as covenants or restrictions), including laws, regulations or other requirements relating to emissions, discharges, or releases or threatened releases of Hazardous Materials into ambient air, surface water, ground water, or soil, or otherwise relating to the manufacture, processing, distribution, use, generation, treatment, storage, disposal, transportation, or handling of Hazardous Materials on, at, in, under, above, about, to, or from or in connection with the Premises.

(d) "<u>Hazardous Materials</u>" shall include the following:

(i) Those substances included within the definitions of "hazardous substances," "hazardous materials," "toxic substances," or "hazardous waste" in the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. § 9601 et seq.) ("CERCLA"), as amended by Superfund Amendments and Reauthorization Act of 1986 (Pub. L. 99-499 100 Stat. 1613) ("SARA"), the Resource Conservation and Recovery Act of 1976 (42 U.S.C. § 6901 et seq.) ("RCRA"), the Toxic Substance Control Act of 1976 ("TSCA"), and the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq., and in the regulations promulgated pursuant to said laws, all as amended;

(ii)  Those substances listed in the United States Department of Transportation Table (49 CFR 172.101 and amendments thereto) or by the Environmental Protection Agency (or any successor agency) as hazardous substances (40 CFR Part 302 and amendments thereto);

(iii)  Any material, waste or substance which is (A) petroleum, (B) asbestos, (C) polychlorinated biphenyls, (D) designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 U.S.C. § 1251 et seq. (33 U.S.C. § 1321) or listed pursuant to Section 307 of the Clean Water Act (33 U.S.C. § 1317); (E) flammable explosives; or (F) radioactive materials;

(iv)  Asbestos;

(v)  Lead paint; and

(vi)  Such other substances, materials and wastes which are or become regulated as hazardous or toxic under applicable local, state or federal law, or the United States government, or which are classified as hazardous or toxic under federal, state, or local laws or regulations.

(f)  "Release" means any release, threatened release, spill, emission, leaking, pumping, pouring, emitting, emptying, escape, injection, deposit, disposal, discharge, dispersal, dumping, leaching or migration of Hazardous Material in the indoor or outdoor environment, including the movement of Hazardous Material through or in the air, soil, surface water, ground water or property.

(g)  "Remedial Work" shall mean any investigation, site monitoring, containment, clean-up, removal, transportation, disposal, restoration, reporting, or sampling with respect to Hazardous Materials or soil, water, tanks, drums or other materials which contain or contained Hazardous Materials.

(h)  "Requirements of Environmental Law" means all requirements of environmental or ecological laws or regulations which are applicable to the Premises or the activities conducted thereon, including all requirements imposed by any law, rule, order, or regulations of any federal, state, or local executive, legislative, judicial, regulatory, or administrative agency, board, or authority, or any private agreement (such as covenants, conditions and restrictions), which relate to (i) noise; (ii) pollution or protection of the air, surface water, ground water, or soil; (iii) solid, gaseous, or liquid waste generation, treatment, storage, disposal, or transportation; (iv) exposure to Hazardous Materials; or (v) regulation of the manufacture, processing, distribution and commerce, use, or storage of Hazardous Materials.

# EXHIBIT B

## PREMISES DESCRIPTION

I.   Owned Properties:

| Property Address | Owner |
|---|---|
| [Indemnitors to list] | |

II.   Leased Properties:

| Property Address | Owner and Owner's Mailing Address |
|---|---|
| [Indemnitors to list] | |

EXHIBIT C

Environmental Disclosure

[List all Environmental Reports]