# EXHIBIT 10

**EXHIBIT B**

**FORM OF SECURITY AGREEMENT**

---

**SECURITY AGREEMENT**

THIS SECURITY AGREEMENT (as amended, modified, extended, renewed, restated or replaced from time to time, the "*Security Agreement*"), is entered into as of [_____], between LMH I, Inc., a corporation organized and existing under the laws of the State of Delaware (the "*Obligor*") and Wells Fargo Bank, N.A., a national banking association, as holders' representative under the Agreement referred to below (in such capacity, the "*Holders' Representative*") acting for the benefit of LMH II, Inc., a corporation organized and existing under the laws of the State of Delaware (the "*Initial Holder*") and all other Holders (as defined in the Agreement).

RECITALS

**WHEREAS**, the Obligor, the Initial Holder and the Holders' Representative are entering into contemporaneously herewith that certain Master Note Agreement dated as of the date hereof (as amended, modified, extended, renewed, restated or replaced from time to time, the "*Agreement*"), pursuant to which the Obligor has agrees to issue to the Initial Holder the Initial Note, upon the terms and subject to the conditions set forth therein; and

**WHEREAS**, it is a condition precedent to the effectiveness of the Agreement that the Obligor shall have executed and delivered this Security Agreement to the Holders' Representative for the ratable benefit of the Holders; and

**NOW, THEREFORE**, in consideration of these premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. <u>Definitions</u>.

    1.01. Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Agreement.

    1.02. In addition, the following terms shall have the following meaning:

"*Collateral*" shall mean:

(a) all Accounts (as defined in the UCC);

(b) all Chattel Paper as defined in the UCC, including electronic chattel paper;

(c) all Commercial Tort Claims (as defined in the UCC);

(d) all Deposit Accounts (as defined in the UCC);

(e) all Documents (as defined in the UCC);

(f) all General Intangibles, including Intellectual Property (as defined in the UCC);

(g) all Goods, including Inventory, Equipment and fixtures (as defined in the UCC);

(h) all Instruments (as defined in the UCC);

(i) all Investment Property (as defined in the UCC), including all of the Stock issued by the Initial Holder;

(j) all Letter-of-Credit Rights (as defined in the UCC);

(k) all Supporting Obligations (as defined in the UCC);

(l) all monies, whether or not in the possession or under the control of Holders' Representative;

(m) all accessions to, substitutions for, and all replacements, products, and cash and non-cash proceeds of the foregoing, including proceeds of and unearned premiums with respect to insurance policies, and claims against any Person for loss, damage or destruction of any Collateral; and

(n) all books and records (including customer lists, files, correspondence, tapes, computer programs, print-outs and computer records) pertaining to the foregoing.

"*Control*" shall have the meaning assigned to such term in the UCC.

"*Secured Obligations*" shall mean (a) all of the Obligations howsoever evidenced, created, incurred or acquired, whether primary, secondary, direct, contingent, or joint and several and (b) all expenses and charges, legal and otherwise, incurred by the Holders' Representative or the Holders in collecting or enforcing any of the Obligations or in realizing on or protecting any security therefor as permitted pursuant to the Agreement, including without limitation the security granted hereunder.

"*UCC*" shall mean the Uniform Commercial Code as in effect in the State of New York or, when the laws of any other jurisdiction govern the perfection or enforcement of any Lien, the Uniform Commercial Code of such jurisdiction.

2. Grant of Security Interest in the Collateral.

2.01. To secure the prompt payment and performance in full when due, whether by lapse of time, acceleration, prepayment or otherwise, of the Secured Obligations, the Obligor hereby grants to the Holders' Representative, for itself and the ratable benefit of the Holders, a continuing security interest in, and a right to set off against, any and all right, title and interest of such Obligor in and to the Collateral.

2.02. The Obligor and the Holders' Representative, on behalf of the Holders, hereby acknowledge and agree that the security interest created hereby in the Collateral constitutes continuing collateral security for all of the Secured Obligations, whether now existing or hereafter arising.

3. Representations and Warranties. The Obligor hereby represents and warrants to the Holders' Representative, for the benefit of the Holders, that so long as any of the Secured Obligations remain outstanding:

3.01. <u>Chief Executive Office; Books & Records; Leal Name; State of Formation</u>. As of the Closing Date, the Obligor's chief executive office and chief place of business are located at [_____], and as of the Closing Date the Obligor keeps its books and records at such location. As of the Closing Date, the Obligor's exact legal name is as shown in this Security Agreement and its state of incorporation is the State of Delaware.

3.02. <u>Location of Tangible Collateral</u>. As of the Closing Date, the location of all tangible Collateral owned by the Obligor is [_____].

3.03. <u>Ownership</u>. The Obligor is the legal and beneficial owner of its Collateral and has the right to pledge, sell, assign or transfer the same.

3.04. <u>Security Interest/Priority</u>. This Security Agreement creates a valid security interest in favor of the Holders' Representative, for the benefit of the Holders, in the Collateral of the Obligor and, when properly perfected by filing, the granting of possession or Control to the Holders' Representative or otherwise, shall constitute a valid first priority, perfected security interest in such Collateral, to the extent such security interest can be perfected by filing, the granting of possession or Control or otherwise under the UCC, free and clear of all Liens except for Permitted Liens.

3.05. <u>Consents</u>. Except for the filing or recording of UCC financing statements, no consent or authorization of, filing with, or other act by or in respect of, any arbitrator or Governmental Authority and no consent of any other Person (including, without limitation, any stockholder, member or creditor of Obligor), is required (i) for the grant by Obligor of the security interest in the Collateral granted hereby or for the execution, delivery or performance of this Security Agreement by Obligor or (ii) for the perfection of such security interest or the exercise by the Holders' Representative of the rights and remedies provided for in this Security Agreement.

3.06. <u>Restrictions on Security Interest</u>. The Obligor is not party to any material agreement that contains legally enforceable restrictions on the granting of a security interest therein.

3.07. <u>Collateral Consisting of Stock</u>. If any part of the Collateral consists of Stock, none of such Stock (a) are traded on a securities exchange or in the securities markets, (b) by their terms expressly provide that they are securities governed by Article 8 of the UCC, or (c) are Investment Company Securities (as defined in the UCC); *provided*, that the Holders' Representative has agreed, and Obligor has consented, to treat such Stock as "financial assets," and such Stock will be held or maintained in the form of a Securities Entitlement (as defined under the UCC). The Obligor does not own any "margin stock" as defined in Regulation U issued by the Board of Governors of the Federal Reserve System.

4. <u>Covenants</u>. As long as any Secured Obligations are outstanding:

4.01. <u>Perfection of Security Interest by Filing, Etc</u>. Obligor hereby authorizes the Holders' Representative to prepare and file such financing statements (including continuation statements) or amendments thereof or supplements thereto or other instruments as the Holders' Representative may from time to time deem necessary or appropriate in order to perfect and maintain the security interests granted hereunder in accordance with the UCC, including, without limitation, any financing statement that describes the Collateral as "all personal property" or "all assets" of Obligor or that describes the Collateral in some other manner as the Holders'

Representative deems necessary or advisable. Obligor shall also execute and deliver to the Holders' Representative or file such agreements, assignments or instruments (including affidavits, notices, reaffirmations and amendments and restatements of existing documents, as the Holders' Representative may reasonably request) and do all such other things as the Holders' Representative may reasonably deem necessary or appropriate (a) to assure to the Holders' Representative its security interests hereunder are perfected, including such financing statements (including continuation statements) or amendments thereof or supplements thereto or other instruments as the Holders' Representative may from time to time reasonably request in order to perfect and maintain the security interests granted hereunder in accordance with the UCC and any other personal property security legislation in the appropriate state(s), (b) to consummate the transactions contemplated hereby and (c) to otherwise protect and assure the Holders' Representative of its rights and interests hereunder. Obligor agrees to mark its books and records to reflect the security interest of the Holders' Representative in the Collateral.

4.02. <u>Perfection of Security Interest by Possession</u>. If any asset part of the Collateral is of a type that requires possession to create and perfect a valid security interest, promptly notify the Holders' Representative of the existence of such assets and deliver such assets to the Holders' Representative, to be held as Collateral pursuant to this Security Agreement.

4.03. <u>Perfection of Security Interest Through Control</u>. If any Collateral shall consist of uncertificated Investment Property (as defined in the UCC) or other assets that require Control to create and perfect a valid security interest, execute and deliver to the Holders' Representative all control agreements, assignments, instruments or other documents as reasonably requested by the Holders' Representative for the purposes of obtaining and maintaining Control of such Collateral.

4.04. <u>Other Liens</u>. To the extent commercially reasonably, defend its interests in the Collateral against the claims and demands of all other parties claiming an interest therein, keep the Collateral free from all Liens, except for Permitted Liens. Neither the Holders' Representative nor any Holder authorizes Obligor to, and Obligor shall not, sell, exchange, transfer, assign, lease or otherwise dispose of the Collateral or any interest therein, except as permitted under the Agreement.

4.05. <u>Preservation of Collateral</u>. Keep the Collateral in good order, condition and repair in all material respects, ordinary wear and tear and casualty excepted; not use the Collateral in violation of the provisions of this Security Agreement or any other agreement relating to the Collateral or any policy insuring the Collateral or any applicable Requirement of Law.

4.06. <u>Changes in Structure or Location</u>. Not, without providing 30 days (or such shorter time period as the Holders' Representative may agree) prior written notice to the Holders' Representative and without filing (or confirming that the Holders' Representative has filed) such financing statements and amendments to any previously filed financing statements as the Holders' Representative may require, (a) alter its legal existence or, in one transaction or a series of transactions, merge into or consolidate with any other entity, or sell all or substantially all of its assets, (b) change its state of incorporation or organization, or (c) change its registered legal name.

4.07. <u>Inspection</u>. Allow the Holders' Representative or its representatives to visit and inspect the Collateral as set forth in the Agreement.

4.08. <u>Status of Collateral as Personal Property</u>. At all times maintain the Collateral as personal property and not affix any of the Collateral to any real property in a manner which

would change its nature from personal property to real property or a Fixture (as defined in the UCC).

4.09. <u>Regulatory Approvals</u>. Promptly, and at its expense, execute and deliver, or cause to be executed and delivered, all applications, certificates, instruments, registration statements, and all other documents and papers the Holders' Representative may reasonably request and as may be required by law in connection with the obtaining of any Governmental Approval or the consent, approval, registration, qualification or authorization of any other Person deemed necessary or appropriate for the effective exercise of any of the rights under this Security Agreement. Upon the occurrence and during the continuance of an Event of Default, Obligor shall further use its reasonable best efforts to assist in obtaining Governmental Approvals, if required, for any action or transaction contemplated by this Security Agreement, including, without limitation, the preparation, execution and filing with the Governmental Authority of Obligor's portion of any necessary or appropriate application for the approval of the transfer or assignment of any portion of the assets (including any Governmental Approval) of Obligor.

4.10. <u>Collateral Consisting of Stock</u>. If any part of the Collateral consists of Stock, before the occurrence of an Event of Default, Obligor is entitled to exercise all voting rights pertaining to such Stock; *provided, however*, that no vote shall be cast or consent, waiver, or ratification given or action taken without the prior written consent of Holders' Representative which would (a) be inconsistent with or violate any provision of this Agreement or any other Note Document, (b) amend, modify, or waive any term, provision or condition of any organizational document that would cause a Default or an Event of Default under the Agreement, or (iii) adversely affect the validity, perfection or priority of the Holders' Representative's Lien. After the occurrence of an Event of Default, if Holders' Representative elects to exercise such right, the right to vote any such Stock shall be vested exclusively in Holders' Representative. To this end, Obligor hereby irrevocably constitutes and appoints Holders' Representative the proxy and attorney-in-fact of Obligor, with full power of substitution, to vote, and to act with respect to, any and all such Stock standing in the name of Obligor or with respect to which Obligor is entitled to vote and act, subject to the understanding that such proxy may not be exercised until after an Event of Default occurs. Upon receipt by Obligor, it shall promptly provide Holders' Representative notice of any solicitation for voting with respect to such Stock. The proxy herein granted is coupled with an interest, is irrevocable, and shall continue until the Secured Obligations have been paid and performed in full.

5. <u>Power of Attorney for Perfection of Liens</u>. Obligor hereby irrevocably makes, constitutes and appoints the Holders' Representative, its nominee or any other person whom the Holders' Representative may designate, as Obligor's attorney-in-fact with full power and for the limited purpose to sign in the name of Obligor notices or any similar documents which in the Holders' Representative's reasonable discretion would be necessary, appropriate or convenient in order to perfect and maintain perfection of the security interests granted hereunder, such power, being coupled with an interest, being and remaining irrevocable so long as any of the Secured Obligations remain outstanding.

6. <u>Events of Default</u>. The occurrence of an event which under the Agreement would constitute an Event of Default shall be an event of default hereunder (an "*Event of Default*").

7. <u>Remedies</u>.

7.01. <u>General Remedies</u>. Upon the occurrence of an Event of Default and during continuation thereof, the Holders' Representative and the Holders shall have, in addition to the rights and remedies provided herein, in the Note Documents or by law (including, but not limited

to, levy of attachment, garnishment and the tights and remedies set forth in the UCC) and the rights and remedies of a secured party under the UCC (regardless of whether the UCC is the law of the jurisdiction where the rights and remedies are asserted and regardless of whether the UCC applies to the affected Collateral). Neither the Holders' Representative's compliance with any applicable state or federal law in the conduct of such sale, nor its disclaimer of any warranties relating to the Collateral, shall be considered to adversely affect the commercial reasonableness of such sale. To the extent the rights of notice cannot be legally waived hereunder, Obligor agrees that any requirement of reasonable notice shall be met if such notice is given to the Obligor in accordance with the notice provisions of Section 9.2 of the Agreement at least 10 days before the time of sale. The Holders' Representative and the Holders shall not be obligated to make any sale or other disposition of the Collateral regardless of notice having been given. To the extent permitted by law, any Holder may be a purchaser at any such sale. To the extent permitted by applicable law, the Obligor hereby waives all of its rights of redemption with respect to any such sale. Subject to the provisions of applicable law, the Holders' Representative and the Holders may postpone or cause the postponement of the sale of all or any portion of the Collateral by announcement at the time and place of such sale, and such sale may, without further notice, to the extent permitted by law, be made at the time and place to which the sale was postponed, or the Holders' Representative and the Holders may further postpone such sale by announcement made at such time and place.

      7.02.   <u>Access</u>. In addition to the rights and remedies hereunder, upon the occurrence of an Event of Default and during the continuation thereof, the Holders' Representative shall have the right to enter and remain upon the various premises of the Obligor without cost or charge to the Holders' Representative, and use the same, together with materials, supplies, books and records of the Obligor for the purpose of collecting and liquidating the Collateral, or for preparing for sale and conducting the sale of the Collateral, whether by foreclosure, auction or otherwise. In addition, the Holders' Representative may remove Collateral, or any part thereof, from such premises and/or any records with respect thereto, in order to effectively collect or liquidate such Collateral. If the Holders' Representative exercises its right to take possession of the Collateral, Obligor shall also at its expense perform any and all other steps reasonably requested by the Holders' Representative to preserve and protect the security interest hereby granted in the Collateral, such as placing and maintaining signs indicating the security interest of the Holders' Representative, appointing overseers for the Collateral and maintaining inventory records.

      7.03.   <u>Nonexclusive Nature of Remedies</u>. Failure by the Holders' Representative or the Holders to exercise any right, remedy or option under this Security Agreement, any other Note Document, or as provided by law, or any delay by the Holders' Representative or the Holders in exercising the same, shall not operate as a waiver of any such right, remedy or option. No waiver hereunder shall be effective unless it is in writing, signed by the party against whom such waiver is sought to be enforced and then only to the extent specifically stated, which in the case of the Holders' Representative or the Holders shall only be granted as provided herein. To the extent permitted by law, neither the Holders' Representative, the Holders, nor any party acting as attorney for the Holders' Representative or the Holders, shall be liable hereunder for any acts or omissions or for any error of judgment or mistake of fact or law other than their gross negligence or willful misconduct hereunder. The rights and remedies of the Holders' Representative and the Holders under this Security Agreement shall be cumulative and not exclusive of any other right or remedy which the Holders' Representative or the Holders may have.

      7.04.   <u>Retention of Collateral</u>. In addition to the rights and remedies hereunder, upon the occurrence of an Event of Default and during the continuation thereof, the Holders' Representative may, after providing the notices required by Sections 9-620 and 9-621 of the UCC

(or any successor sections of the UCC) or otherwise complying with the notice requirements of applicable law of the relevant jurisdiction, accept or retain all or any portion of the Collateral in satisfaction of the Secured Obligations. Unless and until the Holders' Representative shall have provided such notices, however, the Holders' Representative shall not be deemed to have retained any Collateral in satisfaction of any Secured Obligations for any reason.

7.05. **Deficiency**. In the event that the proceeds of any sale, collection or realization are insufficient to pay all amounts to which the Holders' Representative or the Holders are legally entitled, the Obligor shall be liable for the deficiency, together with interest thereon at the default rate under the Agreement, together with the costs of collection and the reasonable fees of any attorneys employed by the Holders' Representative to collect such deficiency.

8. **Rights of the Holders' Representative**.

8.01. **Power of Attorney**. In addition to other powers of attorney contained herein, Obligor hereby designates and appoints the Holders' Representative, on behalf of itself and the Holders, and each of its designees or agents, as attorney-in-fact of Obligor, irrevocably and with power of substitution, with authority to take any or all of the following actions upon the occurrence and during the continuation of an Event of Default:

(a) to demand, collect, settle, compromise, adjust and give discharges and releases concerning the Collateral of Obligor, all as the Holders' Representative may reasonably determine in respect of such Collateral;

(b) to commence and prosecute any actions at any court for the purposes of collecting any Collateral and enforcing any other right in respect thereof;

(c) to defend, settle, adjust or compromise any action, suit or proceeding brought with respect to the Collateral and, in connection therewith, give such discharge or release as the Holders' Representative may deem reasonably appropriate;

(d) following acceleration of the Notes in accordance with the Agreement, to receive, open and dispose of mail addressed to Obligor and reasonably believed by the Holders' Representative to be related to the Collateral and endorse checks, notes, drafts, acceptances, money orders, bills of lading, warehouse receipts or other instruments or documents evidencing payment, shipment or storage of the goods giving rise to the Collateral of Obligor, or securing or relating to such Collateral, on behalf of and in the name of Obligor;

(e) to sell, assign, transfer, make any agreement in respect of, or otherwise deal with or exercise rights in respect of, any Collateral or the goods or services which have given rise thereto, as fully and completely as though the Holders' Representative were the absolute owner thereof for all purposes;

(f) to adjust and settle claims under any insurance policy relating to the Collateral;

(g) to institute any foreclosure proceedings that the Holders' Representative may deem appropriate; and

(h) to do and perform all such other acts and things as the Holders' Representative may reasonably deem to be necessary, proper or convenient in connection with the Collateral.

This power of attorney is a power coupled with an interest and shall be irrevocable for so long as any of the Secured Obligations remain outstanding. The Holders' Representative shall be under no duty to exercise or withhold the exercise of any of the rights, powers, privileges and options expressly or implicitly granted to the Holders' Representative in this Security Agreement, and shall not be liable for any failure to do so or any delay in doing so. The Holders' Representative shall not be liable for any act or omission or for any error of judgment or any mistake of fact or law in its individual capacity or its capacity as attorney-in-fact except acts or omissions resulting from its gross negligence or willful misconduct. This power of attorney is conferred on the Holders' Representative solely to protect, preserve and realize upon its security interest in the Collateral.

8.02. Assignment by the Holders' Representative. Pursuant to the terms of the Agreement, the Holders' Representative may from time to time assign the Secured Obligations or any portion thereof or the Collateral or any portion thereof to a successor Holders' Representative, and the assignee shall be entitled to all of the rights and remedies of the Holders' Representative under this Security Agreement in relation thereto.

8.03. The Holders' Representative Duty of Care. Other than the exercise of reasonable care to assure the safe custody of the Collateral while being held by the Holders' Representative, the Holders' Representative shall have no duty or liability to preserve rights pertaining thereto, it being understood and agreed that the Obligor shall be responsible for preservation of all rights in the Collateral, and the Holders' Representative shall be relieved of all responsibility for the Collateral upon surrendering it or tendering the surrender of it to the Obligor. The Holders' Representative shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which the Holders' Representative accords its own property, which shall be no less than the treatment employed by a reasonable and prudent agent in the industry, it being understood that the Holders' Representative shall not have responsibility for taking any necessary steps to preserve rights against any parties with respect to any of the Collateral. In the event of a public or private sale of Collateral pursuant to Section 7 hereof, the Holder's Representative shall have no obligation to clean-up, repair or otherwise prepare the Collateral for sale.

9. Application of Proceeds. After the exercise of remedies by the Holders' Representative or the Holders hereunder or pursuant to Section 7.2 of the Agreement (or after the Notes (with accrued interest thereon) and all other amounts under the Note Documents shall automatically become due and payable in accordance with the terms of such Section), any proceeds of the Collateral, when received by the Holders' Representative or any of the Holders in cash or its equivalent, will be applied in reduction of the Secured Obligations in the order set forth in Section 2.6(c) of the Agreement.

10. Costs of Counsel. If at any time hereafter, whether upon the occurrence of an Event of Default or not, the Holders' Representative employs counsel to prepare or consider amendments, waivers or consents with respect to this Security Agreement, or to take action or make a response in or with respect to any legal or arbitral proceeding relating to this Security Agreement or relating to the Collateral, or to protect the Collateral or exercise any rights or remedies under this Security Agreement or with respect to the Collateral, then the Obligor agrees to promptly pay upon demand any and all such reasonable documented costs and expenses of the Holders' Representative, all of which costs and expenses shall constitute Secured Obligations hereunder.

11. Continuing Agreement.

11.01. This Security Agreement shall be a continuing agreement in every respect and shall remain in full force and effect so long as any of the Secured Obligations remain outstanding. Upon such payment and termination, this Security Agreement shall be automatically terminated and the Holders' Representative and the Holders shall, upon the request and at the expense of the Obligor, forthwith release all of the Liens and security interests granted hereunder. Notwithstanding the foregoing all releases and indemnities provided hereunder shall survive termination of this Security Agreement.

11.02. This Security Agreement shall continue to be effective or be automatically reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Secured Obligations is rescinded or must otherwise be restored or returned by the Holders' Representative or any Holder as a preference, fraudulent conveyance or otherwise under any bankruptcy, insolvency or similar law, all as though such payment had not been made; *provided*, that in the event payment of all or any part of the Secured Obligations is rescinded or must be restored or returned, all reasonable costs and expenses (including without limitation any reasonable legal fees and disbursements) incurred by the Holders' Representative or any Holder in defending and enforcing such reinstatement shall be deemed to be included as a part of the Secured Obligations.

12. Amendments: Waivers; Modifications. This Security Agreement and the provisions hereof may not be amended, waived, modified, changed, discharged or terminated except as set forth in Section 9.1 of the Agreement.

13. Successors in Interest. This Security Agreement shall create a continuing security interest in the Collateral and shall be binding upon Obligor, its successors and assigns and shall inure, together with the rights and remedies of the Holders' Representative and the Holders hereunder, to the benefit of the Holders' Representative and the Holders and their successors and permitted assigns; *provided, however*, that the Obligor may not assign its rights or delegate its duties hereunder without the prior written consent of each Holder or the Required Holders, as required by the Agreement. To the fullest extent permitted by law, Obligor hereby releases the Holders' Representative and each Holder, each of their respective officers, employees and agents and each of their respective successors and assigns, from any liability for any act or omission relating to this Security Agreement or the Collateral, except for any liability arising from the gross negligence or willful misconduct of the Holders' Representative or such Holder or their respective officers, employees and agents, in each case as determined by a court of competent jurisdiction.

14. Notices. All notices required or permitted to be given under this Security Agreement shall be in conformance with Section 9.2 of the Agreement.

15. Counterparts. This Security Agreement may be executed in any number of counterparts, each of which where so executed and delivered shall be an original, but all of which shall constitute one and the same instrument. It shall not be necessary in making proof of this Security Agreement to produce or account for more than one such counterpart.

16. Headings. The headings of the sections and subsections hereof are provided for convenience only and shall not in any way affect the meaning, construction or interpretation of any provision of this Security Agreement.

17. Governing Law; Consent to Jurisdiction and Service of Process; Waiver of Jury Trial. **THIS SECURITY AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES**

**HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.** The terms of Sections 9.14 and 9.17 of the Credit Agreement are incorporated herein by reference, *mutatis mutandis*, and the parties hereto agree to such terms.

18. <u>Severability</u>. If any provision of this Security Agreement is determined to be illegal, invalid or unenforceable, such provision shall be fully severable and the remaining provisions shall remain in full force and effect and shall be construed without giving effect to the illegal, invalid or unenforceable provisions.

19. <u>Entirety</u>. This Security Agreement and the other Note Documents represent the entire agreement of the parties hereto and thereto, and supersede all prior agreements and understandings, oral or written, if any, including any commitment letters or correspondence relating to this Security Agreement, the other Note Documents, or the transactions contemplated herein and therein.

20. <u>Survival</u>. All representations and warranties of the Obligor hereunder shall survive the execution and delivery of this Security Agreement, the other Note Documents and the issuance of the Notes under the Agreement.

21. <u>Rights of Required Holders</u>. All rights of the Holders' Representative hereunder, if not exercised by the Holders' Representative, may be exercised by the Required Holders.

*[Remainder of page left blank intentionally. Signature page follows.]*

**IN WITNESS WHEREOF**, the parties hereto have caused this Security Agreement to be duly executed and delivered by their respective officers or representatives thereunto duly authorized, as of the date first above written.

                LMH I, Inc.,
                as Obligor

                By:_____
                Name:
                Title:


Accepted and agreed to as of the date first above written.

                Wells Fargo Bank, N.A.,
                as Holders' Representative

                By:_____
                Name:
                Title: