# EXHIBIT 20

# ASSET PURCHASE AGREEMENT

among

## LATHAM CORPORATION,

### AS PURCHASER

and

## LATHAM INTERNATIONAL, INC.

## LATHAM MANUFACTURING CORP.

and

## KAFKO (U.S.) CORP.,

### AS SELLERS

Dated as of _____ __, 2010

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ...................................................................................... 1
    1.1    Certain Definitions ..................................................................... 1
    1.2    Other Definitional and Interpretive Matters ....................................... 6

ARTICLE II PURCHASE AND SALE OF PURCHASED ASSETS; ASSUMPTION OF
    ASSUMED LIABILITIES ............................................................. 7
    2.1    Purchase and Sale of Assets ......................................................... 7
    2.2    Excluded Assets ........................................................................ 8
    2.3    Assumption of Liabilities ............................................................. 9
    2.4    Excluded Liabilities ................................................................... 9
    2.5    Bulk-Sales Laws ....................................................................... 9
    2.6    Purchase Price Allocation ............................................................ 9

ARTICLE III CONSIDERATION ............................................................................. 9
    3.1    Consideration ........................................................................... 9
    3.2    Payment of Cash Payment ........................................................... 9
    3.3    Tax Treatment .......................................................................... 9

ARTICLE IV CLOSING ...................................................................................... 10
    4.1    Closing Date ........................................................................... 10

ARTICLE V REPRESENTATIONS AND WARRANTIES OF SELLERS .............................. 10
    5.1    Organization and Good Standing; Subsidiaries ................................. 10
    5.2    Authorization of Agreement; Ownership of Sellers ........................... 10
    5.3    Conflicts; Consents of Third Parties ............................................. 11
    5.4    Financial Statements ................................................................. 11
    5.5    No Undisclosed Liabilities ......................................................... 12
    5.6    Title to Purchased Assets; Sufficiency; Fair Consideration ................. 12
    5.7    Absence of Certain Developments ................................................ 12
    5.8    Taxes .................................................................................... 13
    5.9    Real Property .......................................................................... 13
    5.10    Tangible Personal Property ........................................................ 14
    5.11    Intellectual Property ................................................................. 15
    5.12    Material Contracts .................................................................... 15
    5.13    Employee Benefits ................................................................... 16
    5.14    Labor .................................................................................... 17
    5.15    Litigation ............................................................................... 17
    5.16    Compliance with Laws; Permits ................................................. 17
    5.17    Environmental Matters .............................................................. 18
    5.18    Deliverables ........................................................................... 19
    5.19    Accounts and Notes Receivable and Payable .................................. 19
    5.20    Related Party Transactions ......................................................... 19

    5.21    Full Disclosure ................................................................................................20

ARTICLE VI REPRESENTATIONS AND WARRANTIES OF PURCHASER .......................20
    6.1    Organization and Good Standing ...............................................................20
    6.2    Authorization of Agreement .......................................................................20
    6.3    Conflicts; Consents of Third Parties ..........................................................20
    6.4    Title to LMH1 Equity and the Note ...........................................................21

ARTICLE VII DELIVERIES ...............................................................................................21
    7.1    Sellers' Deliveries ......................................................................................21
    7.2    Purchaser's Deliveries ...............................................................................22

ARTICLE VIII MISCELLANEOUS .....................................................................................23
    8.1    Expenses ....................................................................................................23
    8.2    Entire Agreement; Amendments and Waivers ...........................................23
    8.3    Governing Law ..........................................................................................23
    8.4    Notices ......................................................................................................23
    8.5    Severability ...............................................................................................24
    8.6    Binding Effect; Assignment ......................................................................24
    8.7    Counterparts ...............................................................................................24

<u>Exhibits:</u>

| | |
|---|---|
| A | Bill of Sale |
| B | Assignment and Assumption Agreement |
| C | Intellectual Property Assignment |

<u>Disclosure Schedules:</u>

| | | |
|---|---|---|
| Schedule 2.1(b) | - | Inventory and Supplies |
| Schedule 2.1(c) | - | Equipment, Rolling Stock, Improvements and Furnishings |
| Schedule 2.1(i) | - | Permits |
| Schedule 2.2 | - | Excluded Assets |
| Schedule 2.6 | - | Purchase Price Allocation |
| Schedule 3.2 | - | Allocation of Total Consideration Transferred to Seller |
| Schedule 5.1 | - | Subsidiaries |
| Schedule 5.2(b) | - | Ownership of Each Seller |
| Schedule 5.9(a) | - | Real Property (Owned or Leased) |
| Schedule 5.10 | - | Personal Property Leases |
| Schedule 5.11 | - | Intellectual Property |
| Schedule 5.12(a) | - | Material Contracts |
| Schedule 5.13(a) | - | Employee Benefit Plans |
| Schedule 5.16(b) | - | Seller Permits |
| Schedule 5.17 | - | Environmental Matters |
| Schedule 5.19 | - | Account Receivable |

# DEFINED TERMS

**Page**

Affiliate.............................................................................................................1
Agreement ........................................................................................................1
Assignment and Assumption Agreement ........................................................21
Assumed Liabilities .........................................................................................9
Balance Sheet .................................................................................................12
Balance Sheet Date ........................................................................................12
Business............................................................................................................7
CERCLA ..........................................................................................................2
Closing............................................................................................................10
Closing Date ...................................................................................................10
COBRA ............................................................................................................2
Code..................................................................................................................2
Confidential Information ..................................................................................2
Contract ............................................................................................................2
control ...............................................................................................................1
controlled by .....................................................................................................1
Copyrights ........................................................................................................3
Coverstar...........................................................................................................1
Employee ..........................................................................................................2
Environmental Law ..........................................................................................2
Environmental Permit.......................................................................................2
ERISA...............................................................................................................3
ERISA Affiliate ................................................................................................3
Excluded Assets................................................................................................8
Excluded Contracts...........................................................................................3
Excluded Liabilities..........................................................................................9
Financial Statements.......................................................................................12
Former Employee .............................................................................................3
Governmental Body..........................................................................................3
Hazardous Material...........................................................................................3
including ...........................................................................................................7
including, without limitation ...........................................................................7
Intellectual Property .........................................................................................3
IRS ....................................................................................................................3
Kafko ................................................................................................................1
Knowledge of Sellers........................................................................................4
Law ...................................................................................................................4
Lease Assignment and Assumption................................................................21
Legal Proceeding ..............................................................................................4
LI1
Liability ............................................................................................................4
Lien....................................................................................................................4
LM ....................................................................................................................1

LMH1 ...............................................................................................................................1
LMH1 Equity....................................................................................................................1
LMH2 ...............................................................................................................................1
Marks ...............................................................................................................................3
Material Contracts ........................................................................................................15
Note .................................................................................................................................1
Order ...............................................................................................................................4
Ordinary Course of Business..........................................................................................4
Owned Properties .........................................................................................................13
Owned Property ............................................................................................................13
Parties ..............................................................................................................................1
Party.................................................................................................................................1
Patents.............................................................................................................................3
Permits ............................................................................................................................4
Permitted Exceptions......................................................................................................4
Person ..............................................................................................................................5
Personal Property Leases..............................................................................................14
Plan ..................................................................................................................................1
Plans.................................................................................................................................5
Purchased Assets .............................................................................................................7
Purchased Contracts ........................................................................................................5
Purchased Intellectual Property .......................................................................................5
Purchased Technology.....................................................................................................5
Purchaser .........................................................................................................................1
Purchaser Documents ...................................................................................................20
Real Property Lease ......................................................................................................13
Real Property Leases ....................................................................................................13
Related Persons..............................................................................................................19
Release..............................................................................................................................5
Seller Documents ..........................................................................................................11
Seller Permits.................................................................................................................18
Seller Properties.............................................................................................................13
Seller Property ...............................................................................................................13
Sellers ..............................................................................................................................1
Software............................................................................................................................5
Subsidiary ........................................................................................................................5
Tax ...................................................................................................................................6
Tax Return .......................................................................................................................6
Taxes................................................................................................................................6
Taxing Authority .............................................................................................................6
Technology.......................................................................................................................6
Total Consideration .........................................................................................................9
Trade Secrets ...................................................................................................................3
Treasury Regulations.......................................................................................................6
under common control with.............................................................................................2

Viking ........................................................................................................................... 1

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement") is entered into as of _____ __, 2010, by and among Latham Corporation, a Delaware corporation ("Purchaser"), on the one hand, and Latham International, Inc., a Delaware corporation ("LI"), Latham Manufacturing Corp., a Delaware corporation ("LM"), and Kafko (U.S.) Corp., a Delaware corporation ("Kafko," and together with LI and LM collectively "Sellers"), on the other hand. Sellers and Purchaser are sometimes collectively referred to herein as the "Parties" and individually as a "Party."

## W I T N E S S E T H:

A.   Sellers are debtors and debtors in possession under Chapter 11 of the United States Bankruptcy Code, as amended. Sellers have proposed a Joint Plan of Reorganization of Latham International, Inc., et al., Under Chapter 11 of the Bankruptcy Code, dated December 18, 2009 (Case No. 09-14490(CSS)), as amended or supplemented (the "Joint Plan"). The Joint Plan provides for the substantive consolidation of each of the Sellers, Viking Pools, LLC, a West Virginia limited liability company ("Viking"), and Coverstar, LLC, a Delaware limited liability company ("Coverstar"), for voting and distribution purposes under the Joint Plan.

B.   The Joint Plan provides for (among others) a series of formations, conveyances and other transactions as described in this Recital B. On or prior to the date hereof, Prepetition Agent (as defined in the Joint Plan) formed LMH I, Inc., a Delaware corporation ("LMH1"), LMH II, Inc., a Delaware corporation ("LMH2"), and Purchaser. LMH1 issued (i) a subordinated promissory note in the aggregate principal sum of $20,000,000 (the "Note") and (b) 100% of its capital stock (the "LMH1 Equity") to LMH2 in exchange for 100% of the capital stock of LMH2. Immediately following such issuance, LMH2 contributed the Note and the LMH1 Equity to Purchaser in exchange for 100% of Purchaser's capital stock.

C.   Pursuant to the Joint Plan and in accordance with the terms of this Agreement, Purchaser will purchase, and Sellers will sell, all of the assets of Sellers in exchange for the Note and the LMH1 Equity owned by Purchaser.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements hereinafter contained, the parties hereby agree as follows:

## ARTICLE I

## DEFINITIONS

1.1   Certain Definitions. For purposes of this Agreement, the following terms shall have the meanings specified in this Section 1.1:

"Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and

"under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise.

"CERCLA" means the Comprehensive Environmental Response Compensation and Liability Act, as amended.

"COBRA" means the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended.

"Code" means the Internal Revenue Code of 1986, as amended.

"Confidential Information" means any information with respect to any Seller, including methods of operation, customer lists, products, prices, fees, costs, Technology, inventions, trade secrets, know-how, Software, marketing methods, plans, personnel, suppliers, competitors, markets or other specialized information or proprietary matters.

"Contract" means any contract, agreement, indenture, note, bond, mortgage, loan, instrument, lease, license, commitment or other arrangement, understanding, undertaking, commitment or obligation, whether written or oral.

"Employee" means all individuals (including common law employees, independent contractors and individual consultants) who are currently employed or engaged by Seller in connection with the Business.

"Environmental Law" means any Law as now or hereafter in effect in any way relating to protection of human health and safety, public welfare, the environment, or natural resources, including those Laws relating to the storage, handling and use of chemicals, hazardous substances (as that term is defined by CERCLA) and other hazardous materials, those relating to the generation, processing, treatment, storage, transport, disposal or other management of chemicals, hazardous substances (as that term is defined by CERCLA), hazardous materials or waste materials of any kind, those Laws relating to the release, reporting, discharge, investigation, or remediation of waste materials, hazardous substances (as that term is defined by CERCLA), hazardous materials or waste materials of any kind, and those Laws relating to the protection of threatened or endangered species or environmentally sensitive areas. Environmental Law includes the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9601 et seq.), the Hazardous Materials Transportation Act (49 U.S.C. App. § 1801 et seq.), the Resource Conservation and Recovery Act (42 U.S.C. § 6901 et seq.), the Clean Water Act (33 U.S.C. § 1251 et seq.), the Clean Air Act (42 U.S.C. § 7401 et seq.) the Toxic Substances Control Act (15 U.S.C. § 2601 et seq.), the Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. § 136 et seq.), and the Occupational Safety and Health Act (29 U.S.C. § 651 et seq.), and analogous state or local Laws, as each has been or may be amended and the regulations promulgated pursuant thereto.

"Environmental Permit" means any Permit required by Environmental Laws for the operation of the Business.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"ERISA Affiliate" shall mean any trade or business (whether or not incorporated) which is or at anytime within the six (6) year period preceding the date of this Agreement would have been treated as a "single employer" with any Seller under Section of 414(b), (c), (m), or (o) of the Code.

["Excluded Contracts" means the following Contracts: [____].]

"Former Employee" means all individuals (including common law employees, independent contractors and individual consultants) who were employed or engaged by any Seller in connection with the Business but who are no longer so employed or engaged on the date hereof.

"Governmental Body" means any government or governmental or regulatory body thereof, or political subdivision thereof, whether federal, state, local or foreign, or any agency, instrumentality or authority thereof, or any court.

"Hazardous Material" means any substance, material or waste which is regulated because of its effect or potential effect on public health or the environment, including any material, substance or waste which is recycled, or which is defined as a "hazardous waste," "hazardous material," "hazardous substance," "extremely hazardous waste," "restricted hazardous waste," "solid waste," "pollutant or contaminant," "toxic waste" or "toxic substance" under any provision of Environmental Law, and including petroleum or any fraction thereof, petroleum products, natural gas, natural gas liquids, liquefied natural gas or synthetic gas, asbestos, mold, asbestos-containing material, urea formaldehyde and polychlorinated biphenyls.

"Intellectual Property" means all right, title and interest in or relating to intellectual property, whether protected, created or arising under the laws of the United States or any other jurisdiction, including: (i) patents and applications therefor, including continuations, divisionals, and continuations-in-part thereof and patents issuing thereon, along with all reissues, reexaminations and extensions thereof (collectively, "Patents"); (ii) trademarks, service marks, trade names, service names, brand names, trade dress rights, corporate names, trade styles, logos and other source or business identifiers and general intangibles of a like nature, together with the goodwill associated with any of the foregoing, along with all applications, registrations, renewals and extensions thereof (collectively, "Marks"); (iii) Internet domain names; (iv) copyrights and mask work, database and design rights, whether or not registered or published, all registrations and recordations thereof and all applications in connection therewith, along with all reversions, extensions and renewals thereof (collectively, "Copyrights"); (iv) trade secrets and other proprietary Confidential Information ("Trade Secrets"); (v) other intellectual property rights arising from or relating to Technology, and (vi) Contracts granting any right relating to or under the foregoing.

"IRS" means the United States Internal Revenue Service and, to the extent relevant, the United States Department of Treasury.

"Knowledge of Sellers" means the knowledge, after due inquiry, of the executive officers of any Seller.

"Law" means any foreign, federal, state or local law (including common law), statute, code, ordinance, rule, regulation, Order or other requirement.

"Legal Proceeding" means any judicial, administrative or arbitral action, suit, mediation, investigation, inquiry, proceeding or claim (including any counterclaim) by or before a Governmental Body.

"Liability" means any debt, loss, damage, adverse claim, fine, penalty, liability or obligation (whether direct or indirect, known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, and whether in contract, tort, strict liability or otherwise), and including all costs and expenses relating thereto (including all fees, disbursements and expenses of legal counsel, experts, engineers and consultants and costs of investigation).

"Lien" means any lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal, easement, servitude, proxy, voting trust or agreement, transfer restriction under any equity holder or similar agreement, encumbrance or any other restriction or limitation whatsoever, including any Contract granting any of the foregoing.

"Order" means any order, injunction, judgment, doctrine, decree, ruling, writ, assessment or arbitration award of a Governmental Body.

"Ordinary Course of Business" means the ordinary and usual course of normal day-to-day operations of the Business, as conducted by Seller, through the date hereof consistent with past practice.

"Permits" means any approvals, authorizations, consents, licenses, registrations, variances, permits or certificates granted by or obtained from a Governmental Body, and applications therefor and renewals thereof.

"Permitted Exceptions" means (i) all defects, exceptions, restrictions, easements, rights of way and encumbrances disclosed in policies of title insurance that have been delivered to Purchaser; (ii) statutory Liens for current Taxes, assessments or other governmental charges not yet due and payable or the amount or validity of which is being contested in good faith by appropriate proceedings, provided an appropriate reserve has been established therefor in the Financial Statements in accordance with GAAP; (iii) mechanics', carriers', workers' and repairers' Liens arising or incurred in the Ordinary Course of Business that are not material to the business, operations and financial condition of the Seller Property so encumbered and that are not resulting from a breach, default or violation by any Seller of any Contract or Law; and (iv) zoning, entitlement and other land use and environmental regulations by any Governmental Body, provided, that such regulations have not been violated.

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust, unincorporated organization, Governmental Body or other entity.

"Plans" shall mean (i) all "employee benefit plans" as defined by Section 3(3) of ERISA, all specified fringe benefit plans as defined in Section 6039D of the Code, and all other bonus, incentive compensation, deferred compensation, profit sharing, stock option, stock appreciation right, stock bonus, stock purchase, employee stock ownership, savings, severance, supplemental unemployment, layoff, salary continuation, retirement, pension, health, life insurance, dental, disability, accident, group insurance, vacation, holiday, sick leave, fringe benefit or welfare plan, and any other employee compensation or benefit plan, agreement, policy, practice, commitment, Contract, or understanding (whether qualified or nonqualified, written or unwritten), and any trust, escrow or other agreement related thereto, which currently is sponsored, established, maintained or contributed to or required to be contributed by any Seller or for which any Seller has any Liability, contingent or otherwise, and (ii) all "multiemployer plans," as that term is defined in Section 4001 of ERISA and all "employee benefit plans" (as defined in Section 3(3) of ERISA) that are subject to Title IV of ERISA or Section 412 of the Code which any Seller or any ERISA Affiliate has maintained or contributed to or been required to contribute to at any time within six (6) years prior to the Closing Date or with respect to which, to any Seller or any ERISA Affiliate has any Liability.

"Purchased Contracts" means all Contracts related to the Business other than the Excluded Contracts.

"Purchased Intellectual Property" means all Intellectual Property owned by any Seller related to or used in connection with the Business.

"Purchased Technology" means all Technology owned by any Seller related to or used in connection with the Business.

"Release" means any release, spill, emission, leaking, pumping, pouring, injection, deposit, dumping, emptying, disposal, discharge, dispersal, leaching or migration.

"Software" means any and all (i) computer programs, including any and all software implementations of algorithms, models and methodologies, whether in source code or object code; (ii) databases and compilations, including any and all data and collections of data, whether machine readable or otherwise; (iii) descriptions, flow-charts and other work product used to design, plan, organize and develop any of the foregoing, screens, user interfaces, report formats, firmware, development tools, templates, menus, buttons and icons; and (iv) all documentation, including user manuals and other training documentation related to any of the foregoing.

"Subsidiary" means any Person of which (i) a majority of the outstanding share capital, voting securities or other equity interests are owned, directly or indirectly, by any Seller or (ii) any Seller is entitled, directly or indirectly, to appoint a majority of the board of directors or managers or comparable supervisory body of such Person.

"Tax" or "Taxes" means (i) any federal, state, local or foreign taxes, charges, fees, imposts, levies or other assessments, including all net income, gross receipts, capital, sales, use, ad valorem, value added, transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment, social security, unemployment, excise, severance, stamp, occupation, property, escheat and estimated taxes, customs duties, fees, assessments and charges of any kind whatsoever; (ii) any interest, penalties, fines, additions to tax or additional amounts imposed by any Taxing Authority in connection with any item described in clause (i); and (iii) any Liability in respect of any items described in clauses (i) and/or (ii) payable by reason of Contract, assumption, transferee liability, operation of law, Treasury Regulation Section 1.1502-6(a) (or any predecessor or successor thereof or any analogous or similar provision of Law) or otherwise.

"Tax Return" means any return, report or statement required to be filed with respect to any Tax (including any elections, declarations, schedules or attachments thereto, and any amendment thereof), including any information return, claim for refund, amended return or declaration of estimated Tax, and including, where permitted or required, combined, consolidated or unitary returns for any group of entities that includes any Seller, or any of its Affiliates.

"Taxing Authority" means the IRS and any other Governmental Body responsible for the administration of any Tax.

"Technology" means, collectively, Software, information, designs, source code, formulae, algorithms, procedures, methods, techniques, ideas, know-how, research and development, technical data, tools, specifications, processes, inventions (whether patentable or unpatentable and whether or not reduced to practice), apparatus, creations, improvements, works of authorship and other similar materials, and all recordings, graphs, drawings, reports, analyses, and other writings and registered domain names, website pages and other website development, and other tangible embodiments of the foregoing, in any form whether or not specifically listed herein, and all related technology.

"Treasury Regulations" means the regulations promulgated under the Code.

1.2     Other Definitional and Interpretive Matters.

(a)     Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

(i)     Exhibits/Schedules. The Exhibits and Schedules to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement. All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

(ii)     Headings. The provision of a Table of Contents, the division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in

construing or interpreting this Agreement. All references in this Agreement to any "Section" are to the corresponding Section of this Agreement unless otherwise specified.

(iii) Including. The word "including" or any variation thereof means "including, without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

(b) The parties hereto have participated jointly in the negotiation and drafting of this Agreement and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this Agreement.

## ARTICLE II

## PURCHASE AND SALE OF PURCHASED ASSETS; ASSUMPTION OF ASSUMED LIABILITIES

2.1     Purchase and Sale of Assets. On the terms and subject to the conditions set forth in this Agreement, at the Closing, Purchaser shall purchase, acquire and accept from Sellers, and each Seller shall sell, transfer, assign, convey and deliver to Purchaser all of such Seller's right, title and interest in, to and under the Purchased Assets, free and clear of all Liens except for Permitted Exceptions. The "Purchased Assets" shall mean all of the business, assets, properties, contractual rights, goodwill, going concern value, rights and claims of any Seller to the extent included in the Estates (as defined in the Joint Plan) and related to the business conducted by any Seller (the "Business"), wherever situated and of whatever kind and nature, real or personal, tangible or intangible, whether or not reflected on the books and records of any Seller (other than the Excluded Assets), including each of the following assets:

(a)     all accounts receivable of Sellers;

(b)     all inventory and supplies used or intended to be used primarily in connection with the Business, including raw materials, work in progress, finished goods, manufacturing supplies, office supplies, packaging, related materials and such inventory and supplies set forth on Schedule 2.1(b);

(c)     all tangible personal property used or intended to be used primarily in connection with the Business, including all furniture, fixtures, furnishings, machinery, tools, equipment, vehicles, rolling stock, leasehold improvements, and other tangible personal property of every kind owned, leased or used by any Seller in the conduct of the Business (wherever located, including customer locations), including all artwork, desks, chairs, tables, hardware, copiers, telephone lines and numbers, fax machines and other telecommunication equipment, cubicles and miscellaneous office furnishings and supplies, together with any maintenance records and other documents relating thereto, including such aforementioned assets as set forth on Schedule 2.1(c);

(d)     all deposits (including customer deposits and security for rent, electricity, telephone or otherwise), claims for refunds, prepaid charges and expenses, including any prepaid rent, rights of offset in respect thereof and all retentions or holdbacks of Sellers;

(e)     all rights of Seller under each Real Property Lease, together with all improvements, fixtures and other appurtenances thereto and rights in respect thereof;

(f)     the Purchased Intellectual Property and the Purchased Technology;

(g)     all rights of Sellers under the Purchased Contracts (to the extent assumed by Purchaser), including all claims or causes of action with respect to the Purchased Contracts;

(h)     all documents that are related to the Business, including documents relating to products, services, marketing, advertising, promotional materials, Purchased Intellectual Property, Purchased Technology, personnel files for any employees being hired by Purchaser (to the extent permitted by applicable Law) and all files, customer files and documents (including credit information), supplier lists, records, literature and correspondence, whether or not physically located on any of the premises referred to in clause (e) above;

(i)     all Permits, including Environmental Permits, used by any Seller in the Business (which includes all Permits necessary to conduct the Business as currently conducted) and all rights, and incidents of interest therein, including those set forth on Schedule 2.1(i);

(j)     all rights of Sellers under non-disclosure or confidentiality, non-compete, non-solicitation agreements, assignment agreements or similar agreements with Former Employees, Employees and agents of any Seller or with third parties to the extent relating to the Business or the Purchased Assets (or any portion thereof);

(k)     all rights of Sellers under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers and contractors to the extent relating to products sold or services provided to any Seller or to the extent affecting any Purchased Assets;

(l)     all third-party property and casualty insurance proceeds, and all rights to third-party property and casualty insurance proceeds, in each case to the extent received or receivable in respect of the Business;

(m)     all claims, counterclaims, causes of action, rights or recourse of any Seller against third parties relating to the Purchased Assets, whether choate or inchoate, known or unknown, contingent or non-contingent; and

(n)     all goodwill and other intangible assets associated with the Business, including the goodwill associated with the Purchased Intellectual Property.

2.2     Excluded Assets. Nothing herein contained shall be deemed to sell, transfer, assign or convey the Excluded Assets to Purchaser, and Seller shall retain all right, title and interest to, in and under the Excluded Assets. The "Excluded Assets" shall mean each of the assets set forth on Schedule 2.2.

2.3     Assumption of Liabilities.  On the terms and subject to the conditions set forth in this Agreement, at the Closing, Purchaser shall assume, effective as of the Closing, only the following liabilities of Seller (collectively, the "Assumed Liabilities"): all Liabilities of Seller under the Purchased Contracts that arise based on events or circumstances first occurring on or after the Closing Date.

2.4     Excluded Liabilities.  Notwithstanding any provision herein to the contrary, Purchaser shall not assume, succeed to, be liable for, be subject to, or be obligated for, nor shall the Purchased Assets be subject to, any Excluded Liabilities.  Seller shall timely perform, satisfy and discharge in accordance with their respective terms all Excluded Liabilities.  "Excluded Liabilities" shall mean all Liabilities of Seller arising out of, relating to or otherwise in respect of the Business before the Closing Date and all other Liabilities of Seller other than the Assumed Liabilities.

2.5     Bulk-Sales Laws.  Purchaser hereby waives compliance by Seller with the requirements and provisions of any "bulk-transfer" Laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Purchased Assets to Purchaser; provided, that Seller agrees (a) to pay and discharge when due or to contest or litigate all claims of creditors which are asserted against Purchaser or the Purchased Assets by reason of such noncompliance, (b) to indemnify, defend and hold harmless Purchaser from and against any and all such claims and (c) to take promptly all necessary action to remove any Lien which is placed on the Purchased Assets by reason of such noncompliance.

2.6     Purchase Price Allocation.  The parties hereto agree to file all Tax returns or reports including, without limitation, IRS Form 8594, regarding the allocation of the Consideration paid or exchanged for the Purchased Assets. The allocation of the Consideration paid or exchanged for the Purchased Assets will be as set forth on Schedule 2.6 attached hereto.

## ARTICLE III

## CONSIDERATION

3.1     Consideration.  The aggregate consideration for the purchase, sale, conveyance, assignment, transfer and delivery of the Purchased Assets shall be the conveyance, assignment, transfer and delivery of the sum of $10.00 in cash, the Note and the LMH1 Equity (collectively, the "Total Consideration").

3.2     Payment of Cash Payment.  On the Closing Date, Purchaser shall convey, assign, transfer and deliver the Total Consideration to each Seller in accordance with Schedule 3.2.

3.3     Tax Treatment.  Purchaser and the Sellers agree to treat the transactions under this Agreement as a taxable sale by Seller of the Purchased Assets in exchange for the Total Consideration under Section 1001 of the Code.

## ARTICLE IV

## CLOSING

4.1     Closing Date.  The consummation of the purchase and sale of the Purchased Assets and the assumption of the Assumed Liabilities provided for herein (the "Closing") shall take place at the offices of Haynes and Boone, LLP located at 1221 Avenue of the Americas, 26th Floor, New York, NY 10020 at 10:00 a.m. (New York time) on the date hereof (the "Closing Date").

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF SELLERS

The Sellers, jointly and severally, hereby represent and warrant to Purchaser that:

5.1     Organization and Good Standing; Subsidiaries.  Each Seller is a corporation duly incorporated, validly existing and in good standing under the laws of Delaware and has all requisite corporate power and authority to own, lease and operate its properties and to carry on its business as now conducted and as currently proposed to be conducted.  Each Seller is duly qualified or authorized to do business and is in good standing under the laws of each jurisdiction in which it owns or leases real property and each other jurisdiction in which the conduct of its business or the ownership of its properties requires such qualification or authorization.  Each Seller has delivered to Purchaser true, complete and correct copies of its certificate of incorporation and bylaws or comparable organizational documents as in effect on the date hereof.  Schedule 5.1 sets forth the name of each Subsidiary, and, with respect to each Subsidiary, the jurisdiction in which it is incorporated or organized, the jurisdictions, if any, in which it is qualified to do business, the number of shares of its authorized capital stock, the number and class of shares thereof duly issued and outstanding, the names of all stockholders or other equity owners and the number of shares of stock owned by each stockholder or the amount of equity owned by each equity owner.  Each Subsidiary is a duly organized and validly existing corporation, partnership or other entity in good standing under the laws of the jurisdiction of its incorporation or organization and is duly qualified or authorized to do business as a foreign corporation or entity and is in good standing under the laws of each jurisdiction in which the conduct of its business or the ownership of its properties requires such qualification or authorization, except where the failure to be so qualified, authorized or in good standing has not had and would not reasonably be expected to have a material adverse effect.  Each Subsidiary has all requisite corporate or entity power and authority to own its properties and carry on its business as presently conducted.  The outstanding shares of capital stock or equity interests of each Subsidiary represented as being owned by Sellers or any of the Subsidiaries are owned by them free and clear of any and all Liens.

5.2     Authorization of Agreement; Ownership of Sellers.

(a)     Each Seller has all requisite power and authority and has taken all corporate action to execute and deliver this Agreement and each Seller has all requisite power and authority and has taken all corporate action to execute and deliver each other agreement,

document, instrument or certificate contemplated by this Agreement or to be executed by such Seller in connection with the transactions contemplated by this Agreement (collectively, the "Seller Documents"), to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance of this Agreement and each of the Seller Documents, and the consummation of the transactions contemplated hereby and thereby, have been duly authorized and approved by all requisite action on the part of Sellers. This Agreement has been, and each of the Seller Documents will be at or prior to the Closing, duly and validly executed and delivered by Sellers and (assuming due authorization, execution and delivery by Purchaser) this Agreement constitutes, and each of the Seller Documents when so executed and delivered will constitute, legal, valid and binding obligations of Seller enforceable against Seller in accordance with their respective terms.

(b)     Schedule 5.2(b) sets forth the ownership of the outstanding equity securities of each Seller. The equity holders set forth on Schedule 5.2(b) are the record and beneficial owners of all of the issued and outstanding capital stock or other equity interests of applicable Seller or securities convertible or exercisable into capital stock or other equity interests of applicable Seller. No other Person owns or asserts ownership of any percentage interest, warrant, option, equity or other interest in any Seller, including any right to receive any such equity interest upon the conversion, exercise or exchange of any other interest in any Seller.

5.3     Conflicts; Consents of Third Parties.

(a)     None of the execution and delivery by any Seller of this Agreement or the Seller Documents, the consummation of the transactions contemplated hereby or thereby, or compliance by any Seller with any of the provisions hereof or thereof will conflict with, or result in any violation or breach of, conflict with or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or the loss of a material benefit under, or give rise to any obligation of any Seller to make any payment under, or to the increased, additional, accelerated or guaranteed rights or entitlements of any Person under, or result in the creation of any Liens upon any of the properties or assets of any Seller under any provision of (i) the Certificate of Incorporation and Bylaws or comparable organizational documents of any Seller; (ii) any Contract or Permit to which any Seller is a party or by which any of the properties or assets of any Seller are bound; (iii) any Order applicable to any Seller or by which any of the properties or assets of any Seller are bound; or (iv) any applicable Law.

(b)     Except as set forth in the Joint Plan, no consent, waiver, approval, Order, Permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Body is required on the part of Seller in connection with (i) the execution and delivery of this Agreement or the Seller Documents, the compliance by any Seller with any of the provisions hereof and thereof, the consummation of the transactions contemplated hereby and thereby or the taking by any Seller of any other action contemplated hereby or thereby, or (ii) the continuing validity and effectiveness immediately following the Closing of any Contract or Permit of any Seller.

5.4     Financial Statements.

(a)    Each Seller has delivered to Purchaser copies of (i) the audited balance sheets of such Seller as at December 31, 2006, 2007 and 2008 and the related audited statements of income and cash flows of such Seller for the twelve-month periods then ended, and (ii) the unaudited balance sheet of such Seller as at _____ __, 2009 and the related statements of income and cash flows of such Seller for the __-month period then ended (such statements referred to in subsections (i) and (ii) immediately above, including the related notes and schedules thereto, are referred to herein as the "Financial Statements"). Each of the Financial Statements is complete and correct, has been prepared in accordance with GAAP consistently applied by such Seller without modification of the accounting principles used in the preparation thereof throughout the periods presented and fairly presents the financial position, results of operations and cash flows of such Seller as at the dates and for the periods indicated therein.

The audited balance sheet of each Seller as at December 31, 2008 is collectively referred to herein as the "Balance Sheet" and December 31, 2008 is referred to herein as the "Balance Sheet Date."

(b)    All books, records and accounts of Sellers are accurate and complete and are maintained in all material respects in accordance with good business practice and all applicable Laws. Each Seller maintains a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary to permit the preparation of financial statements in conformity with GAAP and to maintain accountability for assets; (iii) access to assets is permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the actual levels at reasonable intervals and appropriate action is taken with respect to any differences.

5.5    No Undisclosed Liabilities. No Seller has any Liabilities (whether or not required under GAAP to be reflected on a balance sheet or the notes thereto) other than those (i) incurred in connection with the transactions contemplated by this Agreement, (ii) specifically reflected in, fully reserved against or otherwise described in the Balance Sheet or the notes thereto or (iii) incurred in the Ordinary Course of Business since the Balance Sheet Date.

5.6    Title to Purchased Assets; Sufficiency; Fair Consideration. Sellers own and have good and valid title to each of the Purchased Assets, free and clear of all Liens other than Permitted Exceptions. The Purchased Assets constitute all of the assets used in or held for use in the Business and are sufficient for Purchaser to conduct the Business from and after the Closing Date without interruption and in the Ordinary Course of Business, as it has been conducted by Sellers. No Seller is entering into the transactions contemplated hereby with intent to hinder, delay or defraud either present or future creditors.

5.7    Absence of Certain Developments. Except as expressly contemplated by this Agreement or as set forth in the Joint Plan, since the Balance Sheet Date, (i) each Seller has conducted the Business only in the Ordinary Course of Business and (ii) there has not been any event, change, occurrence or circumstance that, individually or in the aggregate with any such events, changes, occurrences or circumstances, has had or could reasonably be expected to have a material adverse effect.

5.8    Taxes. Each Seller has timely filed, in accordance with applicable law, all Tax Returns that are required to be filed and such Tax Returns are true, correct and complete. The provision for Taxes shown on the most recent balance sheet included in each Seller's Financial Statements is sufficient to satisfy all Taxes of any kind of such Seller, including interest and penalties in respect thereof, whether disputed or not, and whether accrued, due, absolute, deferred or contingent for all periods ended on or prior to the date of such Financial Statements. As of the date hereof, no Tax liabilities have been assessed or proposed that remain unpaid, and no Seller has signed any agreement with the IRS or any state or local Taxing Authority extending the period for the assessment or collection of Tax or waived any statute of limitations in respect of Taxes. Each Seller has timely paid all Taxes that have become due pursuant to the Tax Returns and has timely paid all installments of estimated Taxes due. All Taxes and other assessments and levies that Seller is required by law to withhold or collect have been duly withheld and collected, and have been timely paid over to the proper Governmental Bodies to the extent due and payable. None of the Tax Returns of any Seller has been selected for or are now under audit or examination by any Taxing Authority or other Governmental Body, and there are no Legal Proceedings pending or threatened against any Seller with respect to any Taxes. No Seller is aware of any basis upon which any assessment for any amount of additional Taxes could be made.

5.9    Real Property.

(a)    Schedule 5.9(a) sets forth a complete list of (i) all real property and interests in real property, including improvements thereon and easements appurtenant thereto owned in fee by Sellers (individually, an "Owned Property" and collectively, the "Owned Properties"), and (ii) all real property and interests in real property leased by Sellers (individually, a "Real Property Lease" and collectively, the "Real Property Leases" and, together with the Owned Properties, being referred to herein individually as a "Seller Property" and collectively as the "Seller Properties") as lessee or lessor, including a description of each such Real Property Lease (including the name of the third party lessor or lessee and the date of the lease or sublease and all amendments thereto). Sellers have good and marketable fee title to all Owned Property free and clear of all Liens of any nature whatsoever, except Permitted Exceptions. The Seller Properties constitute all interests in real property currently used, occupied or currently held for use in connection with the Business and which are necessary for the continued operation of the Business as currently conducted. All of the Seller Properties and buildings, fixtures and improvements thereon (i) are in good operating condition without structural defects, and all mechanical and other systems located thereon are in good operating condition, and no condition exists requiring material repairs, alterations or corrections and (ii) are suitable, sufficient and appropriate in all respects for their current and contemplated uses. Sellers have delivered to Purchaser true, correct and complete copies of the Real Property Leases, together with all amendments, modifications or supplements, if any, thereto.

(b)    Sellers have delivered to Purchaser a true, correct and complete copy of each Real Property Lease. Each Seller has a valid, binding and enforceable leasehold interest under each of the Real Property Leases under which it is a lessee, free and clear of all Liens other than Permitted Exceptions. Each of the Real Property Leases is in full force and effect. No Seller is in default under any Real Property Lease, and no event has occurred and no circumstance exists which, if not remedied, and whether with or without notice or the passage of

time or both, would result in such a default. No Seller has received or given any notice of any default or event that with notice or lapse of time, or both, would constitute a default by such Seller under any of the Real Property Leases and, to the Knowledge of Sellers, no other party is in default thereof, and no party to any Real Property Lease has exercised any termination rights with respect thereto.

(c)     Sellers have all certificates of occupancy and Permits of any Governmental Body necessary or useful for the current use and operation of each Seller Property, and Sellers have fully complied with all material conditions of the Permits applicable to them. No default or violation, or event that with the lapse of time or giving of notice or both would become a default or violation, has occurred in the due observance of any Permit.

(d)     There does not exist any actual or, to the Knowledge of Sellers, threatened or contemplated condemnation or eminent domain proceedings that affect any Seller Property or any part thereof, and no Seller has received any notice, oral or written, of the intention of any Governmental Body or other Person to take or use all or any part thereof.

(e)     No Seller has received any notice from any insurance company that has issued a policy with respect to any Seller Property requiring performance of any structural or other repairs or alterations to such Seller Property.

(f)     No Seller owns or holds, nor is any Seller obligated under or a party to, any option, right of first refusal or other contractual right to purchase, acquire, sell, assign or dispose of any real estate or any portion thereof or interest therein.

5.10    Tangible Personal Property.

(a)     Sellers have good and marketable title to all of the items of tangible personal property used in the Business (except as sold or disposed of subsequent to the date hereof in the Ordinary Course of Business and not in violation of this Agreement), free and clear of any and all Liens, other than Permitted Exceptions. All such items of tangible personal property which, individually or in the aggregate, are material to the operation of the Business are in good condition and in a state of good maintenance and repair (ordinary wear and tear excepted) and are suitable for the purposes used.

(b)     Schedule 5.10 sets forth all leases of personal property ("Personal Property Leases") relating to personal property used in the Business or to which Seller is a party or by which the properties or assets of any Seller is bound. All of the items of personal property under the Personal Property Leases are in good condition and repair (ordinary wear and tear excepted) and are suitable for the purposes used, and such property is in all material respects in the condition required of such property by the terms of the lease applicable thereto during the term of the lease. Each Seller has delivered to Purchaser true, correct and complete copies of the Personal Property Leases, together with all amendments, modifications or supplements thereto.

(c)     The tangible personal property owned and leased by Sellers is sufficient for the continued operation of the Business as the Business is currently conducted. Each Seller has a valid, binding and enforceable leasehold interest under each of the Personal Property Leases under which it is a lessee. Each of the Personal Property Leases is in full force and effect

and no Seller has received or given any notice of any default or event that with notice or lapse of time, or both, would constitute a default by any Seller under any of the Personal Property Leases and, to the Knowledge of Sellers, no other party is in default thereof, and no party to the Personal Property Leases has exercised any termination rights with respect thereto.

5.11 <u>Intellectual Property</u>. <u>Schedule 5.11</u> attached hereto contains a true and correct list of (i) all Intellectual Property material to the operation of the Business, (ii) all applications for and issued patents, trademark registrations, and copyright registrations owned or licensed by Sellers, and (iii) all domain names used in connection with the Business. The Intellectual Property included within the Purchased Assets includes all of the Intellectual Property necessary and sufficient to enable Purchaser to conduct the Business in the same manner in which the Business is currently being conducted by Sellers free and clear of all Liens or obligations to others. To the Knowledge of Sellers, no Seller has infringed upon, misappropriated or otherwise violated any right in the Intellectual Property of any other person. There is no claim, demand or proceeding pending or threatened that pertains to or challenges the right of any Seller to use or own any of the Intellectual Property. No Seller has granted any license or other right and no Seller has any obligation to grant any license or other right with respect to any of the Intellectual Property. To the Knowledge of Sellers, no other person has infringed upon, misappropriated or otherwise violated any right of any Seller in regard to the Intellectual Property.

5.12 <u>Material Contracts</u>.

(a) <u>Schedule 5.12(a)</u> sets forth, by reference to the applicable subsection of this <u>Section 5.12(a)</u>, all of the following Contracts to which any Seller is a party or by which any Seller or any Seller's assets or properties are bound (collectively, the "<u>Material Contracts</u>"):

(i) Contracts with any current or former officer, director, equity holder, manager, member or Affiliate of any Seller;

(ii) Contracts with any labor union or association representing any Employee of any Seller;

(iii) Contracts for the sale of any of the assets of any Seller other than in the Ordinary Course of Business or for the grant to any Person of any preferential rights to purchase any of its assets;

(iv) Contracts for joint ventures, strategic alliances, partnerships, licensing arrangements, or sharing of profits or proprietary information;

(v) Contracts containing covenants of any Seller not to compete in any line of business or with any Person in any geographical area or not to solicit or hire any Person with respect to employment or covenants of any other Person not to compete with any Seller in any line of business or in any geographical area or not to solicit or hire any Person with respect to employment;

(vi) Contracts relating to the acquisition (by merger, purchase of equity or assets or otherwise) by any Seller of any operating business or material assets or the capital stock of any other Person;

(vii)     Contracts relating to the incurrence, assumption or guarantee of any Liabilities or imposing a Lien on any of the assets of any Seller, including indentures, guarantees, loan or credit agreements, sale and leaseback agreements, purchase money obligations incurred in connection with the acquisition of property, mortgages, pledge agreements, security agreements, or conditional sale or title retention agreements;

(viii)    Contracts providing for severance, retention, change in control or other similar payments;

(ix)      material management Contracts and Contracts with independent contractors or consultants (or similar arrangements) that are not cancelable without penalty or further payment and without more than 30 days' notice;

(x)       outstanding Contracts of guaranty, surety or indemnification, direct or indirect, by any Seller; and

(xi)      Contracts that are otherwise material to any Seller.

(b)       Except as a result of the filing of the Joint Plan: (i) each of the Material Contracts is in full force and effect and is the legal, valid and binding obligation of applicable Seller and of the other parties thereto, enforceable against each of them in accordance with its terms and, upon consummation of the transactions contemplated by this Agreement, shall continue in full force and effect without penalty or other adverse consequence; and (ii) no Seller is in default under any Material Contract, nor, to the Knowledge of Sellers, is any other party to any Material Contract in breach of or default thereunder, and no event has occurred that with the lapse of time or the giving of notice or both would constitute a breach or default by any Seller or any other party thereunder.   No party to any of the Material Contracts has exercised any termination rights with respect thereto, and no party has given notice of any significant dispute with respect to any Material Contract. Each Seller has and will transfer to Purchaser at the Closing, good and valid title to the Material Contracts, free and clear of all Liens other than Permitted Exceptions. Each Seller has delivered to Purchaser true, correct and complete copies of all of the Material Contracts, together with all amendments, modifications or supplements thereto.

5.13    Employee Benefits.

(a)       Schedule 5.13(a) contains a true and complete list of all Plans.  Each Seller has delivered or made available to Purchaser true and complete copies of all documents, as they may have been amended to the date hereof, embodying or relating to the Plans.  Neither Sellers nor any ERISA Affiliate has maintained or contributed to or been required to contribute to or had any liability, contingent or otherwise, at any time within six (6) years prior to the Closing Date with respect to any "multiemployer plan," as defined in Section 4001 of ERISA and any "defined benefit plan," as defined in Section 3(35) of ERISA that are subject to Title IV of ERISA or Section 412 of the Code.

(b)       There are no pending or threatened claims by or on behalf of any the Plans, by any person covered thereby (other than ordinary claims for benefits submitted by participants or beneficiaries) or any governmental agency or authority, and neither Sellers nor

any ERISA Affiliate has any obligation under any Plan, or with respect to which Purchaser would have any Liability, or that could result in a Lien attaching to the Purchased Assets, including without limitation, any obligations of Sellers or any ERISA Affiliate relating to: (i) any benefits provided under any life, medical or health plan (other than as an incidental benefit under any Plan intended to be "qualified" within the meaning of Section 401(a) of the Code) that provides benefits to retirees or other terminated Employees, other than benefit continuation rights under COBRA; (ii) any transactions in violation of Sections 406(a) or (b) of ERISA or Section 4975 of the Code with respect to any Plan for which no exemption exists under Section 408 of ERISA or Sections 4975(c) or (d) of the Code, or that would result in a civil penalty being imposed under subsections (i) or (l) of Section 502 of ERISA; or (iii) any coverage under or failure to comply with COBRA.

5.14    Labor. Each Seller has complied and is presently complying with all applicable federal, state and local laws, regulations, ordinances and other requirements respecting employment and employment practices, terms and conditions of employment, immigration and wages and hours and is not engaged in any unfair labor practice or unlawful employment practice. There is no unfair labor practice charge or other complaint against any Seller pending or threatened before the National Labor Relations Board, the Equal Employment Opportunity Commission, the Department of Labor or any similar state or local agency nor is there any grievance or any arbitration proceeding arising out of or under any collective bargaining agreement. There is no labor strike, slowdown or work stoppage pending or threatened against any Seller. All employees of the Business are either United States citizens or resident aliens specifically authorized to engage in employment in the United States in accordance with all applicable laws.

5.15    Litigation. Except with respect to the Joint Plan, there is no Legal Proceeding pending or, to the Knowledge of Sellers, threatened against any Sellers (or to the Knowledge of Sellers, pending or threatened, against any of the officers, managers, directors or key Employees of any Seller with respect to their business activities on behalf of such Seller), or to which any Seller is otherwise a party, before any Governmental Body; nor to the Knowledge of Sellers is there any reasonable basis for any such Legal Proceeding. Except with respect to the Joint Plan, no Seller is subject to any Order, and no Seller is in breach or violation of any Order. Except with respect to the Joint Plan, no Seller is engaged in any Legal Proceeding to recover monies due it or for damages sustained by it. There are no Legal Proceedings pending or, to the Knowledge of Sellers, threatened against any Seller or to which any Seller is otherwise a party relating to this Agreement or any Seller Document or the transactions contemplated hereby or thereby.

5.16    Compliance with Laws; Permits.

(a)    Each Seller has complied and is in compliance in all material respects with all Laws applicable to its operations or the Purchased Assets or the Business. No Seller has received any written or other notice of or been charged with the violation of any Laws. To the Knowledge of Sellers, no Seller is under investigation with respect to the violation of any Laws and there are no facts or circumstances which could form the basis for any such violation. No Seller has violated any Law concerning the export or re-export of any products or services or the prohibited boycott of any country.

(b)     Schedule 5.16(b) contains a list of all Permits which are required for the operation of the Business as presently conducted and as presently intended to be conducted ("Seller Permits"), other than those the failure of which to possess is immaterial. Each Seller currently has all Permits which are required for the operation of such Seller's Business as presently conducted and as presently intended to be conducted, other than those the failure of which to possess is immaterial. No Seller is in default or violation, and no event has occurred which, with notice or the lapse of time or both, would constitute a default or violation, in any material respect of any term, condition or provision of any Seller Permit and, to the Knowledge of Sellers, there are no facts or circumstances which could form the basis for any such default or violation. None of the Seller Permits will be impaired or in any way affected by the consummation of the transactions contemplated by this Agreement.

5.17     Environmental Matters. Except as set forth on Schedule 5.17 hereto:

(a)     the operations of each Seller are and have been in compliance with all applicable Environmental Laws, which compliance includes obtaining, maintaining in good standing and complying with all Environmental Permits and no action or proceeding is pending or, to the Knowledge of Sellers, threatened to revoke, modify or terminate any such Environmental Permit, and, to the Knowledge of Sellers, no facts, circumstances or conditions currently exist that could adversely affect such continued compliance with Environmental Laws and Environmental Permits or require currently unbudgeted capital expenditures to achieve or maintain such continued compliance with Environmental Laws and Environmental Permits;

(b)     No Seller is the subject of any outstanding written Order or Contract with any Governmental Body or Person with respect to Environmental Laws, Hazardous Materials, or any Release or threatened Release of a Hazardous Material, and no Seller has received any request for information or notification alleging responsibility under CERCLA or an analogous state statute;

(c)     no claim has been made or is pending, or to the Knowledge of Sellers, threatened against any Seller alleging either or both that such Seller may be in violation of any Environmental Law or Environmental Permit, or may have any Liability under any Environmental Law;

(d)     there has been no Release or threatened Release of any Hazardous Materials on, at, under, to or about (i) any property currently or formerly owned, operated or leased by any Seller, during the time of such ownership, operation or lease, or (ii) any location where Hazardous Materials from the operations or activities of Sellers have come to be located; and no facts, circumstances or conditions exist with respect to any Seller or any property currently or formerly owned, operated or leased by any Seller or any property to which any Seller arranged for the disposal or treatment of Hazardous Materials that could reasonably be expected to result in Seller incurring any Liabilities under Environmental Law;

(e)     there are no pending or, to the Knowledge of Sellers, threatened, investigations of any Seller, its operations or any currently or formerly owned, operated or leased property which could lead to the imposition of Liabilities or Liens under Environmental Law;

(f)     the transactions contemplated hereunder do not require the consent of or filings with any Governmental Body with jurisdiction over any Seller with respect to environmental matters; and

(g)     each Seller has provided to Purchaser all environmentally related Permits, governmental submissions, audits, studies, reports, analyses, and results of investigations that have been performed with respect to the currently or previously owned, operated or leased properties of such Seller.

5.18   Deliverables.  Sellers have delivered to Purchaser, prior to the date hereof, each of the following, the matters reflected in each of which are true and correct:

(a)     Commitment for Title Policy, issued by _____ Title Insurance Company, covering each of the Owned Properties;

(b)     ALTA Survey, certified to Purchaser, covering each of the Owned Properties; and

(c)     Environmental site assessment covering each of the Owned Properties.

5.19   Accounts and Notes Receivable and Payable.

(a)     A complete and accurate list of the accounts receivable reflected on the Balance Sheet and arising after the Balance Sheet Date, showing the aging thereof, is included in Schedule 5.19.   All accounts and notes receivable of Sellers have arisen from bona fide transactions in the Ordinary Course of Business consistent with past practice and are payable on ordinary trade terms.  All accounts and notes receivable of each Seller reflected on such Seller's Balance Sheet are good and collectible at the aggregate recorded amounts thereof, net of any applicable reserve for returns or doubtful accounts reflected thereon, which reserves are adequate and were calculated in a manner consistent with past practice and in accordance with GAAP consistently applied.  All accounts and notes receivable arising after the Balance Sheet Date are good and collectible at the aggregate recorded amounts thereof within ninety (90) days after the day on which it first becomes due and payable, net of any applicable reserve for returns or doubtful accounts, which reserves are adequate and were calculated in a manner consistent with past practice and in accordance with GAAP consistently applied.  None of the accounts or the notes receivable of any Seller (i) are subject to any setoffs or counterclaims or (ii) represent obligations for goods sold on consignment, on approval or on sale-or-return basis or subject to any other repurchase or return arrangement.

(b)     All accounts payable of Sellers reflected in the Balance Sheet or arising after the date thereof are the result of bona fide transactions in the Ordinary Course of Business and have been paid or are not yet due and payable.

5.20   Related Party Transactions.  No Employee, officer, director, manager, equity holder, partner or member of any Seller, any member of his or her immediate family or any of their respective Affiliates ("Related Persons") (i) owes any amount to such Seller nor does such Seller owe any amount to, or has such Seller committed to make any loan or extend or guarantee credit to or for the benefit of, any Related Person, (ii) is involved in any business arrangement or

other relationship with such Seller (whether written or oral), (iii) owns any property or right, tangible or intangible, that is used by such Seller, (iv) has any claim or cause of action against such Seller or (v) owns any direct or indirect interest of any kind in, or controls or is a director, manager, officer, employee or partner of, or consultant to, or lender to or borrower from or has the right to participate in the profits of, any Person which is a competitor, supplier, service provider, customer, client, landlord, tenant, creditor or debtor of such Seller.

5.21    Full Disclosure.  No representation or warranty of the Sellers contained in this Agreement or in any of the Seller Documents and no written statement made by or on behalf of any Seller to Purchaser or any of its Affiliates pursuant to this Agreement or any of the Seller Documents contains an untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.  There are no facts which the Sellers have not disclosed to Purchaser in writing which could, individually or in the aggregate, reasonably be expected to have a material adverse effect.

## ARTICLE VI

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Sellers that:

6.1    Organization and Good Standing.  Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware.

6.2    Authorization of Agreement.  Purchaser has full corporate power and authority to execute and deliver this Agreement and each other agreement, document, instrument or certificate contemplated by this Agreement or to be executed by Purchaser in connection with the consummation of the transactions contemplated hereby and thereby (the "Purchaser Documents"), and to consummate the transactions contemplated hereby and thereby.  The execution, delivery and performance by Purchaser of this Agreement and each Purchaser Document have been duly authorized by all necessary corporate action on behalf of Purchaser. This Agreement has been, and each Purchaser Document will be at or prior to the Closing, duly executed and delivered by Purchaser and (assuming the due authorization, execution and delivery by the other parties hereto and thereto) this Agreement constitutes, and each Purchaser Document when so executed and delivered will constitute, the legal, valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms.

6.3    Conflicts; Consents of Third Parties.

(a)    None of the execution and delivery by Purchaser of this Agreement and of the Purchaser Documents, the consummation of the transactions contemplated hereby or thereby, or the compliance by Purchaser with any of the provisions hereof or thereof will conflict with, or result in violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination or cancellation under any provision of (i) the certificate of incorporation and bylaws of Purchaser; (ii) any Contract or Permit to which Purchaser is a party or by which any of the properties or assets of Purchaser are bound; (iii) any Order of any

Governmental Body applicable to Purchaser or by which any of the properties or assets of Purchaser are bound; or (iv) any applicable Law.

(b)     No consent, waiver, approval, Order, Permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Body is required on the part of Purchaser in connection with the execution and delivery of this Agreement or the Purchaser Documents or the compliance by Purchaser with any of the provisions hereof or thereof, except for consents, waivers, approvals, Orders, Permits, authorizations, declarations, filings or notifications that, if not obtained, made or given, would not, individually or in the aggregate, have a material adverse effect on the ability of Purchaser to consummate the transactions contemplated by this Agreement.

6.4     <u>Title to LMH1 Equity and the Note</u>. Purchaser is the owner of, and has the sole right to, the LMH1 Equity and the Note, free and clear of any Liens.

**ARTICLE VII**

**DELIVERIES**

7.1     <u>Sellers' Deliveries</u>. Sellers hereby delivers the following documents and items, duly executed and acknowledged (as appropriate), to Purchaser in a form reasonably satisfactory to Purchaser:

(a)     copies of all certificates of occupancy and Permits required by law and issued by any Governmental Body having jurisdiction over any Seller or the Business necessary for the consummation of the transactions contemplated by this Agreement or the operation of the Business by Purchaser after the Closing, if any;

(b)     the Bill of Sale transferring to Purchaser the Purchased Assets, free and clear of all liens and encumbrances, a form of the Bill of Sale has been attached hereto as <u>Exhibit A</u>;

(c)     Deeds (the "<u>Deeds</u>"), with warranties of title typical for a commercial transaction in the applicable state, conveying the Owned Properties, pursuant to which Sellers convey to Purchaser the Owned Properties;

(d)     Assignment and Assumption of Lease (the "<u>Lease Assignment and Assumption(s)</u>"), covering the Real Property Leases, pursuant to which Sellers assign to Purchaser, and Purchaser assumes, the Real Property Leases, joined, to the extent necessary, by the applicable landlord under each Real Property Lease;

(e)     the Assignment and Assumption Agreement (the "<u>Assignment and Assumption Agreement</u>"), pursuant to which Sellers shall assign the rights under, and Purchaser shall assume the obligations under, the Purchased Contracts, a form of such agreement has been attached hereto as <u>Exhibit B</u>;

(f)     the Intellectual Property Assignment, pursuant to which Sellers shall assign the rights under Sellers' Intellectual Property, a form of such assignment has been attached hereto as Exhibit C;

(g)     the Assignment of Membership Interest pursuant to which LM shall assign its membership interest in Viking to Purchaser;

(h)     the Assignment of Membership Interest pursuant to which LM shall assign its membership interest in Coverstar to Purchaser;

(i)     the Share Purchase Agreement pursuant to which LM shall assign its equity interest in Latham Splash Canada, Inc., an Ontario corporation, to Purchaser;

(j)     the Share Transfer Agreement pursuant to which LM shall assign its equity interest in Pacific Pools to Purchaser;

(k)     copies, certified to Purchaser's satisfaction, of (i) the resolutions of the board of directors of each Seller, dated on or before the Closing Date authorizing this Agreement, the Seller Documents and the transactions and other acts contemplated either by this Agreement or the Seller Documents, (ii) the Certificate of Incorporation of each Seller, certified by the Delaware Secretary of State, and (iii) the Bylaws of each Seller certified by the Secretary or an Assistant Secretary of Seller;

(l)     certificates from appropriate Governmental Bodies, (i) evidencing that each Seller is existing and in good standing under the laws of the State of Delaware and (ii) evidencing that each Seller is qualified to do business and is in good standing as a foreign corporation in each jurisdiction in which either the ownership or use of the properties owned or used by it, or the nature of the activities conducted by it, requires such qualification;

(m)     Tax clearance certificates (or its equivalent) from each state in which any Seller is registered to do business and/or is doing business, as applicable, stating that such Seller has paid all franchise, income, sales, use and other state and local Taxes up to and including the Closing Date, together with tax certificates covering each Owned Property, evidencing that no ad valorem or other real property taxes assessed against any of the Owned Properties are delinquent; and

(n)     Owner Polic(y)(ies) of Title Insurance, insuring in Purchaser good and marketable title to the Owned Properties, together with such Endorsements as Purchaser shall require;

(o)     such other instruments, documents or information that Purchaser reasonably requests in connection with this Agreement, the Seller Documents and the transactions contemplated hereby or thereby, in form and substance reasonably satisfactory to Purchaser.

7.2     Purchaser's Deliveries. Purchaser hereby delivers the following documents and items to Sellers:

(a)     the Total Consideration;

(b)     the Assignment and Assumption Agreement;

(c)     The Lease Assignment and Assumption(s); and

(d)     duly executed counterparts of the Purchaser Documents, where applicable.

## ARTICLE VIII

## MISCELLANEOUS

8.1     Expenses.  Except as otherwise provided in this Agreement, each of the Sellers and Purchaser shall bear its own expenses incurred in connection with the negotiation and execution of this Agreement and each other agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby.

8.2     Entire Agreement; Amendments and Waivers.  This Agreement, the schedules and exhibits attached hereto, and the related agreements referred to herein embody the entire agreement of the Parties, and supersede all prior agreements and understandings, with respect to the subject matter hereof.  This Agreement may only be amended or modified by written instrument duly executed by each of the Parties.

8.3     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware applicable to contracts made and performed in such State.

8.4     Notices.  All notices of requests, demands or other communications required or to be given hereunder shall be delivered by hand, overnight courier, facsimile transmission, or by United States Mail, postage prepaid, by registered or certified mail (return receipt requested), to the addressed indicated below and shall be deemed given when received by the addressee thereof:

    to Sellers:         Latham International, Inc.
                        Attn:  Mark Laven
                        787 Watervliet Shaker Road
                        Latham, NY 12110
                        Telephone: (518) ___-____
                        Facsimile: (518) ___-____

    with a copy to:     Whiteman Osterman & Hanna LLP
                        One        Commerce        Plaza,        19th        Floor
                        Albany, NY 12260-1000
                        Attn:  Leslie M. Apple
                        Telephone: (518) 487-7600
                        Facsimile: (518) 487-7777

    to Purchaser:       Latham Corporation

Attn: Mark Laven
787 Watervliet Shaker Road
Latham, NY 12110
Telephone: (518) ___-____
Facsimile: (518) ___-____

with a copy to: Haynes and Boone, LLP
1221 Avenue of the Americas, 26th Floor
New York, New York 10020
Attn: Lenard M. Parkins
Telephone: (212) 659-4966
Facsimile: (212) 884-8226

or such other address or addresses as may be expressly designated by either party by notice given in accordance with the foregoing provision.

8.5     Severability. Any provision of this Agreement which is invalid, unenforceable or illegal in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such invalidity, unenforceability or illegality without affecting the remaining provisions hereof and without affecting the validity, enforceability or legality of such provision in any other jurisdiction.

8.6     Binding Effect; Assignment. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors, legal representatives and, if properly assigned, assigns. This Agreement may not be assigned by any party without the written consent of the other Parties.

8.7     Counterparts. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers, as of the date first written above.

PURCHASER:

LATHAM CORPORATION,
a Delaware corporation


By: _____
Name: _____
Title: _____


SELLERS:


LATHAM INTERNATIONAL, INC.,
a Delaware corporation


By: _____
Name: _____
Title: _____

LATHAM MANUFACTURING CORP.,
a Delaware corporation


By: _____
Name: _____
Title: _____


KAFKO (U.S.) CORP.,
a Delaware corporation


By: _____
Name: _____
Title: _____