# EXHIBIT 22

# MANAGEMENT SERVICES AND FEE AGREEMENT

This MANAGEMENT SERVICES AND FEE AGREEMENT, dated as of _____, 2010 (this "*Agreement*"), is made and entered into between LITTLEJOHN & CO, L.L.C., a Delaware limited liability company ("*Advisor*"), and LMH I, Inc., a Delaware corporation (the "*Company*").

WHEREAS, Advisor is an Affiliate (as hereinafter defined) of Cetus Capital, LLC, a Delaware limited liability company ("*Cetus*") who owns shares of common stock of the Company; and

WHEREAS, pursuant to the Company's request, Advisor will make available to the Company and its subsidiaries certain management and financial advisory services in accordance with the terms set forth in this Agreement.

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties hereby agree as follows:

1. Engagement and Duties

(a) The Company hereby retains Advisor as an advisor to the Company, whereby Advisor shall, from time to time, to the extent reasonably requested by the Company, provide those management and financial advisory services to the Company which are set forth in Section 1(b) hereof. Advisor hereby accepts such appointment and agrees to provide each of the services required to be provided by it under this Agreement and to make itself available from time-to-time, on a part-time basis, to consult with the management and Board of Directors of the Company and its subsidiaries in connection with such services. In addition to the services of its own personnel, Advisor shall be permitted, to the extent that it determines in its sole discretion that it would be advisable or appropriate in order to perform its services hereunder, to arrange for and coordinate the services of other professionals, experts and consultants.

(b) Upon the reasonable request of the Board of Directors of the Company, Advisor hereby agrees to provide the following services to the Company and its subsidiaries:

(i) review periodically the business, operations, financial condition and prospects of the Company and its subsidiaries, including, without limitation: (A) reviewing the strategic direction and plans of the Company and its subsidiaries; (B) reviewing and evaluating the annual business plan and budget of the Company and its subsidiaries; (C) reviewing and evaluating the sales, profitability and working capital and other financing requirements of the Company and its subsidiaries; (D) reviewing the salary, and benefit levels of the senior management of the Company and its subsidiaries and reviewing and evaluating the performance of the senior management of the Company and its subsidiaries; and (E) reviewing and monitoring weekly and monthly operating and financial performance metrics.

(ii) assist the Company and its subsidiaries in the identification, planning, structuring and negotiation of potential acquisitions by the Company and its subsidiaries; and

(iii) assist the Company and its subsidiaries in seeking out and negotiating with potential financing sources for the financing of the operations of the Company and its subsidiaries or of any acquisition by the Company or its subsidiaries.

2. Nature of Relations. Notwithstanding the services provided by Advisor, Advisor shall be deemed to be an independent contractor and, unless otherwise expressly authorized by the Company's Board of Directors, shall not be authorized to manage the affairs of, act in the name of, or bind the Company or its subsidiaries. The Company and its subsidiaries shall not be obligated to follow or accept any advice or recommendation made by Advisor, and the management, policies and operations of the Company and its subsidiaries shall be the sole responsibility of the boards of directors and the management of the Company and its subsidiaries. The obligations of Advisor to the Company and its subsidiaries are not exclusive, and Advisor may, in its sole discretion, render the same or similar services to any other person or entity (a "*Person*"). Nothing set forth in this Agreement shall be deemed to prohibit Advisor from serving any other Person in any capacity Advisor may deem appropriate or from conducting its business and affairs in any manner it may elect, whether or not such activities might involve an actual or potential conflict of interest with respect to the Company or any of its subsidiaries.

3. Term. The initial term of this Agreement shall commence on the date hereof and shall continue for a period of ten years following such date; thereafter, the term of this Agreement shall continue for successive additional terms of one year unless the Board of Directors of the Company or Advisor shall give written notice to the other party terminating this Agreement at least 60 days prior to the end of the then-existing term.

4. Compensation and Expenses

(a) In consideration of the services to be provided by Advisor to the Company and its subsidiaries during the term of this Agreement, the Company shall pay Advisor a management fee (the "*Management Fee*") for each annual period commencing on [_____] of one year and ending on [_____] of the subsequent year (an "*Annual Period*") with the Management Fee being (i) $250,000 if the Company's earnings before interest, taxes, depreciation and amortization ("*EBITDA*") for the fiscal year ended immediately prior to the applicable Annual Period is less than $15 million and (ii) $500,000 if the Company's EBITDA for the fiscal year ended immediately prior to the applicable Annual Period is equal to or greater than $15 million. The Management Fee shall be for each Annual Period shall be payable at such times and in such installments as Advisor may request from time to time.

(b) The Company shall reimburse Advisor promptly for all Expenses (as hereinafter defined) upon Advisor's presentation of invoices or other documents reasonably evidencing such Expenses. The term "*Expenses*" shall mean all fees, costs and expenses reasonably incurred by Advisor in connection with its provision of services hereunder, including, without limitation: (x) all fees and expenses of legal counsel, accountants and other consultants and experts retained by Advisor in connection with its provision of services hereunder, (y) all travel and other out-of-pocket costs and expenses incurred by Advisor in connection herewith, and (z) all Losses (as defined in Section 5(a) hereof) that are the subject of indemnification pursuant to this Agreement.

(c) Upon any termination of this Agreement, the Management Fee payable with respect to the then Annual Period shall be paid in full.

(d) If at any time a credit agreement for a senior credit facility extended to the Company or any Company Affiliate (as amended, supplemented, modified, refinanced or replaced from time to time, a "*Credit Agreement*") does not permit the payment of any amount of the Management Fee, then the Company shall not thereafter make any payment of the Management Fee except as provided below. To the extent that the Management Fee is not permitted to be paid pursuant to a Credit Agreement, then the Management Fee shall be deferred but shall continue to accrue (the aggregate amount of the Management Fee deferred, the "*Accrued Fees*"). The Accrued Fees shall be paid at such time (and only at such time) as such Accrued Fees are permitted to be paid without violation of such Credit Agreement. The parties to such Credit Agreement that are financial institutions shall be third party beneficiaries of the Company's covenant under this Section 4(d) and shall be entitled to enforce the terms of this Section 4(d) against the Company.

(e) In the event of an underwritten initial public offering of the equity securities of the Company or any Company Affiliate pursuant to an effective registration statement under the Securities Act of 1933, as amended, and upon the first sale of equity interests under such registration statement, all Accrued Fees and all Management Fees that would become payable during the remaining term of this Agreement (discounted to present value using the Base Rate then in effect (as defined hereafter) as the discount rate) shall become immediately due and payable. For purposes of this Agreement "*Base Rate*" shall mean the rate of interest per annum announced publicly from time to time as such by Citibank N.A. in New York, New York.

5. <u>Indemnification, Etc.</u>

(a) The Company shall, to the fullest extent permitted by law, indemnify Advisor and each member, officer, employee, Affiliate, agent and representative of Advisor (collectively, the "*Indemnitees*") against, and the Company will hold harmless and will release each Indemnitee from, any and all Losses (as defined below), including any incurred in connection with any action, claim, suit, inquiry, proceeding, investigation or appeal taken from the foregoing by or before any court or governmental, administrative or other regulatory agency, body or commission, whether pending or threatened, whether or not any Indemnitee is or may be a party thereto, which arise out of, relate to or are in connection with the provision of any services hereunder or otherwise relate to this Agreement or the management or conduct of the business or affairs of the Company or any of its subsidiaries (including, without limitation, an Indemnitee serving or having served as a director, officer, employee, consultant or agent of the Company or any of its subsidiaries), except for any Losses that are found by a court of competent jurisdiction to have resulted primarily from the gross negligence or willful misconduct or bad faith of the Indemnitee seeking indemnification. The term "*Affiliate*" shall mean, with respect to any specified Person, any other Person (i) that, either directly or indirectly through one or more intermediaries, controls, is controlled by or is under common control with such specified Person, or (ii) who is a member, officer, employee, partner or director of the specified Person or any Affiliate of such Person. The term "*control*" means (i) the legal or beneficial ownership of securities representing a majority of the voting power of any Person or (ii) the possession, directly or indirectly, of the power to direct or cause the direction of the management and

policies of a Person, whether by contract or otherwise. The term "*Losses*" shall mean all losses, claims, damages or liabilities of each Indemnitee, joint or several, and all judgments, fines, penalties, amounts paid in settlement, interest and charges, and all costs and expenses incurred in connection with the investigation, defense or settlement of any pending or threatened claims (including, without limitation, attorneys' fees and expenses related thereto).

(b) The termination of any proceeding by settlement shall not, of itself, create a presumption that the Indemnitee acted in a manner that constituted gross negligence, willful misconduct or a knowing violation of law. The right of any Indemnitee to the indemnification provided herein shall be cumulative of, and in addition to, any and all rights to which such Indemnitee may otherwise be entitled by contract or as a matter of law or equity and shall extend to such Indemnitee's successors, assigns and legal representatives. The Company hereby agrees that the Indemnitees are express third party beneficiaries of the terms of this Section 5.

(c) Promptly after receipt by an Indemnitee hereunder of written notice of the commencement of any action or proceeding with respect to which a claim for indemnification may be made pursuant to this Section 5, such Indemnitee will, if a claim in respect thereof is to be made against the Company, promptly give written notice to the Company of the commencement of such action; provided that the failure of any Indemnitee to give notice as provided herein shall not relieve the Company of its obligations under this Section 5, except to the extent that the Company is actually and materially prejudiced by such failure to give notice. In case any such action is brought against an Indemnitee, unless in such Indemnitee's reasonable judgment a conflict of interest between such Indemnitee and the Company may exist in respect of such claim, the Company will be entitled to participate in and to assume the defense thereof, to the extent that it may wish, with counsel reasonably satisfactory to such Indemnitee. After notice from the Company of its election to assume the defense of such action, the Company will not be liable to such Indemnitee for any legal or other expenses subsequently incurred by the Indemnitee in connection with the defense thereof, unless in such Indemnitee's reasonable judgment a conflict of interest between the Indemnitee and the Company arises in respect of such claim after the assumption of the defense thereof (in which case, the Company shall not assume the defense thereof, but shall be responsible for the fees and expenses of one counsel in each jurisdiction for all parties indemnified by the Company, subject to the same exception as is set forth in the last sentence of this subsection (c)), and the Company will not be subject to any liability for any settlement made without its consent (which consent shall not be unreasonably withheld). The Company will not consent to entry of any judgment or enter into any settlement (i) which does not include as an unconditional term thereof the giving by the claimant or plaintiff to such Indemnitee of a release from all liability in respect to such claim or litigation, and (ii) that imposes any obligation on an Indemnitee (except any obligation to make payments which the Company shall, and promptly does, pay). If the Company elects not to assume the defense of a claim, it will not be obligated to pay the fees and expenses of more than one counsel for all parties indemnified by the Company with respect to such claim, unless in the reasonable judgment of any Indemnitee a conflict of interest may exist between such Indemnitee and any other of such Indemnitees with respect to such claim, in which event the Company shall be obligated to pay the fees and expenses of such additional counsel or counsels.

(d) Notwithstanding the expiration of the term hereof pursuant to Section 3 or the termination of this Agreement, the indemnification provided under this Agreement shall remain in full force and effect thereafter.

(e) No Indemnitee shall be liable to the Company or its subsidiaries for any error of judgment or mistake of law or for any loss incurred by the Company or its subsidiaries in connection with the matters to which this Agreement relates, except for any damages that are found by a court of competent jurisdiction to have resulted primarily from the gross negligence or willful misconduct or bad faith of the Indemnitee seeking indemnification. In no event shall Advisor or any other Indemnitee be liable for any indirect, special or consequential damages arising out of or in connection with this Agreement. Advisor and the other Indemnitees may consult with legal counsel, accountants and other consultants and experts in respect of the affairs of the Company and its subsidiaries and shall be fully protected and justified in acting, or failing to act, in a manner reasonably consistent with the advice or opinion of the legal counsel, accountants and other consultants and experts retained and supervised by Advisor and/or the other Indemnitees with reasonable care and in good faith.

(f) The Company hereby acknowledges that certain Indemnitees have certain rights to indemnification, advancement of expenses and/or insurance provided by Advisor and certain of its affiliates (collectively, the "**Fund Indemnitors**"). The Company hereby agrees (i) that the Company is the indemnitor of first resort (i.e., its obligations to the Indemnitees are primary and any obligation of the Fund Indemnitors to advance expenses or to provide indemnification for the same expenses or liabilities incurred by an Indemnitee are secondary), (ii) that the Company shall be required to advance the full amount of expenses incurred by each Indemnitee and shall be liable for the full amount of all Losses to the extent legally permitted and as required by the terms of this Agreement and the Certificate of Incorporation or Bylaws of the Company (or any other agreement between the Company and such Indemnitee), without regard to any rights such Indemnitee may have against the Fund Indemnitors, and (iii) that the Company irrevocably waives, relinquishes and releases the Fund Indemnitors from any and all claims that the Company may have against the Fund Indemnitors for contribution, subrogation or any other recovery of any kind in respect thereof. The Company further agrees that no advancement or payment by the Fund Indemnitors on behalf of an Indemnitee with respect to any claim for which such Indemnitee has sought indemnification from the Company shall affect the foregoing and the Fund Indemnitors shall have a right of contribution and/or be subrogated to the extent of such advancement or payment to all of the rights of recovery of such Indemnitee against the Company. The Company and the Indemnitees agree that the Fund Indemnitors are express third party beneficiaries of the terms of this Section 5(f).

6. Notices. All notices and other communications given in connection with this Agreement shall be in writing and shall be given by personal delivery, by facsimile, by registered or certified first-class U.S. mail, return receipt requested and postage prepaid, or by express courier or recognized overnight delivery service, charges prepaid, addressed to the parties hereto at the following addresses or fax numbers:

(a) if to the Company:         LMH I, Inc.
                               Attn: Mark Laven
                               787 Watervliet Shaker Road

Latham, NY 12110
Fax No.: (518) ___-____

(b)     if to Advisor:     Littlejohn & Co., L.L.C.
Attn: Steve Raich
Robert Davis
8 Sound Shore Drive (Suite 303)
Greenwich, CT 06830
Fax No.: (203) 552-3550

Notice shall be deemed given: (a) when delivered personally to the recipient; (b) when received, if sent by facsimile or electronically (confirmation of such receipt by confirmed facsimile transmission or scanned transmission being deemed receipt of communications sent by facsimile or electronically); (c) on the date five (5) days after the date mailed, if sent by registered or certified first-class U.S. mail, return receipt requested and postage prepaid; and (d) when delivered (or upon the date of attempted delivery where delivery is refused), if sent by express courier or recognized overnight delivery service, charges prepaid. Notice of any change in any such address or facsimile number shall also be given in the manner set forth above. Whenever the giving of notice is required, the giving of such notice may be waived by the party entitled to receive such notice.

7.     <u>Entire Agreement; Amendments</u>. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof. It supersedes any prior agreement or understanding between them, and it may not be modified or amended in any manner other than by an instrument in writing signed by both parties hereto, or their respective successors or assigns.

8.     <u>Choice of Law</u>. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE.

9.     <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the parties and their successors and permitted assigns. Nothing in this Agreement, express or implied, is intended or shall be construed to give any Person other than the parties to this Agreement and their respective successors or permitted assigns, any legal or equitable right, remedy or claim under or in respect of any agreement or any provision contained herein. This Agreement may not be assigned by either party without the prior written consent of the other party; provided, however, that Advisor may designate that any of the services to be provided by Advisor to the Company or its subsidiaries be performed by (a) any of its Affiliates, in its reasonable discretion, or (b) any non-Affiliates reasonably acceptable to the Company.

10.     <u>Force Majeure</u>. If the performance by Advisor of any of its services hereunder is prevented, restricted or interfered with in whole or in part by reason of any event or cause whatsoever beyond the reasonable control of Advisor, then in any such event, Advisor shall be excused from such performance to the extent of such prevention, restriction or interference, and the Management Fee payable hereunder shall be reduced proportionately.

11. <u>Headings</u>. Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provision hereof.

12. <u>Severability</u>. If any provision of this Agreement, or the application of such provision to any Person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

13. <u>Waivers</u>. No provision of this Agreement shall be deemed to have been waived unless such waiver is contained in a written notice given to the party claiming such waiver, and no such waiver shall be deemed to be a waiver of any other or further obligation or liability of the party or parties in whose favor the waiver was given.

14. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

### ADVISOR:

**LITTLEJOHN & CO., L.L.C.**

By: _____
Name: Edmund J. Feeley
Title: Manager

### THE COMPANY:

**LMH I, INC.**

By: _____
Name: _____
Title: _____

*Signature Page to Management Services Agreement*

D-1819347