# EXHIBIT 23

## LMH I, INC.

## 2010 WARRANT PLAN

The LMH I, Inc. 2010 Warrant Plan (the "*Plan*") was adopted by the Board of Directors of LMH I, Inc., a Delaware corporation (the "*Company*"), effective as of _____, 2010.

### ARTICLE 1
### PURPOSE

The purpose of the Plan is to attract and retain the services of key employees of the Company and its Subsidiaries and to provide such persons with a proprietary interest in the Company through the granting of warrants, that will

    (a)    increase the interest of such persons in the Company's welfare;

    (b)    furnish an award to such persons to continue their services for the Company or its Subsidiaries; and

    (c)    provide a means through which the Company may attract able persons as Employees.

### ARTICLE 2
### DEFINITIONS

For the purpose of the Plan, unless the context requires otherwise, the following terms shall have the meanings indicated:

2.1    "*Award*" means the grant of any Warrant.

2.2    "*Award Agreement*" means a written agreement between a Participant and the Company which sets out the terms of the grant of an Award.

2.3    "*Award Period*" means the period set forth in the Award Agreement during which an Award may be exercised.

2.4    "*Board*" means the board of directors of the Company.

2.5    "*Change in Control*" means the occurrence of the event set forth in any one of the following paragraphs, except as otherwise provided herein:

    (i)    any Person is or becomes the Beneficial Owner, directly or indirectly, of securities of the Company (not including in the securities beneficially owned by such Person any securities acquired directly from the Company or its Affiliates) representing 50% or more of the combined voting power of the Company's then outstanding securities, excluding any Person who

becomes such a Beneficial Owner in connection with a transaction described in clause (i) of paragraph (iii) below; or

(ii)     there is consummated a merger or consolidation of the Company or any direct or indirect subsidiary of the Company with any other corporation, other than (i) a merger or consolidation which would result in the voting securities of the Company outstanding immediately prior to such merger or consolidation continuing to represent (either by remaining outstanding or by being converted into voting securities of the surviving entity or any parent thereof) at least 60% of the combined voting power of the securities of the Company or such surviving entity or any parent thereof outstanding immediately after such merger or consolidation or (ii) a merger or consolidation effected to implement a recapitalization of the Company (or similar transaction) in which no Person is or becomes the Beneficial Owner, directly or indirectly, of securities of the Company (not including the securities Beneficially Owned by such Person any securities acquired directly from the Company or its Affiliates other than in connection with the acquisition by the Company or its Affiliates of a business) representing 30% or more of the combined voting power of the Company's then outstanding securities; or

(iii)     the stockholders of the Company approve a plan of complete liquidation or dissolution of the Company or there is consummated an agreement for the sale or disposition by the Company of all or substantially all of the Company's assets, other than a sale or disposition by the Company of all or substantially all of the Company's assets to an entity, at least 60% of the combined voting power of the voting securities of which are owned by stockholders of the Company in substantially the same proportions as their ownership of the Company immediately prior to such sale.

For purposes hereof:

"*Affiliate*" shall have the meaning set forth in Rule 12b-2 promulgated under Section 12 of the Securities Exchange Act of 1934 (the "*1934 Act*").

"*Beneficial Owner*" shall have the meaning set forth in Rule 13d-3 under the 1934 Act.

"*Person*" shall have the meaning given in Section 3(a)(9) of the 1934 Act, as modified and used in Sections 13(d) and 14(d) thereof, except that such term shall not include (i) the Company or any of its subsidiaries, (ii) a trustee or other fiduciary holding securities under an employee benefit plan of the Company or any of its Affiliates, (iii) an underwriter temporarily holding securities pursuant to an offering of such securities, or (iv) a corporation owned, directly or indirectly, by the stockholders of the Company in substantially the same proportions as their ownership of stock of the Company.

Notwithstanding the foregoing provisions of this <u>Section 2.5</u>, in the event an Award issued under the Plan is subject to Section 409A of the Code, then, in lieu of the foregoing definition and to the extent necessary to comply with the requirements of Section 409A of the Code, the definition of "Change in Control" for purposes of such Award shall be as follows:

"*Change in Control*" of the Company occurs upon a change in the Company's ownership, its effective control or the ownership of a substantial portion of its assets, as follows:

(a)     <u>Change in Ownership</u>.  A change in ownership of the Company occurs on the date that any "Person" (as defined in <u>Section 2.5(d)</u> below), other than (i) the Company or any of its subsidiaries, (ii) a trustee or other fiduciary holding securities under an employee benefit plan

of the Company or any of its Affiliates, (iii) an underwriter temporarily holding stock pursuant to an offering of such stock, or (iv) a corporation owned, directly or indirectly, by the shareholders of the Company in substantially the same proportions as their ownership of the Company's stock, acquires ownership of the Company's stock that, together with stock held by such Person, constitutes more than 50% of the total fair market value or total voting power of the Company's stock. However, if any Person is considered to own already more than 50% of the total fair market value or total voting power of the Company's stock, the acquisition of additional stock by the same Person is not considered to be a Change of Control. In addition, if any Person has effective control of the Company through ownership of 30% or more of the total voting power of the Company's stock, as discussed in paragraph (b) below, the acquisition of additional control of the Company by the same Person is not considered to cause a Change in Control pursuant to this paragraph (a); or

(b)     Change in Effective Control.     Even though the Company may not have undergone a change in ownership under paragraph (a) above, a change in the effective control of the Company occurs on either of the following dates:

(i)     the date that any Person acquires (or has acquired during the 12-month period ending on the date of the most recent acquisition by such Person) ownership of the Company's stock possessing 40% or more of the total voting power of the Company's stock. However, if any Person owns 40% or more of the total voting power of the Company's stock, the acquisition of additional control of the Company by the same Person is not considered to cause a Change in Control pursuant to this subparagraph (b)(i); or

(ii)     the date during any 12-month period when a majority of members of the Board is replaced by directors whose appointment or election is not endorsed by a majority of the Board before the date of the appointment or election; provided, however, that any such director shall not be considered to be endorsed by the Board if his or her initial assumption of office occurs as a result of an actual or threatened solicitation of proxies or consents by or on behalf of a Person other than the Board; or

(c)     Change in Ownership of Substantial Portion of Assets.     A change in the ownership of a substantial portion of the Company's assets occurs on the date that a Person acquires (or has acquired during the 12-month period ending on the date of the most recent acquisition by such Person) assets of the Company, that have a total gross fair market value equal to all or substantially all of the total gross fair market value of all of the Company's assets immediately before such acquisition or acquisitions. However, there is no Change in Control when there is such a transfer to (i) a shareholder of the Company (immediately before the asset transfer) in exchange for or with respect to the Company's stock; (ii) an entity, at least 50% of the total value or voting power of the stock of which is owned, directly or indirectly, by the Company; (iii) a Person that owns directly or indirectly, at least 50% of the total value or voting power of the Company's outstanding stock; or (iv) an entity, at least 50% of the total value or voting power of the stock of which is owned by a Person that owns, directly or indirectly, at least 50% of the total value or voting power of the Company's outstanding stock.

(d)     Definitions. For purposes of subparagraphs (a), (b) and (c) above:

(i)     "*Person*" shall have the meaning given in Section 7701(a)(1) of the Internal Revenue Code of 1986, as amended (the "*Code*"). Person shall include more than one Person acting as a group as defined by the Final Treasury Regulations issued under Section 409A of the Code.

(ii)    "*Affiliate*" shall have the meaning set forth in Rule 12b-2 promulgated under Section 12 of the Securities Exchange Act of 1934, as amended.

(e)    Interpretation.    The provisions of this Section 2.5 shall be interpreted in accordance with the requirements of the Final Treasury Regulations under Code Section 409A, it being the intent of the parties that this Section 2.5 shall be in compliance with the requirements of said Code Section and said Regulations.

2.6    "*Code*" means the Internal Revenue Code of 1986, as amended.

2.7    "*Committee*" means the committee appointed or designated by the Board to administer the Plan in accordance with Article 3 of this Plan.

2.8    "*Common Stock*" means the common stock, par value $0.01 per share, which the Company is currently authorized to issue or may in the future be authorized to issue, or any securities into which or for which the common stock of the Company may be converted or exchanged, as the case may be, pursuant to the terms of this Plan.

2.9    "*Company*" means LMH I, Inc., a Delaware corporation, and any successor entity.

2.10    "*Date of Grant*" means the effective date on which an Award is made to a Participant as set forth in the applicable Award Agreement.

2.11    "*Employee*" means common law employee (as defined in accordance with the Regulations and Revenue Rulings then applicable under Section 3401(c) of the Code) of the Company or any Subsidiary of the Company.

2.12    "*Exercise Price*" means the price which must be paid by a Participant upon exercise of a Warrant to purchase a share of Common Stock.

2.13    "*Fair Market Value*" means, as of a particular date, (a) the quotient of (i) the Company's total enterprise value of $50,000,000, less the outstanding principal and accrued interest of the "New Note," as such term is defined in the Prepackaged Joint Plan of Reorganization of Latham International, Inc., et al., under Chapter 11 of the Bankruptcy Code (the "*Plan of Reorganization*") or any successor debt thereto, in accordance with the terms and provisions of the corporate documents relating to the Company, LMH II, Inc., a Delaware corporation, Latham Corporation, Inc., a Delaware corporation, and each of their subsidiaries and affiliates to be filed with the "Plan Supplement," as such term is defined in the Plan of Reorganization, divided by (ii) the number of shares of Common Stock outstanding as of the date hereof, or (b) such amount as may be determined by the Committee (acting on the advice of an Independent Third Party, should the Board Committee elect in its sole discretion to utilize an Independent Third Party for this purpose), in good faith, to be the fair market value per share of Common Stock. The determination of Fair Market Value shall, where applicable, be in compliance with Section 409A of the Code.

2.14    "*Independent Third Party*" means an individual or entity independent of the Company having experience in providing investment banking or similar appraisal or valuation services and with expertise generally in the valuation of securities or other property for purposes of this Plan. The Committee may utilize one or more Independent Third Parties.

2.15    "*Participant*" means an Employee of the Company or a Subsidiary to whom an Award is granted under this Plan.

2.16    "*Plan*" means this LMH I, Inc. 2010 Warrant Plan, as amended from time to time.

2.17    "***Retirement***" means any Termination of Service solely due to retirement upon or after attainment of age sixty-five (65), or permitted early retirement as determined by the Committee.

2.18    "***Subsidiary***" means (i) any corporation in an unbroken chain of corporations beginning with the Company, if each of the corporations other than the last corporation in the unbroken chain owns stock possessing a majority of the total combined voting power of all classes of stock in one of the other corporations in the chain, (ii) any limited partnership, if the Company or any corporation described in item (i) above owns a majority of the general partnership interest and a majority of the limited partnership interests entitled to vote on the removal and replacement of the general partner, and (iii) any partnership or limited liability company, if the partners or members thereof are composed only of the Company, any corporation listed in item (i) above or any limited partnership listed in item (ii) above. "Subsidiaries" means more than one of any such corporations, limited partnerships, partnerships or limited liability companies.

2.19    "***Termination of Service***" occurs when a Participant who is an Employee of the Company or any Subsidiary ceases to serve as an Employee of the Company and its Subsidiaries, for any reason. Notwithstanding the foregoing provisions of this Section 2.19, in the event an Award issued under the Plan is subject to Section 409A of the Code, then, in lieu of the foregoing definition and to the extent necessary to comply with the requirements of Section 409A of the Code, the definition of "Termination of Service" for purposes of such Award shall be the definition of "separation from service" provided for under Section 409A of the Code and the regulations or other guidance issued thereunder. Notwithstanding anything to the contrary contained herein, a Participant who is an Employee of the Company or any Subsidiary will not be treated as incurring a Termination of Service and the employment relationship shall be treated as continuing intact, while the Employee is on military leave, sick leave, or other bona fide leave of absence if the period of such leave does not exceed three (3) months, or if longer, so long as the individual's right to reemployment with the Company or any Subsidiary is provided by either contract or statute. If the Employee's period of leave exceeds three (3) months and the individual's right to reemployment is not provided either by statute or contract, the employment relationship shall be deemed to terminate, and the Employee shall be deemed to incur a Termination of Service, on the first day immediately following such three (3) month period.

2.20    "***Total and Permanent Disability***" means a Participant is qualified for long-term disability benefits under the Company's or Subsidiary's disability plan or insurance policy; or, if no such plan or policy is then in existence or if the Participant is not eligible to participate in such plan or policy, that the Participant, because of a physical or mental condition resulting from bodily injury, disease, or mental disorder, is unable to perform his or her duties of employment for a period of six (6) continuous months, as determined in good faith by the Committee, based upon medical reports or other evidence satisfactory to the Committee. Notwithstanding the foregoing provisions of this Section 2.20, in the event an Award issued under the Plan is subject to Section 409A of the Code, then, in lieu of the foregoing definition and to the extent necessary to comply with the requirements of Section 409A of the Code, the definition of "Total and Permanent Disability" for purposes of such Award shall be the definition of "disability" provided for under Section 409A of the Code and the regulations or other guidance issued thereunder.

2.21    "***Warrant***" means a warrant to purchase shares of Common Stock, granted pursuant to this Plan.

## ARTICLE 3
## ADMINISTRATION

**3.1** **General Administration; Establishment of Committee**. Subject to the terms of this Article 3, the Plan shall be administered by the Board or such committee of the Board as is designated by the Board to administer the Plan (the "*Committee*"). The Committee shall consist of not fewer than two persons. Any member of the Committee may be removed at any time, with or without cause, by resolution of the Board. Any vacancy occurring in the membership of the Committee may be filled by appointment by the Board. At any time there is no Committee to administer the Plan, any references in this Plan to the Committee shall be deemed to refer to the Board.

The Committee shall select one of its members to act as its Chairman. A majority of the Committee shall constitute a quorum, and the act of a majority of the members of the Committee present at a meeting at which a quorum is present shall be the act of the Committee.

**3.2** **Designation of Participants and Awards**.

(a) The Committee or the Board shall determine and designate from time to time the eligible persons to whom Awards will be granted and shall set forth in each related Award Agreement, where applicable, the Award Period, the Date of Grant, and such other terms, provisions, limitations, and performance requirements, as are approved by the Committee, but not inconsistent with the Plan. Although the members of the Committee shall be eligible to receive Awards, all decisions with respect to any Award, and the terms and conditions thereof, to be granted under the Plan to any member of the Committee shall be made solely and exclusively by the other members of the Committee, or if such member is the only member of the Committee, by the Board.

(b) Notwithstanding Section 3.2(a), to the extent permitted by applicable law, the Board may, in its discretion and by a resolution adopted by the Board, authorize the Chief Executive Officer of the Company (the "*CEO*") to (i) designate one or more Employees as eligible persons to whom Awards will be granted under the Plan and (ii) determine the number of shares of Common Stock that will be subject to such Awards; provided, however, that the resolution of the Board granting such authority shall (x) specify the total number of shares of Common Stock that may be made subject to the Awards, (y) set forth the price or prices (or a formula by which such price or prices may be determined) to be paid for the purchase of the Common Stock subject to such Awards, and (z) not authorize the CEO to designate himself as a recipient of any Award.

**3.3** **Authority of the Committee.** The Committee, in its discretion, shall (i) interpret the Plan, (ii) prescribe, amend, and rescind any rules and regulations necessary or appropriate for the administration of the Plan, (iii) establish performance goals for an Award and certify the extent of their achievement, and (iv) make such other determinations or certifications and take such other action as it deems necessary or advisable in the administration of the Plan. Any interpretation, determination, or other action made or taken by the Committee shall be final, binding, and conclusive on all interested parties. The Committee's discretion set forth herein shall not be limited by any provision of the Plan, including any provision which by its terms is applicable notwithstanding any other provision of the Plan to the contrary.

The Committee may delegate to officers of the Company, pursuant to a written delegation, the authority to perform specified functions under the Plan. Any actions taken by any officers of the Company pursuant to such written delegation of authority shall be deemed to have been taken by the Committee.

With respect to restrictions in the Plan that are based on the requirements of any applicable law, rule or restriction (collectively, "***applicable law***"), to the extent that any such restrictions are no longer required by applicable law, the Committee shall have the sole discretion and authority to grant Awards that are not subject to such mandated restrictions and/or to waive any such mandated restrictions with respect to outstanding Awards.

## ARTICLE 4
## ELIGIBILITY

Any Employee (including an Employee who is also a director or an officer) of the Company whose judgment, initiative, and efforts contributed or may be expected to contribute to the successful performance of the Company is eligible to participate in the Plan. The Committee, upon its own action, may grant, but shall not be required to grant, an Award to any Employee of the Company or any Subsidiary. Awards may be granted by the Committee at any time and from time to time to new Participants, or to then Participants, or to a greater or lesser number of Participants, and may include or exclude previous Participants, as the Committee shall determine. Except as required by this Plan, Awards granted at different times need not contain similar provisions. The Committee's determinations under the Plan (including without limitation determinations of which Employees, if any, are to receive Awards, the form, amount and timing of such Awards, the terms and provisions of such Awards and the agreements evidencing same) need not be uniform and may be made by it selectively among Participants who receive, or are eligible to receive, Awards under the Plan.

## ARTICLE 5
## SHARES SUBJECT TO PLAN

**5.1    Number Available for Awards.** Subject to adjustment as provided in Articles 11 and 12, the maximum number of shares of Common Stock that may be delivered pursuant to Awards granted under the Plan is 100,000 shares. Shares to be issued may be made available from authorized but unissued Common Stock, Common Stock held by the Company in its treasury, or Common Stock purchased by the Company on the open market or otherwise. During the term of this Plan, the Company will at all times reserve and keep available the number of shares of Common Stock that shall be sufficient to satisfy the requirements of this Plan.

**5.2    Reuse of Shares.** To the extent that any Award under this Plan shall be forfeited, shall expire or be canceled, in whole or in part, then the number of shares of Common Stock covered by the Award so forfeited, expired or canceled may again be awarded pursuant to the provisions of this Plan. In the event that previously acquired shares of Common Stock are delivered to the Company in full or partial payment of the Exercise Price for the exercise of a Warrant granted under this Plan, the number of shares of Common Stock available for future Awards under this Plan shall be reduced only by the net number of shares of Common Stock issued upon the exercise of the Warrant.

## ARTICLE 6
## GRANT OF AWARDS

**6.1    In General.**    The grant of an Award shall be authorized by the Committee and shall be evidenced by an Award Agreement setting forth the Award or Awards being granted, the total number of shares of Common Stock subject to the Award(s), the Exercise Price (if applicable), the Award Period, the Date of Grant, and such other terms, provisions, limitations, and performance objectives, as are approved by the Committee, but (i) not inconsistent with the Plan, and (ii) to the extent an Award issued

under the Plan is subject to Section 409A of the Code, in compliance with the applicable requirements of Section 409A of the Code and the regulations or other guidance issued thereunder. The Company shall execute an Award Agreement with a Participant after the Committee approves the issuance of an Award. Any Award granted pursuant to this Plan must be granted within ten (10) years of the date of adoption of this Plan. The grant of an Award to a Participant shall not be deemed either to entitle the Participant to, or to disqualify the Participant from, receipt of any other Award under the Plan.

      **6.2**    **Exercise Price.** The Exercise Price for any share of Common Stock which may be purchased under a Warrant for any share of Common Stock shall be equal to or greater than the Fair Market Value of the share on the Date of Grant.

### ARTICLE 7
### AWARD PERIOD; VESTING

      **7.1**    **Award Period.** Subject to the other provisions of this Plan, the Committee may, in its discretion, provide that an Award may not be exercised in whole or in part for any period or periods of time or beyond any date specified in the Award Agreement. Except as provided in the Award Agreement, an Award may be exercised in whole or in part at any time during its term. The Award Period for an Award shall be reduced or terminated upon Termination of Service. No Award granted under the Plan may be exercised at any time after the end of its Award Period. No portion of any Award may be exercised after the expiration of ten (10) years from its Date of Grant.

      **7.2**    **Vesting.** Unless otherwise specifically provided in the Award Agreement, Awards granted under the Plan shall vest as follows: twenty-five percent (25%) of the shares subject to the Award shall vest and become exercisable upon the first anniversary of the Date of Grant, an additional twenty-five percent (25%) of the shares subject to the Award shall vest and become exercisable upon the second anniversary of the Date of Grant, an additional twenty-five percent (25%) of the shares subject to the Award shall vest and become exercisable upon the third anniversary of the Date of Grant, and the remaining twenty-five percent (25%) of the shares subject to the Award shall vest and become exercisable upon the fourth anniversary of the Date of Grant. Notwithstanding the foregoing, subsequent to the Date of Grant, the Committee may, in its sole discretion, accelerate the date on which all or any portion of the Award may be vested.

### ARTICLE 8
### EXERCISE OF AWARD

      **8.1**    **In General.** A vested Award may be exercised, during its Award Period, subject to limitations and restrictions set forth in the Award Agreement.

      **8.2**    **Securities Law and Exchange Restrictions.** The exercise of any Award and the issuance of shares of Common Stock pursuant to an Award shall be delayed in the event a necessary listing or quotation of the shares of Common Stock on a stock exchange or inter-dealer quotation system or any registration under state or federal securities laws required under the circumstances has not been accomplished. In the event a delay or exercise occurs pursuant to this Section 8.2, the Company shall act with reasonable promptness to obtain any such necessary listing or quotation, and immediately following the accomplishment of such listing or quotation, the Participant may exercise his or her Award and the Company shall issue any shares of Common Stock for which issuance was delayed.

**8.3    Exercise of Warrant.**

(a)    **In General.**    If the Committee imposes conditions upon exercise, then subsequent to the Date of Grant, the Committee may, in its sole discretion, accelerate the date on which all or any portion of the Warrant may be exercised. No Warrant may be exercised for a fractional share of Common Stock. The granting of a Warrant shall impose no obligation upon the Participant to exercise that Warrant.

(b)    **Notice and Payment.**    Subject to such administrative regulations as the Committee may from time to time adopt, a Warrant may be exercised by the delivery of written notice to the Committee setting forth the number of shares of Common Stock with respect to which the Warrant is to be exercised and the date of exercise thereof (the "***Exercise Date***") which shall be at least three (3) days after giving such notice unless an earlier time shall have been mutually agreed upon. On the Exercise Date, the Participant shall deliver to the Company consideration with a value equal to the total Exercise Price of the shares to be purchased, payable as provided in the Award Agreement, which may provide for payment in any one or more of the following ways: (a) cash or check, bank draft, or money order payable to the order of the Company, (b) Common Stock owned by the Participant on the Exercise Date, valued at its Fair Market Value on the Exercise Date, and which the Participant has not acquired from the Company within six (6) months prior to the Exercise Date, and/or (c) in any other form of valid consideration that is acceptable to the Committee in its sole discretion.

(c)    **Issuance of Certificate.**    Except as otherwise provided in the applicable Award Agreement, upon payment of all amounts due from the Participant, the Company shall cause certificates for the Common Stock then being purchased to be delivered as directed by the Participant (or the person exercising the Participant's Warrant in the event of his death) at its principal business office promptly after the Exercise Date. The obligation of the Company to deliver shares of Common Stock shall, however, be subject to the condition that, if at any time the Committee shall determine in its discretion that the listing, registration, or qualification of the Warrant or the Common Stock upon any securities exchange or inter-dealer quotation system or under any state or federal law, or the consent or approval of any governmental regulatory body, is necessary as a condition of, or in connection with, the Warrant or the issuance or purchase of shares of Common Stock thereunder, the exercise of the Warrant shall be delayed in whole or in part until the date such listing, registration, qualification, consent, or approval shall have been effected or obtained free of any conditions not reasonably acceptable to the Committee. In the event a delay or exercise occurs pursuant to this Section 8.3(c), the Company shall act with reasonable promptness to effect or obtain any necessary listing, registration, qualification, consent or approval, and immediately following the effectiveness or obtainment of which, the Participant may exercise his or her Warrant and the Company shall issue any shares of Common Stock for which issuance was delayed.

(d)    **Failure to Pay.**    Except as may otherwise be provided in an Award Agreement, if the Participant fails to pay for any of the Common Stock specified in such notice or fails to accept delivery thereof, that portion of the Participant's Warrant and right to purchase such Common Stock may be forfeited by the Participant.

**ARTICLE 9**
**AMENDMENT OR DISCONTINUANCE**

Subject to the limitations set forth in this Article 9, the Board may at any time and from time to time, without the consent of the Participants, alter, amend, revise, suspend, or discontinue the Plan in whole or in part; provided, however, that no amendment for which stockholder approval is required either

by any securities exchange or inter-dealer quotation system on which the Common Stock is listed or traded, or other applicable law, shall be effective unless such amendment shall be approved by the requisite vote of the stockholders of the Company entitled to vote thereon. Any such amendment shall, to the extent deemed necessary or advisable by the Committee, be applicable to any outstanding Awards theretofore granted under the Plan, notwithstanding any contrary provisions contained in any Award Agreement. In the event of any such amendment to the Plan, the holder of any Award outstanding under the Plan shall, upon request of the Committee and as a condition to the exercisability thereof, execute a conforming amendment in the form prescribed by the Committee to any Award Agreement relating thereto. Notwithstanding anything contained in this Plan to the contrary, unless required by law, no action contemplated or permitted by this Article 9 shall adversely affect any rights of Participants or obligations of the Company to Participants with respect to any Award theretofore granted under the Plan without the consent of the affected Participant.

## ARTICLE 10
## TERM

The Plan shall be effective from the date that this Plan is approved by the Board. Unless sooner terminated by action of the Board, the Plan will terminate on _____, 2020, but Awards granted before that date will continue to be effective in accordance with their terms and conditions.

## ARTICLE 11
## CAPITAL ADJUSTMENTS

In the event that any dividend or other distribution (whether in the form of cash, Common Stock, other securities, or other property), recapitalization, stock split, reverse stock split, rights offering, reorganization, merger, consolidation, split-up, spin-off, split-off, combination, subdivision, repurchase, or exchange of Common Stock or other securities of the Company, issuance of warrants or other rights to purchase Common Stock or other securities of the Company, or other similar corporate transaction or event affects the fair value of an Award, then the Committee shall adjust any or all of the following so that the fair value of the Award immediately after the transaction or event is equal to the fair value of the Award immediately prior to the transaction or event (i) the number of shares and type of Common Stock (or the securities or property) which thereafter may be made the subject of Awards, (ii) the number of shares and type of Common Stock (or other securities or property) subject to outstanding Awards, (iii) the number of shares and type of Common Stock (or other securities or property) specified as the annual per-participant limitation under Section 5.1 of the Plan, and (iv) the Exercise Price of each outstanding Award; provided however, that the number of shares of Common Stock (or other securities or property) subject to any Award shall always be a whole number. Notwithstanding the foregoing, no such adjustment shall be made or authorized to the extent that such adjustment would cause the Plan or any Warrant to violate Section 409A of the Code. Such adjustments shall be made in accordance with the rules of any securities exchange, stock market, or stock quotation system to which the Company is subject.

Upon the occurrence of any such adjustment, the Company shall provide notice to each affected Participant of its computation of such adjustment which shall be conclusive and shall be binding upon each such Participant.

## ARTICLE 12
## RECAPITALIZATION, MERGER AND CONSOLIDATION

**12.1    No Effect on Company's Authority.**  The existence of this Plan and Awards granted hereunder shall not affect in any way the right or power of the Company or its stockholders to make or authorize any or all adjustments, recapitalizations, reorganizations, or other changes in the Company's capital structure and its business, or any Change in Control, or any merger or consolidation of the Company, or any issuance of bonds, debentures, preferred or preference stocks ranking prior to or otherwise affecting the Common Stock or the rights thereof (or any rights, options, or warrants to purchase same), or the dissolution or liquidation of the Company, or any sale or transfer of all or any part of its assets or business, or any other corporate act or proceeding, whether of a similar character or otherwise.

**12.2    Conversion of Awards Where Company Survives.**  Subject to any required action by the stockholders and except as otherwise provided by Section 12.4 hereof or as may be required to comply with Section 409A of the Code and the regulations or other guidance issued thereunder, if the Company shall be the surviving or resulting corporation in any merger, consolidation or share exchange, any Award granted hereunder shall pertain to and apply to the securities or rights (including cash, property, or assets) to which a holder of the number of shares of Common Stock subject to the Award would have been entitled.

**12.3    Exchange or Cancellation of Awards Where Company Does Not Survive.**  Except as otherwise provided by Section 12.4 hereof or as may be required to comply with Section 409A of the Code and the regulations or other guidance issued thereunder, in the event of any merger, consolidation or share exchange pursuant to which the Company is not the surviving or resulting corporation, there shall be substituted for each share of Common Stock subject to the unexercised portions of outstanding Awards, that number of shares of each class of stock or other securities or that amount of cash, property, or assets of the surviving, resulting or consolidated company which were distributed or distributable to the stockholders of the Company in respect to each share of Common Stock held by them, such outstanding Awards to be thereafter exercisable for such stock, securities, cash, or property in accordance with their terms.

**12.4    Cancellation of Awards.**  Notwithstanding the provisions of Sections 12.2 and 12.3 hereof, and except as may be provided in an Award Agreement or required to comply with Section 409A of the Code and the regulations or other guidance issued thereunder, all Awards granted hereunder may be canceled by the Company, in its sole discretion, as of the effective date of any Change in Control, merger, consolidation or share exchange, or any issuance of bonds, debentures, preferred or preference stocks ranking prior to or otherwise affecting the Common Stock or the rights thereof (or any rights, options, or warrants to purchase same), or of any proposed sale of all or substantially all of the assets of the Company, or of any dissolution or liquidation of the Company, by either:

(a)    giving notice to each holder thereof or his personal representative of its intention to cancel those Awards for which the issuance of shares of Common Stock involved payment by the Participant for such shares, and permitting the purchase during the thirty (30) day period next preceding such effective date of any or all of the shares of Common Stock subject to such outstanding Awards, including in the Board's discretion some or all of the shares as to which such Awards would not otherwise be vested and exercisable; or

(b)    in the case of Awards that are settled only in shares of Common Stock, paying the holder thereof an amount equal to a reasonable estimate of the difference between the net amount per share payable in such transaction or as a result of such transaction, and the Exercise Price per share of such Award to be paid by the Participant (hereinafter the "*Spread*"), multiplied

by the number of shares subject to the Award. In estimating the Spread, appropriate adjustments to give effect to the existence of the Awards shall be made, such as deeming the Awards to have been exercised, with the Company receiving the Exercise Price payable thereunder, and treating the shares receivable upon exercise of the Awards as being outstanding in determining the net amount per share. In cases where the proposed transaction consists of the acquisition of assets of the Company, the net amount per share shall be calculated on the basis of the net amount receivable with respect to shares of Common Stock upon a distribution and liquidation by the Company after giving effect to expenses and charges, including but not limited to taxes, payable by the Company before such liquidation could be completed.

(c) An Award that by its terms would be fully vested or exercisable upon a Change in Control will be considered vested or exercisable for purposes of Section 12.4(a) hereof.

## ARTICLE 13
## LIQUIDATION OR DISSOLUTION

Subject to Section 12.4 hereof, in case the Company shall, at any time while any Award under this Plan shall be in force and remain unexpired, (i) sell all or substantially all of its property, or (ii) dissolve, liquidate, or wind up its affairs, then each Participant shall be entitled to receive, in lieu of each share of Common Stock of the Company which such Participant would have been entitled to receive under the Award, the same kind and amount of any securities or assets as may be issuable, distributable, or payable upon any such sale, dissolution, liquidation, or winding up with respect to each share of Common Stock of the Company. If the Company shall, at any time prior to the expiration of any Award, make any partial distribution of its assets, in the nature of a partial liquidation, whether payable in cash or in kind (but excluding the distribution of a cash dividend payable out of earned surplus and designated as such) and an adjustment is determined by the Committee to be appropriate to prevent the dilution of the benefits or potential benefits intended to be made available under the Plan, then the Committee shall, in such manner as it may deem equitable, make such adjustment in accordance with the provisions of Article 11 hereof.

## ARTICLE 14
## AWARDS IN SUBSTITUTION FOR
## AWARDS GRANTED BY OTHER ENTITIES

Awards may be granted under the Plan from time to time in substitution for similar instruments held by employees of a corporation, partnership, or limited liability company who become or are about to become Employees of the Company or any Subsidiary as a result of a merger or consolidation of the employing corporation with the Company, the acquisition by the Company of equity of the employing entity, or any other similar transaction pursuant to which the Company becomes the successor employer. The terms and conditions of the substitute Awards so granted may vary from the terms and conditions set forth in this Plan to such extent as the Committee at the time of grant may deem appropriate to conform, in whole or in part, to the provisions of the Awards in substitution for which they are granted.

## ARTICLE 15
## MISCELLANEOUS PROVISIONS

**15.1     Investment Intent.** The Company may require that there be presented to and filed with it by any Participant under the Plan, such evidence as it may deem necessary to establish that the Awards

granted or the shares of Common Stock to be purchased or transferred are being acquired for investment and not with a view to their distribution.

**15.2    No Right to Continued Employment.**  Neither the Plan nor any Award granted under the Plan shall confer upon any Participant any right with respect to continuance of employment by the Company or any Subsidiary.

**15.3    Indemnification of Board and Committee.**  No member of the Board or the Committee, nor any officer or Employee of the Company acting on behalf of the Board or the Committee, shall be personally liable for any action, determination, or interpretation taken or made in good faith with respect to the Plan, and all members of the Board and the Committee, each officer of the Company, and each Employee of the Company acting on behalf of the Board or the Committee shall, to the extent permitted by law, be fully indemnified and protected by the Company in respect of any such action, determination, or interpretation.

**15.4    Effect of the Plan.**  Neither the adoption of this Plan nor any action of the Board or the Committee shall be deemed to give any person any right to be granted an Award or any other rights except as may be evidenced by an Award Agreement, or any amendment thereto, duly authorized by the Committee and executed on behalf of the Company, and then only to the extent and upon the terms and conditions expressly set forth therein.

**15.5    Compliance With Other Laws and Regulations.**  Notwithstanding anything contained herein to the contrary, the Company shall not be required to sell or issue shares of Common Stock under any Award if the issuance thereof would constitute a violation by the Participant or the Company of any provisions of any law or regulation of any governmental authority or any national securities exchange or inter-dealer quotation system or other forum in which shares of Common Stock are quoted or traded; and, as a condition of any sale or issuance of shares of Common Stock under an Award, the Committee may require such agreements or undertakings, if any, as the Committee may deem necessary or advisable to assure compliance with any such law or regulation.  The Plan, the grant and exercise of Awards hereunder, and the obligation of the Company to sell and deliver shares of Common Stock, shall be subject to all applicable federal and state laws, rules and regulations and to such approvals by any government or regulatory agency as may be required.  In the event a delay of exercise or issuance occurs pursuant to this Section 15.5, the Company shall take commercially reasonable actions to assure compliance with any laws or regulations that prevent the sale or issuance of shares of Common Stock under an Award, and as of the date such compliance is obtained, the Company shall sell or issue any shares of Common Stock for which the sale or issuance was delayed due to such noncompliance.

**15.6    Tax Requirements.**  The Company or, if applicable, any Subsidiary (for purposes of this Section 15.6, the term "*Company*" shall be deemed to include any applicable Subsidiary), shall have the right to deduct from all amounts paid in cash or other form in connection with the Plan, any Federal, state, local, or other taxes required by law to be withheld in connection with an Award granted under this Plan. The Company may, in its sole discretion, also require the Participant receivingshares of Common Stock issued under the Plan to pay the Company the amount of any taxes that the Company is required to withhold in connection with the Participant's income arising with respect to the Award.  Such payments shall be required to be made when requested by Company and may be required to be made prior to the delivery of any certificate representing shares of Common Stock.  Such payment may be made (i) by the delivery of cash to the Company in an amount that equals or exceeds (to avoid the issuance of fractional shares under (iii) below) the required tax withholding obligations of the Company; (ii) if the Company, in its sole discretion, so consents in writing, the actual delivery by the exercising Participant to the Company of shares of Common Stock that the Participant has not acquired from the Company within six (6) months prior to the date of exercise, which shares so delivered have an aggregate Fair Market Value that equals or

exceeds (to avoid the issuance of fractional shares under (iii) below) the required tax withholding payment; (iii) if the Company, in its sole discretion, so consents in writing, the Company's withholding of a number of shares to be delivered upon the exercise of the Warrant, which shares so withheld have an aggregate fair market value that equals (but does not exceed) the required tax withholding payment; or (iv) any combination of (i), (ii), or (iii). The Company may, in its sole discretion, withhold any such taxes from any other cash remuneration otherwise paid by the Company to the Participant. The Committee may in the Award Agreement impose any additional tax requirements or provisions that the Committee deems necessary or desirable.

     **15.7**    **Assignability**. Except as otherwise provided herein, Warrants may not be transferred, assigned, pledged, hypothecated or otherwise conveyed or encumbered other than by will or the laws of descent and distribution. The Committee may, in its discretion, authorize all or a portion of a Warrant to be granted to a Participant on terms which permit transfer by such Participant to (i) the spouse (or former spouse), children or grandchildren of the Participant ("*Immediate Family Members*"), (ii) a trust or trusts for the exclusive benefit of such Immediate Family Members, (iii) a partnership in which the only partners are (1) such Immediate Family Members and/or (2) entities which are controlled by Immediate Family Members, (iv) an entity exempt from federal income tax pursuant to Section 501(c)(3) of the Code or any successor provision, or (v) a split interest trust or pooled income fund described in Section 2522(c)(2) of the Code or any successor provision, provided that (x) there shall be no consideration for any such transfer, (y) the Award Agreement pursuant to which such Warrant is granted must be approved by the Committee and must expressly provide for transferability in a manner consistent with this Section, and (z) subsequent transfers of transferred Warrants shall be prohibited except those by will or the laws of descent and distribution.

     Following any transfer, any such Warrant shall continue to be subject to the same terms and conditions as were applicable immediately prior to transfer, provided that for purposes of Articles 8, 9, 11, 13 and 15 hereof the term "*Participant*" shall be deemed to include the transferee. The events of Termination of Service shall continue to be applied with respect to the original Participant, following which the Warrants shall be exercisable or convertible by the transferee only to the extent and for the periods specified in the Award Agreement. The Committee and the Company shall have no obligation to inform any transferee of a Warrant of any expiration, termination, lapse or acceleration of such Warrant. The Company shall have no obligation to register with any federal or state securities commission or agency any Common Stock issuable or issued under a Warrant that has been transferred by a Participant under this Section 15.7.

     **15.8**    **Use of Proceeds.** Proceeds from the sale of shares of Common Stock pursuant to Awards granted under this Plan shall constitute general funds of the Company.

***************

IN WITNESS WHEREOF, the Company has caused this instrument to be executed as of _____, 2010, by its _____ pursuant to prior action taken by the Board.

**LMH I, INC.**

By: _____

Name: _____

Title: _____

Attest:

_____