# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LATHAM INTERNATIONAL, INC., et al.,[1] | ) | Case No. 09-14490 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket Nos. 16 & 18** |
| | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING THE DEBTORS' (A) DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(B) OF THE BANKRUPTCY CODE, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES AND (C) FORMS OF BALLOTS AND (II) CONFIRMING THE DEBTORS' PREPACKAGED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (WITH TECHNICAL AMENDMENTS)

The above-captioned debtors and debtors in possession (collectively, the "Debtors'"") having:[2]

a.　commenced the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") on December 22, 2009 (the "Petition Date");

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification numbers and their respective addresses, are: Latham International, Inc (9049), 787 Watervliet Shaker Road, Latham, NY 12110; Latham Manufacturing Corp. (9130), 787 Watervliet Shaker Road, Latham, NY 12110; Viking Pools, LLC (2924), 1473 Industrial Park Road, Jane Lew, WV 26378; Coverstar, LLC (1935), 1795 West 200 North, Lindon, UT 84046; and Kafko (U.S.) Corp. (0638), 787 Watervliet Shaker Road, Latham, NY 12110.

[2] Unless otherwise noted, capitalized terms not defined herein shall have the meanings. ascribed in the Plan (as defined herein) and the "Rules of Interpretation" (set forth in Article II.D of the Plan), to the extent applicable, shall apply to the Confirmation Order (as defined herein).

b.  continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed, on December 22, 2009, their (i) *Disclosure Statement for Solicitation of Acceptances of Prepackaged Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 18] (the "Disclosure Statement"), (ii) *Prepackaged Joint Plan of Reorganization of Latham International Inc., et al. Under Chapter 11 of the Bankruptcy Code* [Docket No. 16] (the "Prepackaged Plan"), and filed on January 11, 2010 (iii) the *Plan Supplement with Respect to Prepackaged Joint Plan of Reorganization of Latham International Inc., et al. Under to Chapter 11 of the Bankruptcy Code* [Docket No. 88] (the "Plan Supplement"), and filed on January 19, 2010, [(iv) the *Amended Plan Supplement for Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ___] (the "Second Plan Supplement," and together with the Plan Supplement and the Prepackaged Plan, the "Plan");

d.  distributed the Disclosure Statement and appropriate Ballots for voting in the Plan to Holders of Class 3 (Prepetition Financing Claims) (the "Prepetition Financing Claim Holders"), the only creditors entitled to vote on the Plan, on December 18, 2009, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and set the Voting Deadline as December 21, 2009 at 5:00 p.m. (prevailing Eastern Time), as evidenced by the *Affidavit of Service and Vote Certification with Respect to the Tabulation of Ballots on Debtors' Prepackaged Joint Plan of*

*Reorganization of Latham International, Inc., et al. Under to Chapter 11 of the Bankruptcy Code* [Docket No. 21] (the "Voting Certification");

e.      filed, on December 22, 2009, the *Debtors' Motion for Entry of Order (A) Scheduling an Objection Deadline and Combined Hearing on Their Disclosure Statement and Plan Confirmation (B) Approving Form and Notice of Confirmation Hearing, (C) Establishing Procedures for Objections to Their Plan and Disclosure Statement, (D) Approving Solicitation Procedures and (E) Granting Related Relief* [Docket No. 19] (the "Scheduling Motion");

f.      filed, on December 23, 2009 the *Summary of Plan of Reorganization and Notice of Combined Hearing on (A) Disclosure Statement and (B) Confirmation of Plan of Reorganization and Related Matters* [Docket No. 57], which contained notice of the commencement of the Chapter 11 Cases, the date and time set for the hearing to consider approval of the Disclosure Statement and confirmation of the Plan, the deadline for filing objections to the Plan and Disclosure Statement, and a summary of the Plan (the "Confirmation Hearing Notice");

g.      served, pursuant to the *Order (A) Scheduling an Objection and Combined Hearing on the Debtors' Disclosure Statement and Plan Confirmation, (B) Approving Form and Notice of Confirmation Hearing, (C) Establishing Procedures for Objections to Plan and Disclosure Statement, (D) Approving Solicitation Procedures and (E) Granting Related Relief* [Docket No. 49] (the "Scheduling Order"), the Confirmation Hearing Notice in accordance with the terms of the Scheduling Order as evidenced by (i) the *Affidavit of Service of Timothy P. Cairns* [Docket No. 57], and (ii) the *Affidavit of Service of Eleni Manners re: Summary of Plan*

*of Reorganization and Notice of Combined Hearing on (A) Disclosure Statement and (B) Confirmation of Plan of Reorganization and Related Matters to be Held on January 21, 2010 at 3:00 p.m. (Prevailing Eastern Time)* [Docket No. 68] and (items (i) and (ii) of this paragraph together, the "Confirmation Hearing Notice Affidavits");

        h.      published, on January 5, 2010 in *The Wall Street Journal (National Edition)* and on January 5, 2010 in the *USA Today,* pursuant to the Scheduling Order, the Confirmation Hearing Notice, as evidenced by the *Affidavit of Publication* of Erin Ornstein in *USA Today* [Docket No. 90] and the *Verification of Publication* of Antoinette Chase in *The Wall Street Journal* [Docket No. 91] (together, the "Publication Affidavits," and together with the Confirmation Hearing Affidavits, the "Notice Affidavits");

        i.      filed, on January 6, 2010, their *Notice of Counterparties to Executory Contracts and Unexpired Leases That May Be Assumed and Assigned* [Docket No. 79] and related *Certificate of Service of Michael R. Seidl* [Docket No. 79];

        j.      filed, on or about January 19, 2010, *Declaration and Statement of Mark Laven in Support of Prepackaged Joint Plan of Reorganization of Latham International, Inc., et al. Under Chapter 11 of the Bankruptcy Code* [Docket No. ___] (the "Confirmation Declaration");

        k.      filed, on January 19, 2010, the *Debtors' Memorandum of Law (I) in Support of Entry of Order (A) Approving (1) the Debtors' Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code, (2) Solicitation of Votes and Voting Procedures and (3) Forms of Ballots and (B) Confirming the Debtors' Joint Prepackaged Plan*

*of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (with Technical Amendments) and (II) in Response to Objections Thereto* [Docket No. ___] (the "Confirmation Brief");

1.      filed, on January 19, 2010, these *Findings of Fact, Conclusions of Law and Order (I) Approving the Debtors' (A) Disclosure Statement Pursuant to Section 1125 and 1126(b) of the Bankruptcy Code, (B) Solicitation of Votes and Procedures and (C) Forms of Ballots and (II) Confirming the Debtors Joint Prepackaged Plan of Reorganization Under to Chapter 11 of the Bankruptcy Code* (with Technical Amendments) (together with all the exhibits hereto, the "Confirmation Order").

The Court having:

a.      entered, on December 22, 2009, the Scheduling Order;

b.      set January 21, 2010, at 3:00 p.m., prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing (as defined herein) pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Scheduling Order;

c.      reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Confirmation Declaration, the Voting Certification, the Notice Affidavits and all other filed pleadings, exhibits, statements, and comments regarding Confirmation, including any objections, statements and reservations of rights;

d.      held a hearing to consider the adequacy of the Disclosure Statement and the Confirmation of the Plan on January 21, 2010 (the "Confirmation Hearing") after due and sufficient notice of the Confirmation Hearing was given to appropriate parties-in-interest,

including Holders of Claims against, and Interests in, the Debtors and other parties in interest in accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, all as established and confirmed by the Notice Affidavits;

e.       at the Confirmation Hearing heard the statements, arguments and objections made by parties-in-interest and/or their counsel in respect of Confirmation;

f.       considered all oral representations and arguments, testimony, documents, filings and other evidence regarding Confirmation;

g.       overruled any and all objections (to the extent not withdrawn) to the Plan, the Disclosure Statement and Confirmation Order and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

h.       taken judicial notice of all pleadings, orders and other documents filed, as wells as all evidence and arguments presented in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for all parties-in-interest affected or to be affected by the Plan and the transactions contemplated thereby to object to Confirmation have been adequate and appropriate as to all parties, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

A.    **Findings and Conclusions.**  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusion of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).**  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Approval of the Solicitation and Solicitation Procedures (as each such term is defined herein), the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and the Court has jurisdiction to enter a final order with respect thereto.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  Venue is proper in this District and before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.    **Chapter 11 Petitions.**  On the Petition Date, each Debtor commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code.  No

statutory committee of unsecured creditors or equity security holders has been appointed pursuant to section 1102 of the Bankruptcy Code. The Court has ordered the procedural consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

      **D.**    **Judicial Notice, Objections.** The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases. Any resolutions of objections to Confirmation explained on the record and approved at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements and reservations of rights are overruled on the merits.

      **E.**    **Burden of Proof.** The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. Each Debtor has met such burden.

      **F.**    **Adequacy of Disclosure Statement.** The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy law, rules and regulations, including the Securities Act of 1933, as (the "Securities Act"), (b) contains "adequate information" (as such term is defined in section 1125(a) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, and the transactions contemplated therein and (c) is approved in all respects.

**G.**    **Voting.**  As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited properly and tabulated fairly, in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule and regulation.

**H.**    **Solicitation.**  Prior to the Petition Date, the Plan, the Disclosure Statement and the Ballots, and, subsequent to the Petition Date, the Confirmation Hearing Notice, were transmitted and served in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules and the Scheduling Order. The forms of the Ballots adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for the Prepetition Financing Claim Holders the only Class of Claims entitled to vote to accept or reject the Plan.

As set forth more fully in the Voting Certification, the period during which the Debtors solicited acceptances to the Plan was a reasonable under the circumstances for the Prepetition Financing Claim Holders, the only creditors entitled to vote to on the Plan, to make an informed decision to accept or reject the Plan. In particular, and without limitation, (a) the Plan, Disclosure Statement and the Ballots were transmitted to all Prepetition Financing Claim Holders, (b) sufficient and reasonable time and notice were prescribed for the Prepetition Financing Claim Holders to accept or reject the Plan, (c) the Ballots submitted by the Prepetition Financing Claim Holders were submitted by the Holders of record of the Prepetition Financing Claim Holders as of December 15, 2009 (the date specified in such documents for the purpose of the solicitation) (the "Record Date") and (d) the establishment and notice of the Record Date was

appropriate and reasonable. Pursuant to section 1126(f) of the Bankruptcy Code, the Debtors

were not require to solicit votes from the Holders of Claims or Interests in the Classes listed in

the chart below as each such Class is Unimpaired under the Plan and conclusively presumed to

have accepted the Plan.

| CLASS | DESIGNATION |
|---|---|
| Class 1 | Priority Non-Tax Claims |
| Class 2 | Other Secured Claims |
| Class 6 | General Unsecured Claims |
| Class 8 | Reorganized Debtor Intercompany Claims |

The Debtors also were not required to solicit votes from the Holders of Claims or Interest in each

Class listed in the chart below, as each such Class is not entitled to receive any recovery from the

Debtors under the Plan, is impaired and, therefore, is deemed to reject the Plan pursuant to

section 1126(g) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|---|---|
| Class 4 | Subordinated Note Claims |
| Class 5 | Seller Note Claims |
| Class 7 | Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp. |
| Class 9 | Intercompany Claims |

As described in and as evidenced by the Voting Certification and the Notice

Affidavits, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, the

Confirmation Hearing Notice and publication of such Confirmation Hearing Notice (all of the

foregoing, the "Solicitation") was timely, adequate and sufficient under the circumstances. The

Solicitation of votes on the Plan complied with the solicitation procedures set forth in the

Scheduling Motion and approved in the Scheduling Order (the "Solicitation Procedures"), was

appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in

10

compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable rules, laws, and regulations. The Debtors, the Reorganized Debtors, the Prepetition Agent, the Prepetition Lenders, the Steering Group and any and all of their respective affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys and advisors of each of the foregoing that may have solicited votes on the Plan or participated in the formulation of the Plan, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and, therefore, are all entitled to the protections of section 1125(e) of the Bankruptcy Code.

     **I.**    **Notice.** As is evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement and Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule or regulation and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

     **J.**    **Plan Supplement.** The Debtors' Plan Supplement and Second Plan Supplement include the following documents: (a) Pledge Agreement; (b) Patent Security Agreement; (c) Trademark Security Agreement; (d) Copyright Security Agreement; (e) Hazardous Materials Indemnity Agreement; (f) Canadian Intellectual Property Security

Agreement; (g) roster of New Latham Group's and Reorganized Debtors' Board of Directors; (h) Loan and Security Agreement between Latham Corporation, Coverstar, LLC and Viking Pools, LLC, as U.S. Borrowers, Latham Splash Canada Inc., as Canadian borrower, LMH II, as guarantor, and Bank of America, as lender; (i) Master Note Agreement between LMH I, Inc., LMH II, Inc. and the holders' representative; (j) Form of $20 million Note; (k) Security Agreement between LMH I, Inc. and the holders' representative; (l) LMH I, Inc. Certificate of Incorporation; (m) LMH I, Inc. Bylaws; (n) LMH II, Inc. Certificate of Incorporation; (o) LMH II, Bylaws; (p) Latham Corporation Certificate of Incorporation; (q) Latham Corporation Bylaws; (r) Subscription Agreement between LMH I, Inc. and LMH II, Inc.; (s) Contribution Agreement between LMH II, Inc. and Latham Corporation; (t) Exchange Agreement between Kafko (U.S.) Corp., Latham International, Inc. and Latham Manufacturing Corp., on the one hand, and the Senior Lenders on the other hand; (u) Asset Purchase Agreement between Latham Corporation, as purchaser, and Kafko (U.S.) Corp., Latham International, Inc. and Latham Manufacturing Corp., as sellers; (v) LMH I, Inc. Stockholders' Agreement; (w) Management Services Agreement between LMH I, Inc. and Littlejohn & Co., Inc.; (x) Warrant Plan ; (y) Form of Warrant; and (z) Restricted Stock Agreement. The Second Plan Supplement includes the Agreement and Transfer of Benefit Plans and Policies. All such materials comply with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and no other or further notice is or shall be required.

**K.** **Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).** The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponent, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**L.** **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** In addition to Administrative Claims (Article III.B of the Plan) and Priority Tax Claims (Article III.D of the Plan), which need not be classified, Article IV of the Plan classifies nine Classes of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan and such Classes do not unfairly discriminate among Holders of Claims and Interests. The Plan therefore satisfies Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**M.** **Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Article IV of the Plan specifies that Claims or Interests listed in the chart below are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|---|---|
| Class 1 | Priority Non-Tax Claims |
| Class 2 | Other Secured Claims |
| Class 6 | General Unsecured Claims |
| Class 8 | Reorganized Debtor Intercompany Claims |

**N.** **Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Article V of the Plan designates the Classes of Claims and Interests listed in the chart below as impaired

and specifies the treatment of the Claims and Interests in those Classes within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|---|---|
| Class 3 | Prepetition Financing Claims |
| Class 4 | Subordinated Note Claims |
| Class 5 | Seller Note Claims |
| Class 7 | Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp. |
| Class 9 | Intercompany Claims |

O. **Same Treatment of Claims in a Particular Class (11 U.S.C. § 1123(a)(4)).** The Plan provides for the same treatment of each Claim or Interest in a particular class, as the case may be, unless the Holder thereof has agreed to a less favorable treatment with respect to such Claim or Interest. As a result thereof, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

P. **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).** The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including: (a) the substantive consolidation of the Debtors under the Plan for voting and distribution purposes only; (b) the continued corporate existence of the Reorganized Debtors, except to the extent amended by the Plan; (c) the formation of New Holdco, New Midco and New Opco; (d) the issuance of 100% of the stock in New Holdco, and the issuance of the New Note and contribution of the New Equity and New Note to New Midco in exchange for 100% of the stock of New Midco; (e) the contribution by New Midco of the New Equity

and New Note to New Opco in exchange for 100% of the stock of New Opco, (f) the purchase

by New Opco of all of the assets of Debtors Latham International, Inc., Latham Manufacturing

Corp., and Kafko (U.S.) Corp., including the equity interests in Viking Pools, LLC and

Coverstar, LLC and Latham Splash Canada, Inc., but specifically excluding the stock of

Latham International, Inc., Latham Manufacturing Corp. and Kafko (U.S.) Corp., in exchange

for the New Equity and New Note; (g) generally allowing for all corporate action necessary to

effectuate the Plan, including the assumption of executory contracts, appointment of the

directors and officers of the New Latham Group[3] and the Reorganized Debtors, execution and

entry into the documents in substantially the form included in the Plan Supplement, execution

and entry including, without limitation, entry into the ABL Facility and the New Note; (h) the

adoption and filing of the amended and restated certificates of incorporation and by-laws of the

Reorganized Debtors and the New Latham Group; (i) the cancellation of Liens securing any

Secured Claim (except Liens securing Secured Claims that are reinstated pursuant to the Plan);

(j) the identification of sources of consideration from which the Debtors will make

distributions under the Plan; and (k) the sale of the assets of Latham International, Inc.; Latham

Manufacturing Corp.; and Kafkco (U.S.) Corp. to Latham Corporation pursuant to the terms of

that certain *Asset Purchase Agreement* substantially in the form as filed as Exhibit 20 to the

Plan Supplement (the "APA"). The entities constituting the New Latham Group have all been

formed in connection with and to implement the Plan, and each are necessary to and required

---

[3] As set forth in the Plan, the term "New Latham Group" means New Holdco (also referred to as LMH 1, Inc. in the Plan Supplement), New Midco (also referred to as LMH II, Inc. in the Plan Supplement), and New Opco (also referred to as Latham Corporation in the Plan Supplement). Unless otherwise noted, reference to the "New Latham Group" in this Confirmation Order collectively refers to LMH I, Inc., LMH II, Inc. and Latham Corporation.

15

under the Plan and the confirmation thereof. The steps taken with respect to New Holdco, New Midco and New Opco, as described herein, are each necessary and required steps in connection with and to accomplish confirmation of the Plan.

Q. **Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).** The certificates of incorporation for New Latham Group, filed as part of the Plan Supplement, and the certificates of incorporation for the Reorganized Debtors, as the same shall be amended prior to the Effective Date, prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

R. **Designation of Directors (11 U.S.C. § 1123(a)(7)).** The Plan Supplement and Article VII.I of the Plan contain provisions with respect to the manner of selection of directors of New Latham Group and the Reorganized Debtors that are consistent with the interests of creditors, equity security holders and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

S. **Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)).** Pursuant to Article IV of the Plan the Classes of Claims and Interests listed in the chart below are impaired, as permitted by section 1123(b)(l) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|-------|-------------|
| Class 3 | Prepetition Financing Claims |
| Class 4 | Subordinated Note Claims |
| Class 5 | Seller Note Claims |
| Class 7 | Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp. |
| Class 9 | Intercompany Claims |

Pursuant to Article IV of the Plan the Classes of Claims and Interests listed in the chart are

unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|---|---|
| Class 1 | Priority Non-Tax Claims |
| Class 2 | Other Secured Claims |
| Class 6 | General Unsecured Claims |
| Class 8 | Reorganized Debtor Intercompany Claims |

**T.**     **Assumption and Rejection (11 U.S.C. § 1123(b)(2)).** Article X of the Plan,

governing the assumption and rejection of executory contracts and unexpired leases provides

that all executory contracts and unexpired leases not previously assumed or reject by the

Debtors, or subject to a pending motion to assume or reject, shall be assumed or assumed and

assigned to the Reorganized Debtors or New OpCo, as the case may be, in accordance with

section 365 of the Bankruptcy Code, thereby satisfying section 1123(b)(2) of the Bankruptcy

Code.

The Debtors have exercised reasonable business judgment in determining whether to

assume, assume and assign, or reject each of their executory contracts and unexpired leases, and

each such assumption, assumption and assignment or rejection shall be legal, valid and binding

upon the parties thereto.

The Debtors have provided adequate assurance of future performance for each of

executory contracts and unexpired leases being assumed or assumed and assigned pursuant to the

Plan. The Debtors have cured or provided adequate assurance that the Debtors or Reorganized

Debtors will promptly cure all defaults arising under or relating to each such assumed or

assumed and assigned executory contract and unexpired lease of the type required to be cured

under section 365 of the Bankruptcy Code. There have been no objections to the Debtors'

assumption and assumption and assignment of executory contracts pursuant to Article X of the Plan.

**U.  Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).** The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**V.  The Debtors' Compliance with the Bankruptcy Code (11 § 1129(a)(2)).** The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

1. each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

2. the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

3. the Debtors have complied with the applicable provisions f the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable non-bankruptcy law, rule and regulation, the Scheduling Order and all other applicable law, in transmitting the Plan, the Plan Supplement, the Disclosure Statement, the Disclosure Statement, Ballots and related documents and notices and in soliciting and tabulating the votes on the Plan.

**W.  Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).** The Debtors have proposed the Plan (including all documents necessary to effectuate the Plan) and the transactions contemplated in the Plan in good faith and not by any means forbidden by law,

thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement and the record of the Confirmation Hearing and other hearings held in the Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors. The Plan (including all documents necessary to effectuate the Plan) was negotiated at arm's-length among representatives of the Debtors, the Steering Group, the ABL Lenders, and their respective professionals. Further, the Plan's classification, indemnification, exculpation, release and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129 and 1142 of the Bankruptcy Code, are fair and reasonable and an essential part of the Plan, and are each necessary for the Debtors' successful reorganization.

**X. Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).** Any payment made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan for services or for costs and expenses of the Debtors' professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**Y. Directors (11 U.S.C. § 1129(a)(5)).** The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial directors of the Reorganized Debtors after confirmation of the Plan (and the

New Latham Group following the Effective Date) have been fully disclosed to the extent

available, and the appointment to, or continuance in, such offices of such persons is consistent

with the interests of Holders of Claims and Interests and with public policy. As set forth in

Exhibit 26 to the Plan Supplement, on the Effective Date, the initial board of directors of the

Reorganized Debtors and the New Latham Group shall consist of the individuals identified in

the Plan Supplement, plus the Debtors' director designees. Each such individual and each

member will serve in accordance with the terms and subject to the conditions of the certificates

of incorporation and by-laws (or as set forth in the descriptions thereof) filed in the Plan

Supplement and any other relevant organizational documents, each as applicable.

**Z.      No Rate Changes (11 U.S.C. § 1129(a)(6)).** The Plan does not provide for rate

changes by any of the Reorganized Debtors or the New Latham Group that may be subject to

the jurisdiction of any governmental regulatory commission or authority. Thus, section

1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases.

**AA.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).** The Plan satisfies

section 1129(a)(7) of the Bankruptcy Code. The evidence, including the liquidation analysis

provided in the Disclosure Statement, and otherwise submitted, proffered or adduced before or

at the Confirmation Hearing (a) is reasonable, persuasive and credible, (b) has not been

controverted by other evidence and (c) establishes that each Holder of an Impaired Claim or

Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim

or Interest, property of a value, as of the Effective Date, that is not less than the amount that

such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

    **BB.**    **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** The Classes of Claims and Interests listed in the chart below are Classes of Unimpaired Claims or Interest that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|---|---|
| Class 1 | Priority Non-Tax Claims |
| Class 2 | Other Secured Claims |
| Class 6 | General Unsecured Claims |
| Class 8 | Reorganized Debtor Intercompany Claims |

    The Class of Claims listed in the chart below has voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, and such Class does not include insiders of the Debtors (as that term is defined in section 101(31) of the Bankruptcy Code).

| CLASS | DESIGNATION |
|---|---|
| Class 3 | Prepetition Financing Claims |

    The Classes of Claims and Interests listed in the chart below are impaired by the Plan and are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|---|---|
| Class 4 | Subordinated Note Claims |
| Class 5 | Seller Note Claims |
| Class 7 | Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp. |
| Class 9 | Intercompany Claims |

While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**CC.** **Treatment of Administrative Claims, Priority Tax Claims, and Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Claims pursuant to Article III.B of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Article III.D of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

**DD.** Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). As evidenced by the Voting Certification, the Class of Claims listed in the chart below voted to accept the Plan by the requisite numbers and amounts, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

| CLASS | DESIGNATION |
|---|---|
| Class 3 | Prepetition Financing Claims |

**EE.** **Feasibility (11 U.S.C. § 1129(a)(11)).** The information in the Disclosure Statement, the Confirmation Declaration and the evidence proffered or adduced at the Confirmation Hearing (a) is reasonable, persuasive and credible, (b) has not been controverted by other evidence and (c) establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their business in the ordinary course and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the

Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

**FF.** **Payment of Fees (11 U.S.C. § 1129(a)(12)).** As set forth in Article VII.T of the Plan, all fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

**GG.** **Continuation of Employee and Retiree Benefits (11 U.S.C. § 1129(a (13)).** Article XII of the Plan provides that the employee compensation and benefit plan of the Debtors, subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be assumed and assigned to New Opco, as provided by the Second Plan Supplement. Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**HH.** **No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).** The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**II.** **Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).** The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**JJ.** **No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).** The Debtors are each a moneyed, business or commercial corporation, and

accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**KK.** **No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).** The Classes of Claims and Interests listed in the chart below have voted to reject, or are deemed to have rejected, the Plan.

| CLASS | DESIGNATION |
|---|---|
| Class 4 | Subordinated Note Claims |
| Class 5 | Seller Note Claims |
| Class 7 | Existing Equity Interests in Latham International, Inc.; Latham Manufacturing Corp.; and Kafko (U.S.) Corp. |
| Class 9 | Intercompany Claims |

Based upon the evidence proffered, adduced and presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair with respect to the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code; has been proposed in good faith, is reasonable and meets the requirement that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim in a Class senior to such Classes is receiving any property in excess of the amount of its Claim. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

**LL.** **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only plan filed in each of the Chapter 11 cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

**MM.** **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the

Securities Act. Accordingly, the Plan satisfies the requirements of section 1129(d) the Bankruptcy Code.

NN.    **Exemption from Securities Laws (11 U.S.C. § 1145).** Pursuant to the Plan, any securities issued and any subsequent sales, resales, transfers, or other distributions of any such securities shall be exempt from any federal or state securities laws registration requirements, including section 5 of the Securities Act, to the fullest extent permitted by section 1145 of the Bankruptcy Code. The Plan provides that issued securities will be freely tradable by the recipients thereof, subject to (a) the provisions of section 1145(b)(l) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and in compliance with any rules and regulations of the securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments and (b) the restrictions, if any, on the transferability of such security and instruments in the organizational documents set forth in the Plan Supplement or other constituent documents.

OO.    **Exemption from Transfer Taxes (11 U.S.C. § 1146(a).** All transactions contemplated by the Plan, including the ABL Facility, the New Note, the APA and related and ancillary documents, and the purchase and sale transactions under the Plan are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment

**PP.     Modifications to the Plan**.  The modifications to the Plan made in the Second

Plan Supplement constitute technical changes or do not materially adversely affect or change

the treatment of any Claims or Interests of any Holder and are in compliance with section 1127

of the Bankruptcy Code.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications

do not require additional disclosure under section 1125 of the Bankruptcy Code or re-

solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that

Holders of Claims or Interests be afforded an opportunity to change previously cast

acceptances or rejections of the Plan.

**QQ.     Satisfaction of Confirmation Requirements.**  Based upon the foregoing, the

Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy

Code.

**RR.     Implementation.**  All documents necessary to implement the Plan, including

those contained in the Plan Supplement, and Second Plan Supplement and all other relevant

and necessary documents have been negotiated in good faith and at arm's-length and shall,

upon completion of documentation and execution, be valid, binding and enforceable

agreements and shall not be in conflict with any federal or state law.

**SS.     Injunction, Exculpation and Releases.**  The Court has jurisdiction under

sections 1334(a) and (b) of title 28 of the United States Code to approve the exculpation,

releases and injunction set forth in Articles XI.C D E and F of the Plan.  Section 105(a) of the

Bankruptcy Code permits issuance of the injunction and approval of the exculpation and

unopposed releases set forth in Articles XI.C D E and F of the Plan, when, as has been

established here based upon the record in the Chapter 11 Cases and the evidence presented at

the Confirmation Hearing, such provisions (a) were integral to the agreement among various

parties in interest and are essential to the formulation and implementation of the Plan, as

provided in section 1123 of the Bankruptcy Code, (b) confer substantial benefits on the

Debtors' Estates, (c) are fair and reasonable and (d) are in the best interests of the Debtors,

their Estates and other parties-in-interest. Further, the exculpation provision in Article XI.D of

the Plan does not relieve any party of liability for an act or omission to the extent such act or

omission is determined by a Final Order to have constituted gross negligence or willful

misconduct. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule

9019(a), the releases, exculpation and injunction set forth in the Plan and implemented by the

Confirmation Order are supported by adequate consideration and are equitable, reasonable and

in the best interests of the Debtors, the Reorganized Debtors, and Estates, creditors and equity

holders. The releases of non-Debtors in Article XI of the Plan are fair to Holders of Claims

because (1) they are voluntary, (2) only apply to creditors in Class 3 (Prepetition Financing

Claims) who both voted to accept the Plan and who did not "opt out" of granting such releases

by checking the applicable "opt out" box in their respective Ballots. Such releases are given in

exchange for and are supported by fair, sufficient and adequate consideration provided by each

and all of the Debtor Releasees and the Third Party Releasees. The record of the Confirmation

Hearing and the Chapter 11 Cases is sufficient to support the releases, exculpation and

injunction provided for in Articles XI.C D E and F of the Plan. Accordingly, based upon the

record of the Chapter 11 Cases, the representations and/or the evidence proffered, adduced

and/or presented at the Confirmation Hearing, the Court find that the exculpation, releases and injunction set forth in Article XI of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, exculpation, and releases would seriously impair the Debtors' ability to confirm the Plan.

**TT.    Settlement.** Except as otherwise provided in the Plan and the Confirmation Order, the Plan is a settlement between and among the Debtors and their creditors and equity holders of all claims and litigation against the Debtors, pending or threatened, or that as or could have been commenced against the Debtors prior to the date of entry of the Confirmation Order (other than the Reorganized Debtors' and New Opco's ability to prosecute objections to Claims and other retained causes of action to the extent preserved under the Plan, including but not limited to the provisions of Articles VII.Q and Article IX of the Plan).

**UU.    Good Faith.** The Debtors and the Reorganized Debtors, parties granting the releases pursuant to Article XI.E of the Plan (the "Debtor Releasors") and the parties granting the leases pursuant to Article XI.F of the Plan (the "Third Party Releasors"), and the ABL Lender (defined below), will be acting in good faith if they proceed to (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby and (b) take the actions authorized and directed by the Confirmation Order.

**VV.    Exit Financing.**

1.    *ABL Facility.* The ABL Facility to be provided by Bank of America, N.A. (the "ABL Lender"), pursuant to the documents listed substantially in the form as items 1 through 10 of the Plan Supplement (collectively, the "ABL Loan Documents"), is an essential

element of the Plan and the entry into and consummation of the transactions contemplated by the

ABL Facility is in the best interests of the Debtors, the Reorganized Debtors, the Estates and the

holders of all Claims and Interests. The terms of the ABL Facility described in the Plan have

been negotiated in good faith and on an arm's-length basis, without the intent to hinder, delay or

defraud any of the Debtors' creditors and each party thereto may rely upon the provisions of the

Confirmation Order in implementing the terms of the ABL Facility. The availability of up to

$30 million under the ABL Facility is necessary to the consummation of the Plan and the

operation of the Reorganized Debtors post-confirmation. The terms and conditions of the ABL

Facility described in the ABL Loan Documents are fair and reasonable, reflect the Debtors'

exercise of prudent business judgment consistent with their fiduciary duties, are supported by

reasonably equivalent value and fair consideration and are in the best interests of the Debtors'

Estates and their creditors. The execution, delivery, or performance by the Debtors, Reorganized

Debtors or New Latham Group, as the case may be, of or in accordance with any documents

entered into in connection with the ABL Facility, in accordance with the ABL Loan Documents,

and compliance by the Debtors or Reorganized Debtors, as the case may be, with the terms

thereof are authorized by, and will not conflict with, the terms of the Plan or the Confirmation

Order. The financial accommodations to be extended pursuant to the ABL Facility and pursuant

to any ABL Loan Documents are being extended in good faith, for legitimate business purposes,

are reasonable, shall not be subject to recharacterization for any purposes whatsoever and shall

not constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the

Bankruptcy Code or any other applicable non-bankruptcy law. The ABL Loan Documents,

including, without limitation, any subordination or intercreditor agreements relating thereto, when executed and effective, shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtors enforceable in accordance with their terms and will not conflict with any federal or state law. The Debtors have provided sufficient and adequate notice of the terms of the ABL Facility and the credit arrangements set forth therein to all parties-in-interest as set forth in the Notice Affidavits and Publication Affidavits. On the Effective Date, all of the liens and security interests to be granted in accordance with the ABL Loan Documents (the "ABL Liens") shall be deemed approved and shall be legal, valid, binding, enforceable, and perfected liens on and security interests in the collateral for the ABL Facility, subject to no other liens or encumbrances except as permitted under the ABL Loan Documents. The ABL Liens shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the persons granted such liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order. All fees, costs and expenses paid or to be paid by the Debtors and Reorganized Debtors in connection with the ABL Facility are hereby ratified and approved.

2.      *New Note.* The terms of the New Note have been negotiated in good faith and on an arm's-length basis, without intent to hinder, delay or defraud any creditor of the

Debtors and each party thereto may rely upon the provisions of the Confirmation Order in in implementing the terms of theNew Note. The terms of the New Note are substantially consistent with the terms set forth in substantially the form as Exhibits 11 through 25 annexed to the Plan Supplement (collectively, the "New Note Loan Documents"). The New Note is necessary to the consummation of the Plan. The terms and conditions of the New Note described in the New Note Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtors' Estates and their creditors. The financial accommodations to be extended pursuant to the New Note Loan Documents are being extended in good faith, for legitimate business purposes, are reasonable, shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law. The New Note Loan Documents shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtors enforceable in accordance with their terms and will not conflict with any federal or state law. The Debtors have provided sufficient and adequate notice of the New Note and the credit arrangements set forth therein to all parties-in-interest, as set forth in the Notice Affidavits and Publication Affidavits. All fees, costs and expenses paid or to be paid by the Debtors and Reorganized Debtors in connection with the New Note are hereby ratified and approved.

**WW. Valuation.** Pursuant to the valuation analysis in Article XV of the Disclosure Statement, the enterprise value of the Debtors is insufficient to support a distribution to

Holders of Subordinated Note Claims, Seller Note Claims, Intercompany Claims or Holders of equity security interests in Latham International, Inc., Latham Manufacturing Corp. and Kafko (U.S.) Corp. under absolute priority principles. The valuation set forth in the Disclosure Statement was prepared by the Debtors' financial advisor, Moelis & Company LLC, in accordance with standard and customary valuation principles and practices, and is a fair and reasonable estimate of the value of the Debtors' business as a going concern.

    **XX.** **Retention of Jurisdiction.** The Court may properly, and upon the Effective Date shall, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code, except, subsequent to the Effective Date, matters relating to the interpretation and enforcement of the ABL Loan Documents and the New Note Loan Documents.

## ORDER

    ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

    1.    **Findings of Fact and Conclusions of Law.** The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.

    2.    **Notice of the Confirmation Hearing.** Notice of the Confirmation Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based

upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law, and no further or additional notice was necessary or required.

3.      **Solicitation.** The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law.

4.      **Ballots.** The Ballots are in compliance with Bankruptcy Rule 3018(c), conform to Official Form B14, and are approved in all respects.

5.      **The Disclosure Statement.** The Disclosure Statement: (a) complies in all respects with any disclosure requirements of applicable non-bankruptcy law, including the Securities Act, to the extent applicable, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (c) is approved in all respects. To the extent that the Debtors' solicitation of acceptances of the Plan is deemed to constitute an offer of new securities, the Debtors are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under section 4(2) of the Securities Act and Regulation D promulgated thereunder.

6.      **Confirmation of the Plan.** The Plan and each of its provisions shall be, and hereby are, approved and CONFIRMED under section 1129 of the Bankruptcy Code. The

documents contained in the Plan Supplement and the Second Plan Supplement, including

exhibits and attachments thereto, and the execution, delivery and performance thereof, are

authorized and approved. The terms of the Plan, including the Plan Supplement and the Second

Plan Supplement and their respective exhibits, are incorporated by reference into and are an

integral part of the Confirmation Order, and shall be effective and binding as of the Effective

Date of the Plan.

7.      **Objections.** All objections, responses to, and statements and comments, if

any, in opposition to, the Plan and/or the Disclosure Statement, respectively, other than those

withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing,

shall be, and hereby are, overruled in their entirety.

8.      **No Action Required.** Pursuant to the appropriate provisions of the

Delaware General Corporation Law, including section 303 thereof, and the comparable

provisions of the Delaware Limited Liability Company Act, and section 1142(b) of the

Bankruptcy Code, no action of the respective directors, stockholders, managers, or members of

the Debtors or Reorganized Debtors, as applicable, shall be required to authorize the Debtors or

Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate,

consummate or effectuate, as the case may be, the Plan and any contract, instrument or other

document to be executed, delivered, adopted or amended in connection with the implementation

of the Plan, including any documentation executed in connection with the ABL Facility or the

New Note.

9.	**Binding Effect.**  On or after entry of the Confirmation Order and subject
to the occurrence of the Effective Date, the provisions of the Plan and the Confirmation Order
shall bind the Debtors, the Reorganized Debtors, the New Latham Group, all Holders of Claims
and Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or
whether the Holders of such Claims or Interests accepted or are deemed to have accepted the
Plan), all entities that are parties to or are subject to settlements, compromises, releases,
discharges and injunctions described in the Plan or herein, any and all non-Debtor parties to
executory contracts and unexpired leases with any of the Debtors, any other party in interest in
the Chapter 11 Cases and the respective heirs, executors, administrators, successors or assigns, if
any, of any of the foregoing.

10.	**Free and Clear.**  Pursuant to section 1141(b) of the Bankruptcy Code, and
except as otherwise provided in the Plan or in the Confirmation Order, from and after the
Effective Date, the Reorganized Debtors and New Opco shall be vested with all property of the
Estates, free and clear of all Claims, Liens, encumbrances, charges and other interests of Holders
of Claims or Interests pursuant to the terms of the Plan and APA.  From and after the Effective
Date, the Reorganized Debtors and New Latham Group may operate each of their businesses and
use, acquire or dispose of assets free of any restrictions imposed by the Bankruptcy Code, the
Bankruptcy Rules, the Bankruptcy Court, or the Office of the United States Trustee (except for
quarterly operating reports and fees associated therewith) pursuant to the terms of the Plan and
APA.  In addition, on the Effective Date, the Reorganized Debtors and New Opco may (a) cause
the transfer of assets or Interests between or among the Reorganized Debtors and New Opco

and/or (b) engage in any other transaction in furtherance of the Plan. Specifically, without limiting the foregoing, on the Effective Date, and as a condition precedent to the effectiveness of the Plan and in accordance with the terms of the APA, Latham International, Inc., Latham Manufacturing Corp. and Kafko (U.S.) Corp shall transfer to New Opco any and all assets it may hold immediately prior to the Effective Date, including, without limitation, any and all contracts or agreements to which it is a party.

11.    **Authorizations to Take Acts Necessary to Implement Plan.**  The Debtors, the Reorganized Debtors and the New Latham Group as applicable, may take all actions to execute, deliver, file or record such contracts, instruments, releases, leases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan (including the substantive consolidation of the Debtors as contemplated under the Plan) without the need tor any further notice to or action, order or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order or rule except for those expressly required pursuant to the Plan, the ABL Facility Documents and the New Note Loan Documents.  All matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors, managers or members of the Debtors, the Reorganized Debtors or the New Latham Group shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers or members of the Debtors, or the need for any approvals, authorizations, actions or consents except as otherwise expressly required pursuant to the Plan, the ABL Facility

Documents or the New Note Loan Documents. On the Effective Date, or as soon as thereafter as is practicable, the Reorganized Debtors and the New Latham Group shall file their amended certificates of incorporation or other constituent documents with the Secretary of State of Delaware, in accordance with the Delaware General Corporation Law or the Delaware Limited Liability Company Act.

12. **Effectiveness of All Actions.** Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to the Confirmation Order, without the need for any further notice to or action, order or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order or rule except those expressly required pursuant to the Plan.

13. **Issuance of New Stock.** New Holdco is authorized to issue the New Equity and contribute the New Note to New Midco in exchange for 100% of the equity interest in New Midco. New Midco is authorized to contribute the New Equity and New Note to New Opco in exchange for 100% of the equity interests of New Opco.

14. **Officers and Directors.** The structure and composition of the board of directors of the New Latham Group shall be as set forth in the Plan and Plan Supplement. Each director and officer thereof shall serve from and after the Effective Date pursuant to the terms of the organizational documents set forth in the Plan Supplement or other constituent documents. Pursuant to section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the Court approves as consistent with the interests of Holders of Claims and Interests and with public policy the selection, election and/or continuance, as the case may be, of these individuals; provided that nothing set forth

herein shall prevent any of the foregoing individuals from resigning or from being removed or

replaced as an officer or director without further order of the Court in accordance with the terms

of the New Latham Group's or the Reorganized Debtors' organizational documents, as

applicable. On the Effective Date (or on the Continuation Date with respect to any actions taken

prior to the Effective Date), the adoption and filing (as necessary) of any of the New Latham

Group's or the Reorganized Debtors' organizational documents not otherwise specifically set

forth in the Confirmation Order or the Plan, as the case may be, and all other approvals and

corporate actions contemplated by the Plan and the Confirmation Order and not otherwise

specifically enumerated in the Confirmation Order shall be authorized and approved in all

respects, subject to the provisions hereof and in the Plan, and any other applicable law.

15.     **Compliance with Section 1123(a)(6) of the Bankruptcy Code.** The

amended and restated certificates of incorporation of the New Latham Group and each of the

Reorganized Debtors as set forth or described in the Plan Supplement comply in all respects with

section 1123(a)(6) of the Bankruptcy Code, and are hereby approved. The adoption and filing by

New Latham Group and the Reorganized Debtors of such certificates of incorporation is hereby

authorized, ratified and approved.

16.     **Exemption from Securities Law.** The issuance of the New Equity and

any other securities pursuant to the Plan and any subsequent sales, resales or transfers, or other

distributions of any such securities shall be exempt from any federal or state securities laws

registration requirements, including section 5 of the Securities Act, to the fullest extent permitted

by section 1145 of the Bankruptcy Code. In addition, under section 1145 of the Bankruptcy

Code, any security contemplated by the Plan and any and all settlement agreements incorporated

therein, will be freely tradable by the recipients thereof, subject to (a) the provisions of section

1145(b)(l) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11)

of the Securities Act, and compliance with any rules and regulations of the securities and

Exchange Commission, if any, applicable at the time of any future transfer of such securities or

instruments and (b) the restrictions, if any, on the transferability of such security and instruments

in the organizational documents set forth in the Plan Supplement or other constituent documents.

17. **Cancellation of Existing Securities and Agreements.** On the Effective

Date, except as otherwise specifically provided for in the Plan or the Confirmation Order: (a) the

obligations of the Debtors under the Prepetition Credit Facility, the Subordinated Note Purchase

Agreement Loan and the Seller Subordinated Note Purchase Agreement, and any other

certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or

document directly or indirectly evidencing or creating any indebtedness or obligation of or

ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates,

notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors

that are reinstated pursuant to the Plan), shall be cancelled as to the Debtors, and neither the

Reorganized Debtors nor the New Latham Group shall have any continuing obligations

thereunder; and (b) the obligations of the Debtors pursuant, relating or pertaining to any

agreements, indentures, certificates of designation, bylaws or certificate or articles of

incorporation or similar documents governing the shares, certificates, notes, bonds, indentures,

purchase rights, options, warrants or other instruments or documents evidencing or creating any

indebtedness or obligation of the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; provided that notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of and solely to the extent necessary for allowing Holders to receive distributions under the Plan and as provided in the Plan; provided, further, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Plan or result in any expense or liability to the Reorganized Debtors, except as provided in the Plan.

18. **Corporate Transfer.** On the Effective Date or as soon as reasonably practicable thereafter, the New Latham Group shall take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation, including without limitation of the Debtors, containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation or any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of

incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

19.     **Subordination.** Except as otherwise expressly provided in any of the Plan, the Confirmation Order, any other order of the Court, the ABL Facility Loan Documents and the New Note Loan Documents: (a) the classification and treatment of all Claims and Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise; (b) all subordination rights that a Holder of a Claim or Equity Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently; (c) the distributions under the Plan to the Holders of Allowed Claims will not be subject to payment of a beneficiary of such subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights; and (d) the subordination of liens provided under any existing agreement assumed and/or assigned under the Plan shall survive Confirmation and the Effective Date and be subject and subordinate to the liens and security interests securing the obligations of the Debtors or the Reorganized Debtors, as applicable under the ABL Facility.

20.     **Release of Liens.** Except as otherwise provided herein, in the Plan, the ABL Loan Documents, the New Note Loan Documents, or in any contract, instrument, release or

other agreement or document created pursuant to the Plan, and without any prejudice to the rights of the Debtors, and the lenders and agents under the ABL Facility and the New Note, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the Secured Claim that is an Allowed Prepetition Secured Claim as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates (other than with respect to a Secured Claim that is reinstated pursuant to the Plan), shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the applicable Reorganized Debtor or New Opco, as the case may be, and their respective successors and assigns.

      21. **Compromise of Controversies.** In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan and the entry of the Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019, subject to Article VII.Q and Article IX of the Plan.

      22. **Assumption or Rejection of Contracts and Leases.** Except as otherwise provided in the Plan, in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, Viking Pools, LLC and Coverstar LLC shall each be deemed to have assumed each of their respective executory contracts and unexpired leases to which they are a party, pursuant to section 365 of the Bankruptcy Code, unless such contract or lease (a) was previously assumed or

rejected by any such Debtors, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date or (d) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, if any, filed by any such Debtors as part of the Plan Supplement. Latham International, Inc., Latham Manufacturing Corp. and Kafko (U.S.) Corp. shall each be deemed to have assumed and assigned each executory contract and unexpired lease to which they are a party to New Opco, pursuant to section 365 of the Bankruptcy Code, unless such contract or lease (a) was previously assumed or rejected by any such Debtors, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to reject filed by any such Debtors on or before the Confirmation Date or (d) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, if any, filed by the Debtors as part of the Plan Supplement. Such contract and lease assumptions or assumptions and assignments are hereby approved as of the Effective Date pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code and all objections thereto, if any, are overruled.

23. **Resolution of Contingent, Unliquidated and Disputed Claims.** Except as otherwise set forth herein or by order of the Bankruptcy Court, the Reorganized Debtors, as applicable, shall have exclusive authority to file objections to, and settle, compromise, withdraw or litigate to judgment objections to any and all Disputed Claims as provided under the Plan.

24. **Authorization to Consummate.** The Debtors are authorized to consummate the Plan at any time after the entry of the Confirmation Order subject to satisfaction

or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article XV of the Plan.

25. **ABL Facility and New Note.** Each of the Debtors, the Reorganized Debtors and the New Latham Group, as the case may be, are authorized to undertake any and all acts and actions required to implement the ABL Facility and the New Note, including without limitation, entering, executing, delivering, filing or recording any documents related thereto, including, without limitation, all related loan documents, as well as any other agreements, subordination or intercreditor agreements, instruments, or documents necessary or appropriate to implement the ABL Facility and the New Note, with such changes from the terms set forth in the ABL Facility Loan Documents and the New Note Loan Documents as may be agreed to between and among the Debtors, the Reorganized Debtors, the New Latham Group, the ABL Lenders and the lenders and agents under the New Note, and no board, shareholder, manager, or member vote shall be required with respect thereto. The parties to the ABL Facility and the New Note are authorized and empowered to take such steps and to execute such instruments and documents as may be necessary or appropriate to assist in the implementation of all transactions contemplated by the ABL Facility and the New Note, including, but not limited to, the execution, delivery, filing and recording of the documents and instruments as are necessary or appropriate to effectuate, implement or consummate fully the ABL Facility and the New Note, the Plan or the Confirmation Order. The obligations under the ABL Facility and the New Note, the ABL Loan Documents and the New Note Loan Documents, including without limitation, all related mortgages and security agreements, shall, upon execution, constitute legal, valid, binding and

authorized obligations of each of the respective parties thereto, Reorganized Debtors, as applicable, enforceable in accordance with their terms and not in contravention of any state or federal law. The Debtors and Reorganized Debtors are authorized to pay the fees and expenses set forth or referred to in any commitment letter, term sheet, or financing fee letter associated with the ABL Facility, in accordance with the respective terms and to perform any indemnity obligations set forth or referred to therein. All payment obligations of the Debtors and Reorganized Debtors under any such commitment letter, term sheet, and related financing fee letter shall be entitled to priority as Administrative Claims under sections 503(b) and 507(a)(2) of the Bankruptcy Code. Nothing in the Plan or the Confirmation Order shall be inconsistent with the terms of the ABL Facility or the New Note.

26. **ABL Liens.** The automatic stay imposed pursuant to section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit (without further application to the Court) the execution, delivery, filing and recordation of the ABL Loan Documents and the New Note Loan Documents and all transactions contemplated by such documents with respect to the ABL Facility and New Note. The ABL Liens shall be legal, valid and enforceable liens and security interests, as provided in the ABL Loan Documents. As of the Effective Date, the ABL Liens shall constitute legal, valid and duly perfected liens against and security interests in the Collateral (as will be defined in the ABL Loan Documents), subject to no liens and encumbrances other than as permitted under the ABL Loan Documents. In the event an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, the ABL Liens shall not be affected and shall continue in full

force and effect in all respects and shall maintain their priorities and perfected status as provided in such documents until all obligations in respect thereof shall have been paid and satisfied in full.

27.     **Professional Compensation.** Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court an application for final allowance of such Fee Claim no later than 60 days after the Effective Date. Objections to the final allowance of any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party by the later of (a) 60 days after the Effective Date and (b) 30 days after the Filing of the applicable request for payment of the Fee Claim. Notice of a hearing on the final allowance of Fee Claims shall be provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course of business and without the need for Court approval.

28.     **Administrative Claims.** Subject to the provisions of sections 328(a), 330 and 331 of the Bankruptcy Code, in full and final satisfaction, settlement, release and discharge of, and in exchange for, each Allowed Administrative Claim, each Holder of such Allowed Administrative Claim shall be paid in full in Cash the unpaid portion of such Allowed Administrative Claim in accordance with the terms of the applicable contract or agreement governing such Claim, if any, or otherwise in the ordinary course of business.

29.     **Discharge.** As of the Effective Date, except as otherwise provided in the Plan and the Confirmation Order, the Plan shall: (a) as provided in and pursuant to Article XI.B of the Plan and except as otherwise provided in the Plan, discharge and release all Claims, Interests and Causes of Action against the Reorganized Debtors or any of their assets or properties of any nature whatsoever, including any interest accrued on Claims or Interest from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in the Reorganized Debtors, such assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 5020) or 502(i) of the Bankruptcy Code, in each case whether or not a Proof of Claim was filed, such Claim was allowed or the Holder of such Claim has accepted the Plan and such discharge and release shall constitute a judicial determination of the discharge of all Claims and Interests and any default by the Reorganized Debtors with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured.

30.     **Return of Deposits.** All utilities, including any Person who received a deposit or other form of adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "Adequate Assurance Deposits"), including any deposit provided pursuant to any order of the Court approving the

*Debtors' Motion of the Debtors for an Order Under Section 366 of the Bankruptcy Code (A) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service, (B) Deeming Utilities Adequately Assured of Future Performance, and (C) Establishing Procedures for Determining Adequate Assurance of Payment* [Docket No. 6], shall return such Adequate Assurance Deposits to New Latham Opco or the Reorganized Debtors, as the case may be, at the conclusion of the Chapter 11 Cases, if not returned or applied earlier.

31.     **Releases, Injunction, Exculpation, and Related Provisions Under the Plan.** The releases, injunctions, exculpations and related provisions set forth in Article XI.C D E and F of the Plan are hereby approved and authorized in their entirety.

32.     **Release and Exculpation Provisions.** All release and exculpation provisions embodied in the Plan, including those contained in Article XI.C D E and F of the Plan are (a) integral parts of the Plan, (b) fair, equitable, and reasonable, (c) given for valuable consideration and (d) are in the best interest of the Debtors and all parties in interest, and such provisions are approved and shall be effective and binding on all Persons and Entities, to the extent provided therein.

33.     **Payment of Statutory Fees.** All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid as and when due or otherwise pursuant to an agreement between the Reorganized Debtors and the United States Department of Justice, Office of the United States Trustee, until such time as a chapter 11 case for a Debtor shall be closed and each Reorganized Debtor shall pay any such fees as if no substantive consolidation has occurred for purposes of the Plan.

34.     **Exemption from Transfer Taxes.** The making, delivery, filing, or

recording at any time of any deed, mortgage, leasehold mortgage, deed to secure debt, leasehold

deed to secure debt, deed of trust, leasehold deed of trust, memorandum of lease, lease,

assignment, leasehold assignment, security agreement, financing statement, or other instrument

of absolute or collateral transfer required by, or deed necessary or desirable by the parties to, the

ABL Facility, New Note, the APA and related and ancillary documents, and the purchase and

sale transactions under the Plan shall not be subject to any document recording tax, stamp tax,

conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate

transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other

similar tax or governmental assessment. All filing or recording officers (or any other Entity with

authority over any of the foregoing), wherever located and by whomever appointed, shall comply

with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of

any such tax or governmental assessment, and shall accept for filing and recordation any of the

foregoing instruments or other documents without the payment of any such tax or governmental

assessment. The Court shall retain specific jurisdiction with respect to these matters.

35.     **Documents, Mortgages and Instruments.** Each federal, state,

commonwealth, local, foreign or other governmental agency is hereby authorized to accept any

and all documents, mortgages and instruments necessary or appropriate to effectuate, implement,

or consummate the transactions contemplated by the Plan and the Confirmation Order.

36.     **Reversal/Stay/Modification/Vacatur of Confirmation Order.** Except

as otherwise provided in the Confirmation Order, if any or all of the provisions of the

Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of the Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority or lien incurred or undertaken by the Debtors, the Reorganized Debtors or the New Latham Group, as applicable, prior to the effective date of any such reversal, stay, modification or vacatur, including, without limitation (a) the validity of any obligation, indebtedness or liability incurred by the Debtors, the Reorganized Debtors or the New Latham Group to the ABL Lenders and to the agent and the lenders under the New Note or (b) the validity and enforceability of the ABL Liens. Notwithstanding any such reversal, stay, modification or vacatur of the Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, the Confirmation Order prior to the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the provisions of the Confirmation Order and the Plan or any amendments or modifications thereto. Specifically, notwithstanding any such reversal, stay, modification or vacatur of the Confirmation Order, any obligation, indebtedness or liability incurred by the Debtors, the Reorganized Debtors or the New Latham Group under the ABL Loan Documents or New Note Loan Documents (prior to written notice, as applicable, to the respective ABL Lenders, the agents and the lenders under the New Note of the effective date of such reversal, stay, modification or vacatur) shall be governed in all respect by the provisions of the Confirmation Order and the Plan or any amendments or modifications thereto and the ABL Facility Lenders, the agent under the New Note, and the lenders under the New Note shall be

entitled to all of the rights, remedies, privileges and benefits granted herein and pursuant to the ABL Loan Documents and the New Note Loan Documents.

37. **Continued Effect of Stays and Injunction.** All injunctions or stays provided in, or in connection with, the Chapter 11 Cases, whether pursuant to sections 105 or 362 of the Bankruptcy Code, or any other applicable law or court order, in effect immediately prior to the Confirmation of the Plan, shall remain in full force and effect thereafter, except as otherwise provided by the Confirmation Order, the Plan or their own terms. Nothing herein shall bar the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by the Confirmation Order.

38. **Preservation of Causes of Action.** Any Causes of Action that the Debtors may hold against any Entity are hereby preserved in accordance with Article VII.Q of the Plan.

39. **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including jurisdiction over the matters set forth in Article XIV of the Plan.

40. **Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent.** The provisions of the Plan and the Confirmation Order, including the

findings of fact and conclusions of law set forth herein, are intended to be fully and intentionally unequivocally integrated into a single nonseverable transaction and mutually dependent.

41.    **Modifications.**  Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement, and any other documents that are necessary to effectuate the Plan, that do not materially modify the terms of such documents and are consistent with the Plan, the ABL Facility or the New Note.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend or modify materially the Plan and the Plan Supplement with respect to such Debtor, one or more times, after continuation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in a manner consistent with the terms of the ABL Facility and the New Note, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XVII of the Plan.  Entry of the Continuation Order means that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

42. **Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent the ABL Loan Documents or the New Note Loan Documents provide otherwise (in which case the governing law specified therein shall be applicable to such document(s), the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to the principles of conflict of laws.

43. **Applicable Non-Bankruptcy Law.** Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of the Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

44. **Waiver of Filings.** Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule or statement with the Court or the Office of the United States Trustee is hereby waived as to any such list, schedule or statement not filed as of the Confirmation Date.

45. **Governmental Approvals Not Required.** The Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

46.     **Notice of Confirmation Order.** In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of the Confirmation Order, substantially in the form annexed hereto as **Exhibit B**, to all parties who hold a Claim or Equity Interest in the Chapter 11 Cases, including those parties who have requested service of papers under Bankruptcy Rule 2002 and the U.S. Trustee. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of the Confirmation Order.

47.     **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

48.     **Waiver of Stay.** The stay of the Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rules 3020(e), 6004(h) and 6006(d), whether for fourteen (14) days or otherwise, is hereby waived, and the Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

49.     **References to Plan Provisions.** References to Articles of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan except as specifically provided herein. The failure to specifically include or to refer to any particular article, section or provision of the Plan or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Bankruptcy Court that the Plan and any related documents be continued in their entirety.

50.     **Headings.** Headings utilized herein are for convenience and reference only, and shall not constitute a part of the Plan or the Confirmation Order for any other purpose.

51.     **Effect of Conflict Between the Plan and Confirmation Order.** If there is any inconsistency between the terms of the Plan and the terms of the Confirmation Order, the terms of the Confirmation Order shall govern and control.

52.     **No Waiver.** The failure to specifically include any particular provision of the Plan in the Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

53.     **Final Order.** The Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

54.     **Specific Provisions.**

a.     Environmental Protection Agency. Nothing in the Plan discharges or releases the Debtors from any environmental Claim, liability or cause of action solely to the extent that any such claim, liability or cause of action exists as the date of this Confirmation Order or impairs the ability of any governmental entity to exert its police and regulatory authority over any Debtor, Reorganized Debtor or non-debtor. Nothing in the Plan or this Confirmation Order shall be deemed to acknowledge the existence or validity of any environmental claim, liability or cause of action and the Debtors and Reorganized Debtors and any such non-debtor parties reserve any and all rights and defenses in connection therewith.

b. <u>Pension Benefit Guaranty Corporation (the "PBGC")</u>. Nothing in the Plan or the Confirmation Order shall be deemed or construed to prejudice the rights of PBGC, or plan trustee or beneficiary with respect to the Latham Manufacturing Corp. Employees Retirement Plan (the "Pension Plan"), to take such action as may be appropriate with respect to future actions or inactions, solely to the extent that any such actions or inactions exists as of the date of this Confirmation Order. The Pension Plan shall be assumed by New Opco which will sponsor and continue it in accordance with ERISA. New Opco will execute an agreement for the assumption of the Pension Plan. Nothing in the Plan or in this Confirmation Order shall constitute a discharge or release with respect to the Pension Plan under ERISA or other applicable law. Nothing in this Plan or Confirmation Order shall be deemed to acknowledge the existence or validity of any claim, liability or cause of action with respect to the Pension Plan and the Debtors and Reorganized Debtors reserve any and all rights and defenses in connection therewith.

c. <u>Midland Central Appraisal District</u>. Notwithstanding any other provisions in the Interim or Final Cash Collateral Orders, the Plan, the Confirmation Order, or in any other documents, or agreements approved hereby, including but not limited to the terms of any security granted in connection with the ABL Note, the New Note, or the terms of the purchase of assets by New Opco, any liens securing the taxes claimed by Midland Central Appraisal District, for both pre-petition and post-petition tax years, shall be expressly retained, to the same extent, nature, priority and validity (or invalidity) they may currently hold, against all property securing those claims solely to the extent permitted under applicable law, until all taxes, penalties and

interest secured by those liens have been paid in full. To the extent allowed, these claims shall be satisfied in accordance with Texas law and applicable bankruptcy law. To the extent that Midland Central Appraisal District is exempt from Federal taxation, it shall not be subject to the requirements of Article VIII, E. 4. of the Plan. Midland Central Appraisal District shall also be exempt from the provisions of Article IX. C. to the extent that such section provides an absolute cap on the amount that may be recovered by Midland Central Appraisal District if its claims are estimated by the procedures outlined therein. Allowed Taxes for the 2010 tax year may be paid by New Opco in the ordinary course of business without further application by Midland Central Appraisal District to the Bankruptcy Court, and, to the extent allowed, will be timely paid by New Opco in accordance with applicable law, and if the taxes for 2010 are not timely paid, Midland Central Appraisal District will be at full liberty to pursue all remedies otherwise available to it under state law, without further recourse to the Bankruptcy Court, subject, in all respects, to the Reorganized Debtors' and New Opco's rights to object to any requests for payment on any and all available grounds. The Reorganized Debtors and New Latham Group hereby reserve any and all rights to object to any claims or liens asserted by Midland Central Appraisal District. Nothing herein shall be deemed to acknowledge, confer or grant Midland Central Appraisal District any lien on any of the property of the Debtors, or the Reorganized Debtors, as the case may be, or in any property owned by New Opco, except to the extent that such lien(s) arise under applicable nonbankruptcy law.

Dated: _____, 2010

HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE